FILED

2014 Dec-23  PM 12:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| | * | |
| ANTONIO CHEATHAM, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | Civil Action No: 4:14-cv-01952-VEH |
| | * | |
| KIM THOMAS, Commissioner, | * | |
| Alabama Department of | * | |
| Corrections, et al., | * | |
| | * | |
| Defendants. | * | |

---

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

## <u>Table of Contents</u>

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    <u>Plaintiffs Have Stated a Valid Claim For Injunctive Relief Against All Defendants in Their Official Capacity</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Plaintiffs Are Only Required to Show that Defendants Have a Connection with Unconstitutional Conduct.. . . . . . . . . . . . . . . . . . 4

    B.    All Defendants Possessed Final Policymaking Authority.. . . . . . . 10

    C.    Plaintiffs Will Suffer Prejudice if All Defendants Other than Commissioner Thomas are Dismissed... . . . . . . . . . . . . . . . . . . . . 20

II.   <u>The Current Associate Commissioner for Operations and Institutional Coordinator for the Northern Region of the Alabama Department of Corrections are Proper Defendants</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.  <u>Transfer of Named Plaintiffs</u>.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## Introduction

Plaintiffs Antonio Cheatham, Mark Duke, James Edwards, Dale Gilley, Franky Johnson, Michael Mays, Derrick White, Allan Williams, and Robert Woods (collectively "Plaintiffs") filed a class action lawsuit on behalf of themselves and all others similarly situated against Defendants Kim Thomas, James Deloach, Terrance McDonnell, Greg Lovelace, Grantt Culliver, Carter Davenport, Eric Evans, Carl Sanders, and Gary Malone (collectively "Defendants"), all of whom are Alabama Department of Corrections (ADOC) officials or are officials at St. Clair Correctional Facility, for violation of their Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment.  Plaintiffs assert that Defendants have failed to protect plaintiffs from the ongoing real and imminent substantial risk of serious harm posed by the violent and dangerous conditions at St. Clair, where mismanagement, poor leadership, overcrowding, inadequate security, and unsafe conditions, have lead to an extraordinarily high homicide rate, weekly stabbings and assaults, and a culture where violence is tolerated.  These unsafe conditions and inadequate security include broken and nonfunctioning locks on the majority of cell doors, areas in the housing units not visible to the officer stationed there, failure to implement an adequate classification system in determining housing assignments, failure to adequately enforce housing assignments, and failure to adequately supervise and monitor

3

housing units.  Furthermore, Defendants fail to provide adequate rehabilitative and therapeutic programming, including treatment and programming for inmates suffering from mental illness and drug or alcohol addiction.  Defendants have also failed to adequately prevent and discipline DOC staff who smuggle contraband, including illegal drugs, into the facility.  All Defendants are sued solely in their official capacities and Plaintiffs seek only prospective injunctive and declaratory relief.

## Argument

**I.     Plaintiffs Have Stated a Valid Claim For Injunctive Relief Against All Defendants in Their Official Capacity.**

### A.     Plaintiffs Are Only Required to Show that Defendants Have a Connection with Unconstitutional Conduct.

It is well-recognized that actions against state officials sued in their official capacity for prospective injunctive relief are not considered actions against the State and therefore are not prohibited by Eleventh Amendment sovereign immunity.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State.  This distinction is commonplace in  sovereign immunity doctrine.") (internal quotation marks and citations omitted); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("[I]mplementation of state policy or custom

4

may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.") (citing Ex parte Young, 209 U.S. 123 (1985)); Wu v. Thomas, 863 F.2d 1543, 1550 (11th Cir. 1989) ("The eleventh amendment does not, however, bar suits for equitable relief against state officers in their official capacity."); Summit Med. Assoc, P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999) ("The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law.").[1]

Defendants contend that Plaintiffs can only assert claims for injunctive relief against the final policymaker of the governmental entity involved.  However, the cases cited by Defendants define the standard for establishing liability of local governmental entities, such as city and county governments, which are not entitled to sovereign immunity and can be held liable for money damages through official capacity actions against local government officials.  See, e.g., Connick v. Thompson, 131 S. Ct. 1350, 1355 (2011) (suit against local district attorney's office for money damages for violation of Brady v. Maryland and wrongful conviction and death

---

[1] Likewise, the Eleventh Amendment does not bar official capacity suits against state officials even when compliance with an injunctive order will require state funds. Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988).

sentence); <u>Pembaur v. City of Cincinnati</u>,  475 U.S. 469, 473-74 (1986) (action by physician against city and county officials in their official capacities only for money damages);  <u>Hale v. Tallapoosa Cnty</u>, 50 F.3d 1579, 1581, 1585 n.5 (11th Cir. 1995) (money damages suit against county officials for unconstitutional jail conditions). This is not the standard that governs the validity of Plaintiffs' claims for prospective injunctive against State officials.

In order to establish an official capacity claim for injunctive relief against state officials, Plaintiffs must show that the official, "'by virtue of his office, ha[s] some connection' with the with the unconstitutional act or conduct complained of." <u>Luckey v. Harris</u>, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (quoting <u>Young</u>, 209 U.S. at 157) (finding that the Governor of Georgia, chief judges of two judicial circuits, and all Georgia judges responsible for providing assistance of counsel to indigent defendants were proper parties in official capacity suit claiming violation of indigent defendants' right to counsel, right to bail, and equal protection); <u>see also</u> <u>Grizzle v. Kemp</u>, 634 F.3d 1314, 1319 (11th Cir. 2011) (state official proper party to official capacity lawsuit if "[h]is power by virtue of his office sufficiently connect[s] him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before") (quoting <u>Young</u>, 209 U.S. at 161).  All of the named Defendants in this suit have a connection with the unconstitutional conduct at St. Clair and all are proper

parties in this lawsuit.

The case of Wu v. Thomas, 863 F.2d 1543 (11th Cir. 1989) illustrates the point that a range of state officials may be properly sued for injunctive relief in their official capacities.  In Wu, husband and wife faculty members at the University of Alabama brought a lawsuit against the university claiming retaliation for the wife's gender discrimination suit.  The defendants were the president of the university, the board of trustees, the academic vice president, the dean of the college of arts & sciences, and the head of the department of finance, economic, and legal studies.  All defendants were sued both in their individual and official capacities.  The Eleventh Circuit found the "Eleventh Amendment does not . . . bar suits for equitable relief against state officers in their official capacity" and reversed the district court's grant of summary judgment for the defendants. Id. at 1550.  The Court drew no distinctions based on the offices or responsibilities of the defendant.

In Summit Medical Associates,  180 F.3d 1326, a lawsuit by abortion providers brought against the Governor of Alabama, the Attorney General, and the District Attorney of Montgomery County to enjoin enforcement of the Alabama partial birth abortion ban, the Eleventh Circuit found that a § 1983 action could properly be brought against an official charged with enforcing, not making, law or policy.  The Attorney General had issued a letter to district attorneys stating his interpretation the

new statute for purposes of enforcement.  District Attorneys were charged with the actual enforcement of the provision.  The Attorney General and the District Attorney of Montgomery County moved for summary judgment based on Eleventh Amendment sovereign immunity.   The Eleventh Circuit found the "Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law," id. at 1336, and affirmed the district court's denial of defendants' motion of summary judgment on the basis of the Eleventh Amendment.

Numerous official-capacity lawsuits brought by prisoners seeking prospective injunctive relief against prison officials in a variety of positions and ranks have been found to state valid claims and to be permissible under the Eleventh Amendment.  See Gates v. Cook, 376 F.3d 323, 344 (5th Cir. 2004)  (affirming several injunctions in suit by death row prisoner suit claiming that conditions on death row violated the Eighth Amendment brought against Mississippi Department of Corrections Commissioner, Deputy Commissioner and Superintendent, as well as  Warden of Area IV and Captain at Mississippi State Prison in their official capacities); Ganther v. Ingle, 75 F.3d 207, 210 (10th Cir. 1996) (finding it "is black letter law that the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims" in

claim by prisoner against prison chaplain and three prison wardens); <u>Wolfel v. Morris</u>, 972 F.2d 712, 719 (6th Cir. 1992) (finding Eleventh Amendment not a bar to official capacity suit brought by prisoners against Southern Ohio Correctional Facility guards and officials for punishing them for circulating a petition aimed at redressing grievances); <u>see also</u> <u>Wise v. Cronic</u>, No. 2:12-CV-0291-RWS, 2013 WL 3755609, at *3-4 (N.D. Ga. July 16, 2013) (applying different analyses for claims against functions where sheriff acted as arm of county as opposed to functions where he acted as arm of State).

All of the Defendants bear responsibility for the conditions and operations, including the safety and security of prisoners at St. Clair, either through the authority in their role at ADOC or through their supervisory capacity at St. Clair. (See Compl. ¶¶ 3-12.)   In their Answer, Defendants admit that Associate Commissioner McDonnell is responsible for the "Central Records Division, the Research and Planning Division, the Supervised Reentry Program, and Religious Programs," that Deputy Commissioner Lovelace supervises "maintenance and construction projects" at ADOC facilities, that the Warden and Assistant Wardens at St. Clair are responsible for the "day-to-day operations" of the prison, as well as the "security activities" and the supervision of "subordinate employees," and that the Captains at St. Clair are responsible for  "security activities" and for the supervision of

"subordinate ADOC employees."   (Answer ¶¶ 4-12.)   Each defendant, through his state office, has the requisite connection to, or the duty to remedy, the dangerous conditions at St. Clair and the violation of the Eighth Amendment rights of the Plaintiff class.   Therefore, Plaintiffs have stated a valid claim against all ten Defendants and the motion to dismiss subordinate defendants should be denied.

## B.    All Defendants Possessed Final Policymaking Authority.

Even if the principles cited in the Defendant's motion to dismiss applied outside the context of municipalities, the Defendants in this case possessed final policymaking authority and cannot be dismissed. As the United States Supreme Court and the Eleventh Circuit have made clear, "[a] municipal governing body may be held liable for acts or policies of individuals to whom it delegated final decisionmaking authority in a particular area." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1291-92 (11th Cir. 2004); see City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) ("If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose."). As the Complaint and Answer demonstrate, the Defendants' unconstitutional conduct in this case was a product of their final policymaking authority for three reasons: 1) the Defendants have been delegated all policymaking authority at St. Clair; 2) there is almost no review available to the

Plaintiffs; and 3) to the extent that there is some minimal review of the Defendants' unconstitutional policies, that review is not meaningful.

The Defendants do not dispute that they were given authority over the various areas of the operation of St. Clair alleged in the complaint. (<u>See</u> Answer ¶¶ 5-12 (admitting Defendants are responsible for areas of authority asserted in Complaint).) The powers delegated to the Defendants provides them with the authority to direct policy, or, to select a "course of action consciously chosen from among various alternatives." <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985); <u>see</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986) (policy is defined as "a deliberate choice to follow a course of action [] made from among various alternatives"). Therefore, pursuant to the practices and policies of the ADOC, Defendants have been delegated policy-making authority over the operation of St. Clair Correctional Facility. <u>See</u> <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 (11th Cir. 2005) ("A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.... A custom is a practice that is so settled and permanent that it takes on the force of law."); <u>Mandel v. Doe</u>, 888 F.2d 783, 793 (11th Cir. 1989) ("In making this determination, the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and

11

practices having the force of law").

The Defendants are indisputably final policymakers in the operation of St. Clair because the ADOC practices and policies allow them to operate without supervision or review. Mandel, 888 F.2d at 794 (prison physician acted as final policymaker where he was "authorized to function without any supervision or review.") As a number of courts have recognized, "no general, non-medical, system-wide grievance system exists in ADOC prisons." Henderson v. Thomas, 891 F. Supp. 2d 1296, 1310 (M.D. Ala. 2012); Laube v. Campbell, 333 F. Supp. 2d 1234, 1240 (M.D. Ala. 2004) (PLRA's "exhaustion requirement is inapplicable in this case because, as all parties agree, no administrative remedies were available to the plaintiffs."). The complete absence of grievance procedures prevents Plaintiffs from requesting any review of Defendants' unconstitutional conduct, indicating that Defendants were final policymakers.

In their response, Defendants assert that the "Commissioner's complete control of the ADOC demonstrates that under Alabama law all ADOC decisions are subject to the Commissioner's final review." (Mem. Law Supp. Mot. to Dismiss, 14-16.) This assertion relies only on an unfounded claim of "complete control" and does not identify any State law, ADOC regulation, or ADOC practice that outlines Commissioner Thomas's review of Defendants' policy decisions in the daily

12

operation of St. Clair. As the caselaw makes clear, where ADOC "custom and practice developed so that the policy was that [Defendants were] authorized to function without any supervision or review at all," Mandel, 888 F.2d at 794, then Defendants were acting as final policymakers. Id.

Further, Defendants' unconstitutional policies are final because there is no actual "opportunity" for "meaningful" review. Holloman, 370 F.3d at 1292; see Oladeinde v. City of Birmingham, 230 F.3d 1275, 1295 (11th Cir.2000) (there must be an actual "opportunity" for "meaningful administrative review" before determining a governmental decision maker lacks final policymaking authority). Even in cases where review of the challenged policy is "theoretically available on paper," Holloman, 370 F.3d at 1293, the policy is final if the challenger cannot "as a practical matter, take advantage of it." Id. In this case, the practices and policies of the ADOC make clear that the Plaintiffs and the class of individuals they represent are afforded no actual opportunity to request any review of the policies established by the Defendants. Holloman, 370 F.3d at 1293.

In Scala v. City of Winter Park, the Eleventh Circuit outlined the type of meaningful review that divests a government official of final authority. 116 F.3d 1396, 1402 (11th Cir. 1997). In Scala, a government employee was terminated by the City Manager. Id. Although the City Civil Service Board retained the power to review

termination decisions, the employee argued that the City manager was a final policymaker. Id. The Eleventh Circuit rejected the employee's argument, explaining there was no question that the City Manager's policy decision was not final because "(1) the governing city regulations provide for [] review; (2) the Board did actually review the termination decision in this case; and (3) Scala had previously used the Board's review procedures to his benefit, when he convinced the Board to reverse his earlier demotion." Id.

As Scala demonstrates, where there is actual, meaningful review of the challenged policy, the government official is not a final policymaker. Id. The ADOC, however, has eliminated Plaintiffs' ability to request any review of the Defendants' unconstitutional conduct. See Henderson, 891 F. Supp. 2d at 1310 (indicating ADOC has no general administrative grievance system); Laube, 333 F. Supp. 2d at 1240 (same). At the heart of the Complaint is an assertion that the policies and practices of St. Clair are informed by a failure to provide supervision and leadership, inappropriate and excessive delegation of authority, and an inability for Plaintiffs and the class of individuals they represent to obtain meaningful review of Defendants' policies and practices. Because the Defendants have been granted the authority to initiate policies without oversight, supervision, or meaningful review, in each of the complained about areas they are undeniably final policymakers.

First, Plaintiffs have no ability to request review of the Defendants' policy of failing to provide secure locking mechanisms on individual cell doors. (Compl. ¶¶ 40-44.) Defendants admit that they have authority over the security and maintenance of St. Clair (Answer ¶¶ 8-12), and admit Defendant Greg Lovelace is "the Deputy Commissioner for Maintenance and Construction for the ADOC." (Answer ¶ 6.) Nevertheless, the Defendants have ignored the Plaintiffs' requests to repair broken locks or take some other action to "ameliorate the risk of harm created by cell doors that do not lock." (Compl. ¶ 44.) There is no "theoretical" or actual ability for Plaintiffs and the class of individuals they represent to seek review of Defendants' policy of ignoring this risk of harm. Holloman, 370 F.3d at 1293. The lack of meaningful review contributed to the June 2014 murder of Jodey Waldrop, who was stabbed in his "cell in the middle of the night when the block was on lockdown, due to the cell door not locking." (Compl. ¶ 43(a).) The inability of the plaintiffs and the class to obtain any review of the Defendants' failure to provide secure locking mechanisms indicates that the Defendants' policies regarding the locking mechanisms are final.

Second, Defendants admit that local officials at St. Clair have authority over the housing determinations within the prison. (Answer ¶ 52 ("The Commissioner admits that bed change requests in general population must be approved by Captain

15

Sanders.")). Plaintiffs and the class they represent have no meaningful opportunity to seek review of Defendants' policy of housing vulnerable inmates, including the disabled and elderly in violent units. (Compl. ¶¶ 45-54.) Defendant Sanders, the captain of general population, "is responsible for authorizing all housing movement and has repeatedly assigned older, physically disabled, or otherwise vulnerable prisoners to units and cells with young prisoners with a history of violent conduct." (Compl. ¶ 47; Answer ¶ 52.)  Defendant Sanders has repeatedly "failed to authorize a change in housing assignment when such prisoners request a bed change based on fear for their safety." (Compl. ¶ 47.)

The complaint alleges that attempts to request review or oversight of Defendant Sanders's bed assignment decisions are met with hostility and deference to Sanders's policies. When Mr. Robert Woods, an elderly, disabled, inmate was moved to a violent block where he felt vulnerable he expressed a fear for his safety to Defendant Sanders. (Compl. ¶ 47(c).) In response Defendant Sanders directed Mr. Woods to arm himself with a knife. After Mr. Woods was victimized and complained to Defendant Sanders, Sanders "responded that he had moved Mr. Woods so that something like that would happen to him." (Compl. ¶ 47(c).) Mr. Woods appealed to Defendant Davenport, Defendant Sanders's supervisor. In response, Defendant Davenport told Mr. Woods to "do what he needed to do to survive on his new block." (Compl. ¶

16

47(c).) Defendant Davenport's handling of the situation demonstrates that Defendant Sanders's policy decisions concerning bed placement are effectively enacted without review or supervision. <u>Mandel</u>, 888 F.2d at 794.

Third, Defendants Davenport, Carter, Evans, Sanders, and Malone are responsible for the day-to-day operations of St. Clair and are therefore final policymakers on the lax enforcement of St. Clair's housing assignments. (Compl. ¶¶ 8-12; Answer ¶¶ 8-12.) The Defendants' failure to adequately enforce these housing assignments have put Plaintiffs and the class they represent at risk of violence. (Compl. ¶¶ 55-59.) For example, Benjamin Howlet was stabbed in his cell after correctional officers allowed two unauthorized inmates entry. (Compl. ¶ 58.) There is no mechanism available for Plaintiffs to request review of the housing assignment policy, indicating the Defendants' policy is conducted without supervision or review, and is therefore final. <u>Mandel</u>, 888 F.2d at 794.

Fourth, upon information and belief, Defendants have full authority regarding the provision of "positive, rehabilitative, recreational, or religious programming, as well as treatment and services for drug addiction and mental illness." (Compl. ¶ 60.) The Defendants' refusal to provide rehabilitative programming and therapeutic services is a localized decision, and is not subject to any supervision or request for review by Plaintiffs or the class they represent. As such, Defendants are the final

17

policymakers concerning the provision of services at St. Clair. <u>Mandel</u>, 888 F.2d at 794; (Compl. ¶¶ 60-62.)

Fifth, upon information and belief, the delegation of authority to Defendants has created an environment where DOC Staff at St. Clair have profited from the circulation of contraband, putting Plaintiffs and the class they represent at risk of violence. (Compl. ¶¶ 63-65.) Defendants are "indifferent to the circulation of drugs in the Facility," have failed to "prevent officers bringing in and participating in the sale of drugs to prisoners in the Facility," and "do not employ effective search protocols and procedures when officers enter the Facility." (Compl. ¶ 62.) Because Plaintiffs cannot initiate review of corruption amongst DOC staff, Defendants' policy with regards to the circulation of contraband is final. <u>Mandel</u>, 888 F.2d at 794.

Rather than provide a forum for meaningful review, inmates have been assaulted for attempting to actually participate in the limited review that is available. For example, in response to a request for the presence of a witness at a disciplinary hearing, Sgt. John Mason beat a handcuffed and shackled inmate. (Compl. ¶ 25(h).) Sgt. Mason punched Mr. Robert Shack "in the head, face, and ear, stomped on his back, kicked him and yelled racial epithets at him," resulting in Mr. Shack's hearing loss. (Compl. ¶ 25(h).) This is not the type of meaningful review that divests an official of final policmaking authority. <u>Holloman</u>, 370 F.3d at 1293; cf. <u>Scala</u>, 116

18

F.3d at 1402 ("no question" policy decision was not final where 1) governing regulations explicitly provided for review; 2) superior official actually reviewed the challenged policy decision; 3) and the challenger had previously relied on the "review procedures to his benefit").

Finally, any determination that the Defendants are not final policymakers is inappropriate at this stage of the proceedings. As the Eleventh Circuit has made clear, "identification of the policymaker may often involve fact-sensitive inquiries." Mandel, 888 F.2d at 793. A trial court is required to consider the law, practices, and customs, including ADOC regulations unavailable to the public, in determining whether an official is a final policymaker. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (identification of final policymaker requires a review of state laws, regulations, and relevant custom or practices); Holloman, 370 F.3d at 1291-92; Mandel, 888 F.2d at 793. This type of fact-intensive inquiry is not suitable given the absence of publicly available information concerning ADOC policies and practices.

Pursuant to the policies and practices of ADOC, the Defendants are final policymakers in the operation of St. Clair Correctional Facility.  Their motion for dismissal should be denied.

### C.   Plaintiffs Will Suffer Prejudice if All Defendants Other than Commissioner Thomas are Dismissed.

Defendants allege that Plaintiffs will suffer no prejudice from the dismissal of all of the Defendants other than Defendant Thomas.   They are trying to create a framework whereby the Commissioner is determined to be the final decisionmaker but can simultaneously claim no knowledge of many of the day to day operations at the facility and deny supervisory liability.  Indeed, as discussed above, the Alabama Department of Corrections has eliminated administrative remedies process which prisoners could raise grievances to the Commissioner and thereby limiting his knowledge of conditions in ADOC facilities.[2]  See Henderson, 891 F. Supp. 2d at 1310; Laube v. Campbell, 333 F. Supp. 2d at 1240.

Yet, in order to establish deliberate indifference and succeed on their Eighth Amendment claims, Plaintiffs must establish that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Eleventh Circuit has described this standard as requiring a showing that "'(1)

---

[2]This elimination of administrative remedies is also the reason why the exhaustion requirement of 42 U.S.C. § 1997(e) is inapplicable in federal cases originating in cases in ADOC facilities.

20

subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" <u>Bugge v. Roberts</u>, 430 F. App'x. 753, 757 (11th Cir. 2011).   Therefore, Defendants' formulation of the legal requirements necessary to bring an official capacity suit against a state official would effectively prevent any state prisoner from bringing a successful Eighth Amendment claim against the Alabama Department of Corrections because there would be no official with the requisite knowledge against whom a prisoner could bring suit.

In this case, Defendants have in fact asserted in their Answer that Defendant Thomas lacks sufficient knowledge and information as to the truth of several of the allegations in Plaintiffs' Complaint (<u>see</u> Answer ¶¶ 13, 14, 47, 53, 58), and that he cannot be held liable based on *respondeat superior* (Answer at ¶¶ 17, 24).   Given the legal standard that Plaintiffs must satisfy to establish a violation of their Eighth Amendment rights, it would prejudice them for lower ranking ADOC defendants and the defendants employed at St. Clair to be dismissed.

## II.   The Current Associate Commissioner for Operations and Institutional Coordinator for the Northern Region of the Alabama Department of Corrections are Proper Defendants.

Defendants report that Defendant James Deloach retired effective July 1, 2014 and therefore Plaintiffs cannot bring suit bring suit against him in his official capacity.   Counsel for Defendants have also informed Plaintiffs that former

Institutional Coordinator Grantt Culliver is now serving as Associate Commissioner of Operations for ADOC.

It is well established that Plaintiffs can automatically substitute the official successors of the departed defendants. Fed R. Civ. P. 25(d); <u>Doe v. Wooten</u>, 747 F.3d 1317, 1321 n.2 (11th Cir. 2014); <u>Ganther v. Ingle</u>, 75 F.3d 207, 210 (10th Cir. 1996) ("Ganther has retained his standing against the one remaining original defendant, and through automatic substitution, has also retained standing against the official successors of the departed defendants.").  Therefore, Plaintiffs respectfully request that this Court substitute the officials now in the positions of Associate Commissioner for Operations and Institutional Coordinator for the Northern Region of the Alabama Department of Corrections as Defendants in this action.

## III.    <u>Transfer of Named Plaintiffs.</u>

Although undersigned counsel acknowledges that the ADOC's transfer of Derrick White moots his individual claims, the remainder of the class continue to possess vested interest in the outcome of the litigation. Any attempt to avoid the court's jurisdiction through the strategic transfer of the remaining named plaintiffs will frustrate the interests of justice and the efficient resolution of this case. Fed. R. Civ. P. 23; <u>see also</u>  <u>McKinnon v. Talladega Cnty., Ala.</u>, 745 F.2d 1360, 1363 (11th Cir. 1984) (noting that court "might entertain jurisdiction over [plaintiff's] claim if

22

there were evidence" that defendants transferred prisoner to different facility "to evade the jurisdiction of the court").

## <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss and order the ADOC to provide reasons upon the transfer of named plaintiffs while the litigation is pending.

RESPECTFULLY SUBMITTED,

/s/ Charlotte Morrison
Bryan A. Stevenson (ASB-3184-N75B)
Charlotte R. Morrison (ASB-5897-T80M)
Jennae R. Swiergula (ASB-8265-A35S)
Carla C. Crowder (ASB-8573-L74C)
Ryan C. Becker (ASB-7228-R48B)
Equal Justice Initiative
122 Commerce Street
Montgomery, AL 36104
PH: (334) 269-1803
FX: (334) 269-1806
email: bstevenson@eji.org
        cmorrison@eji.org
        jswiergula@eji.org
        ccrowder@eji.org
        rbecker@eji.org

*Counsel for Plaintiffs*

23

## Certificate of Service

I hereby certify that on 23rd of December, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Albert S. Butler
> Alabama Department of Corrections
> Legal Division
> 301 Ripley Street
> P.O. Box 301501
> Montgomery, AL 36130
>
> Larry B. Childs
> Waller Lansden Dortch & Davis LLP
> AmSouth Harbert Plaza
> 1901 Sixth Avenue North, Suite 1400
> Birmingham, AL 35203

/s/ Charlotte Morrison
Charlotte Morrison