# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ANTONIO CHEATHAM, *et al.*, | |
| Plaintiffs, | |
| vs. | Civil Action No. 4:14-cv-01952-VEH |
| COMMISSIONER KIM THOMAS, *et al.*, | |
| Defendants. | |

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Larry B. Childs
William C. Athanas
Michael A. Fant, Jr.
WALLER LANSDEN DORTCH & DAVIS, LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787

*Counsel for Defendants*

4846-2202-6785.1

Plaintiffs' Response (Doc. 18; "Response") to Defendants' Motion to Dismiss (Doc. 13; "Motion") misstates the proper standard for adequately pleading a claim under 42 U.S.C. § 1983 and fails to establish that Plaintiffs have stated a claim against the Subordinate Defendants.[1] Furthermore, Plaintiffs do not dispute that Defendant James Deloach is not subject to suit in his official capacity or that the Court lacks subject matter jurisdiction over Plaintiff Derrick White's claims. Accordingly, the Court should dismiss the Plaintiffs' claims against Deloach and the other Subordinate Defendants and dismiss Plaintiff White's claims.

I.  **PLAINTIFFS DO NOT STATE PLAUSIBLE CLAIMS FOR RELIEF AGAINST THE SUBORDINATE DEFENDANTS**

Plaintiffs' Response conflates the *Ex parte Young* exception to sovereign immunity with the elements of a claim under § 1983. This Rule 12(b)(6) Motion turns not on *Ex parte Young* but on whether Plaintiffs can state a plausible claim for relief against the Subordinate Defendants under § 1983.

Plaintiffs nevertheless argue that the Eleventh Amendment does not bar this action and that, therefore, Plaintiffs have cleared the Rule 12(b)(6) threshold. This argument is erroneous. While the Eleventh Amendment generally bars official-capacity lawsuits seeking monetary damages against state officials, official-capacity lawsuits seeking only prospective relief against state officials generally

---

[1] Defendants James Deloach, Terrance McDonnell, Greg Lovelace, Grantt Culliver, Carter Davenport, Eric Evans, Karen Carter, Carl Sanders, and Gary Malone are collectively referred to as the "Subordinate Defendants."

are not barred. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 71 n.10 (1989). Because Plaintiffs request prospective relief only, Defendants at this time do not seek dismissal on sovereign immunity grounds. That is the extent of the Eleventh Amendment's significance to the Motion.

Yet in response to Defendants' argument that Plaintiffs fail to state plausible claims for relief against the Subordinate Defendants, Plaintiffs invoke a standard that governs whether the *Ex parte Young* exception to the Eleventh Amendment permits the lawsuit—whether "by virtue of his office, [the defendant] has some connection with the unconstitutional act or conduct complained of." Resp. 6 (internal alteration and quotation marks omitted). Plaintiffs then attempt to turn this standard into the standard that governs whether a plaintiff has pled a plausible claim for relief against a state official under § 1983.

Plaintiffs fundamentally misunderstand the law. This standard does not govern § 1983; it is a constitutional standard for analyzing whether sovereign immunity applies. *See Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) (holding that the "*Ex parte Young* exception requires" that "the official be responsible for the challenged action" and that the official, "by virtue of his office, have some connection with the unconstitutional act or conduct complained of") (internal alteration and quotation marks omitted); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (citing *Luckey*, 860 F.2d at

1015–16). To establish the *Ex Parte Young* exception is not to plead sufficiently a § 1983 claim.[2] Plaintiffs' reliance on cases interpreting the Eleventh Amendment is therefore misplaced as the Court need not resolve any Eleventh Amendment issues to dispose of this Motion.

Instead, the Court must resolve whether Plaintiffs have stated plausible claims for relief against the Subordinate Defendants. To prevail on an official-capacity claim a plaintiff must prove that an official "policy or custom" actually caused the complained of constitutional violation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Connick v. Thompson*, 131 S. Ct. 1350, 1359, 563 U.S. __ (2011). A plaintiff must prove that the defendant was a "decisionmaker" who possessed "final authority" to establish that official policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *see also Thompson*, 131 S. Ct. at 1359. As Plaintiffs put it in the Response, a governmental entity may be held liable only for the "'policies of individuals to whom it delegated *final decisionmaking authority* in a particular area.'" Resp. 10 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291–92 (11th Cir. 2004)).[3] Thus, Plaintiffs must be able to allege plausibly that

---

[2] The exception's applicability is in fact not tethered to § 1983. *See, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (explaining that Americans with Disabilities Act can be enforced "by private individuals in actions for injunctive relief under *Ex parte Young*").

[3] Although Plaintiffs assert that this standard applies only to actions against local governments and local officials, *see* Resp. 5, Plaintiffs cite no cases in support of that

4846-2202-6785.1                    3

the Subordinate Defendants are final policymakers. As a matter of law Plaintiffs cannot do so.

State law determines whether a state official has "final policymaker authority for § 1983 purposes." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (governmental entity can only be liable under § 1983 where the decisions at issue were made by final policymakers as determined by state law)); *Mandel v. Doe*, 888 F.2d 783, 794 (11th Cir. 1989) (same). In Alabama, the Legislature statutorily has affirmatively answered the relevant question: Title 14 of the Alabama Code expressly provides that the Commissioner—and not any of the subordinate officials within the ADOC—exercises "independent *direction*, *supervision* and *control*" of the ADOC. Ala. Code § 14-1-1.3 (emphasis added); *see also* Ala. Code § 14-1-1.2 (providing that the Commissioner is "responsible for administering and exercising the direct and effective control over penal and corrections institutions"). Included in the Commissioner's vested "functions and duties," as head of the ADOC, are: the "manage[ment], supervis[ion], and *control*" of all ADOC penal and correctional institutions; the authority to "investigate the management of all

---

proposition. Plaintiffs also do not offer a plausible alternative standard under which the Court should assess the viability of these official-capacity claims, because no alternative standard exists. There is no difference, as a matter of law, between the elements of an official-capacity claim against a local official and the elements of an official-capacity claim against a state official. *See White v. Thompson*, 299 F. App'x 930, 933 (11th Cir. 2008) (applying the final policymaker analysis to an official-capacity lawsuit against state officials).

such institutions and the conduct and efficiency of the officers or persons charged with their management;" and the authority to "*promulgate* such *rules* and *regulations* necessary to hygiene, sanitation, cleanliness, healthfulness, feeding of prisoners, management and security of all prisons and jails." Ala. Code § 14-1-8(a)(1), (5)-(6) (emphasis added). The statute gives no other official any such power or decisionmaking authority.[4] Indeed, Plaintiffs admit in their Complaint that the Commissioner—and no other Defendant—is "responsible for the direction, supervision, and control" of the ADOC. Compl. ¶ 3. Nor could Plaintiffs plausibly make such an allegation regarding any other Defendant, since the Alabama Code makes clear that only the Commissioner establishes final policy for the ADOC. Accordingly, because the Alabama Code expressly has answered the relevant question, Plaintiffs cannot plausibly allege official-capacity claims against the Subordinate Defendants. The lawsuit should be dismissed as to them.

Remarkably, the Alabama Code is nowhere to be found in the Response. Yet, ignoring the pronouncements of the Supreme Court and the Eleventh Circuit on the primary role of state law in defining a final policymaker, and failing to cite or even refer to the Alabama Code, Plaintiffs press on.

Plaintiffs contend that the Subordinate Defendants were final policymakers

---

[4] Emphasizing the Commissioner's role as the exclusive policymaker for the ADOC, the Old Fifth Circuit went so far as to say that not even the Governor of Alabama "has [a] hand in the operations of the Alabama penal system beyond the customary budget recommendations to the legislature and the appointment of [the Commissioner]." *Newman v. Alabama*, 559 F.2d 283, 292 (5th Cir. 1977), *vacated on other grounds*, *Alabama v. Pugh*, 438 U.S. 781 (1978).

because the Subordinate Defendants allegedly have been delegated policymaking authority at St. Clair. *See* Resp. 10-11. Neither the law nor the Complaint supports these contentions. Plaintiffs offer no support for the Subordinate Defendants' purported policymaking authority beyond re-asserting the bare allegations in the Complaint that the Subordinate Defendants were given responsibility for the various operations of St. Clair (including vague references to "safety," "security," "maintenance and construction," and "day-to-day operations"). *See* Resp. 11; Compl. ¶¶ 4–12.[5] Alabama law is clear that the Commissioner is the ADOC's only final policymaker, and the Complaint accordingly lacks allegations to show that the Subordinate Defendants are "responsible for *establishing final policy* with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483 (emphasis added); *id.* at 481–82 ("[W]ithout more," the fact that a governmental official "has discretion in the exercise of particular functions does not . . . give rise to [official-capacity] liability based on an exercise of that discretion."). In other words, performing particular functions at St. Clair is not tantamount to setting policy.[6] Just as the Deputy Sheriffs in *Pembaur* were not acting as final policymakers for the

---

[5] Plaintiffs refer to the Commissioner's Answer at various times in the Response. The Answer, however, is irrelevant to the resolution of this Rule 12(b)(6) Motion which tests the adequacy of the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009). Nevertheless, nothing in the Commissioner's Answer contradicts anything in the Motion to Dismiss.

[6] To the extent that Plaintiffs contend that decisions regarding bed change requests or housing assignments amount to final policy, the same logic applies. Processing such requests is merely an exercise of discretion in executing ADOC policy, *see Pembaur*, 475 U.S. at 481–82, and Plaintiffs do not allege otherwise in the Complaint.

county when they entered the plaintiffs' establishment pursuant to orders from the County Prosecutor, the Subordinate Defendants are not acting as final policymakers in the exercise of daily functions pursuant to policies set and reviewed by the Commissioner.

Plaintiffs further argue that the Subordinate Defendants' decisions are not subject to "meaningful review" and that the Subordinate Defendants are therefore final policymakers. Resp. 11. Plaintiffs are incorrect as a matter of law. Turning back to the ultimate authority on this question, the Alabama Code, the Commissioner is vested with the authority to "superintend the management . . . of all subordinate officers, persons or guards"; it is the Commissioner's "duty to see that the laws in relation to convicts and the rules of the [ADOC] are enforced"; and the Commissioner's "orders shall be obeyed by all officers, guards and convicts." Ala. Code § 14-3-1. Because of these provisions, Plaintiffs cannot allege any facts to demonstrate that contrary to the Alabama Code the Subordinate Defendants' decisions are "insulated from review." [7] *See Martinez v. Opa-Lacka*, 971 F.2d 708, 714 (11th Cir. 1992); *see also Holloman*, 370 F.3d at 1293 (official whose decisions are subject to "meaningful review" is not final policymaker).

In particular, Plaintiffs contend that the ADOC has "eliminated Plaintiffs'

---

[7] Moreover, Plaintiffs' Complaint itself demonstrates that the Commissioner has the power to review all decisions, as Plaintiffs have alleged that they sent *the Commissioner* a letter detailing alleged wrongs at St. Clair and that they requested that *the Commissioner* (not any Deputy or other subordinate official) implement "immediate reform[s]." Compl. ¶ 18.

ability" to request review of "Defendants' unconstitutional conduct" and that all Defendants are therefore final policymakers. Resp. 13-14. For example, Plaintiffs argue that Defendants ignored Plaintiffs' requests to repair broken cell locks and that this "lack of meaningful review" demonstrates that the Subordinate Defendants are final policymakers. Resp. 15. This argument fails. Plaintiffs merely allege in the Complaint that the locks were not fixed and fail to allege that any specific Subordinate Defendant made the decision not to fix the locks.[8] Plaintiffs thus fail to allege, as required, that any of the Subordinate Defendants made a decision that was insulated from review. *See Martinez*, 971 F.2d at 714.

In a similar vein, Plaintiffs argue that the lack of a "mechanism" *for Plaintiffs* to request review of the Subordinate Defendants' decisions demonstrates final policymaker status. Plaintiffs confuse the law governing administrative exhaustion with the law governing § 1983. The "meaningful review" standard refers to whether superior officials have *the power* to override an inferior official's decisions in a subject area. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991) (because the city charter gave the city council the power to override the mayor's decision on zoning matters, the mayor "was not the ultimate policymaking authority regarding zoning issues"). As set forth in the Alabama

---

[8] Although Plaintiffs refer specifically to Defendant Greg Lovelace, the Deputy Commissioner for Maintenance and Construction, Plaintiffs fail to explain how Defendant Lovelace has authority to render a decision regarding the cell locks without the Commissioner's final review and approval. Defendant Lovelace has no such authority under Alabama law.

Code the Commissioner is the only individual with the power to override any decision made by a subordinate official. This is unrelated to whether a prisoner has the ability to appeal a grievance, which is relevant instead to whether a prisoner has exhausted his administrative remedies. *See* 42 U.S.C. § 1997e(a).

Plaintiffs also protest that "any determination that the [Subordinate] Defendants are not final policymakers is inappropriate at this stage of the proceedings." Resp. 19. In this case, however, such a determination is appropriate because the Alabama Code expressly defines the Commissioner as the only final policymaker for the ADOC. *See Mandel*, 888 F.2d at 793 (identifying "individuals whose decisions represent the official policy" is a matter of "law to be resolved by the trial court judge") (citing *Jett*, 491 U.S. at 737).

Finally, Plaintiffs offer this dire warning to the Court: "Defendants' formulation of the legal requirements necessary to bring an official capacity suit against a state official would effectively prevent any state prisoner from bringing a successful Eighth Amendment claim against the [ADOC] . . . ." Resp. 21. Plaintiffs again fundamentally misunderstand the law. The final policymaker requirement exists because: (1) an official-capacity lawsuit seeks to hold the office itself liable under § 1983; (2) the office itself can violate the Constitution only if an official policy causes the violation; and (3) only final policymakers make official policy. *See Thompson*, 131 S. Ct. at 1359. The strict requirement ensures that

governmental entities are held liable only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Id*.; *see also Pembaur*, 475 U.S. at 479 (governmental entities may not be held vicariously liable for the acts of their employees). The law does not permit Plaintiffs to bring official-capacity claims simply because Defendants work for the State, and the Court will not prejudice Plaintiffs by requiring them to comply with the law. Moreover, officials who are not final policymakers may be and frequently are sued in their *individual capacities*; the strictures of official-capacity claims do not apply to those claims.[9]

## II. CONCLUSION

Accordingly, the Court should dismiss the claims against the Subordinate Defendants under Rule 12(b)(6), dismiss the claims against Defendant Deloach because he no longer has an official capacity in which to be sued, and dismiss the claims of Plaintiff White for lack of subject matter jurisdiction.[10]

Dated: December 30, 2014.

---

[9] Indeed, Plaintiffs Franky Johnson and Allan Williams separately have filed individual-capacity claims against officials at St. Clair for some of the same incidents alleged here. Both lawsuits are currently pending in the Northern District of Alabama. *See Johnson v. Mangoine*, No. 1:13-cv-1928; *Williams v. Davenport*, No. 4:14-cv-240.

[10] Plaintiffs' requests for relief—asking the Court to "substitute the officials now in the positions of Associate Commissioner for Operations and Institutional Coordinator for the Northern Region of the Alabama Department of Corrections as Defendants" and to "order the ADOC to provide reasons upon the transfer of named plaintiffs while the litigation is pending"—are improper and the Court should not consider them here. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion.").

                Respectfully submitted,

                Luther Strange
                *Attorney General*
                Anne A. Hill
                *General Counsel*
                Albert S. Butler
                *Assistant Attorney General*

Alabama Department of Corrections
Legal Division
301 Ripley Street
Post Office Box 301501
Montgomery, Alabama 36130
Telephone: (334) 353-3889

                /s/ Michael A. Fant
                Larry B. Childs
                Larry.Childs@wallerlaw.com
                William C. Athanas
                William.Athanas@wallerlaw.com
                Michael A. Fant, Jr.
                Mike.Fant@wallerlaw.com

                *Attorneys for Defendants*

**OF COUNSEL:**

WALLER LANSDEN DORTCH & DAVIS, LLP
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203
Telephone: (205) 226-5700
Facsimile: (205) 214-8787

## CERTIFICATE OF SERVICE

      I hereby certify that on December 30, 2014, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by operation of the CM/ECF system to the following counsel of record:

Bryan A. Stevenson
Charlotte R. Morrison
Jennae R. Swiergula
Carla C. Crowder
Ryan C. Becker
Equal Justice Initiative
122 Commerce Street
Montgomery, Alabama 36104

*Attorneys for Plaintiffs*

                              /s/ Michael A. Fant
                              OF COUNSEL