# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MARK DUKE, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:14-cv-01952-RDP |
| | ) |
| **JEFFERSON S. DUNN, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

This matter is before the court on Defendants' Partial Motion to Dismiss the Fourth Amended and Supplemental Complaint. (Doc. # 271). The motion is fully briefed (Docs. # 272, 275, 277, 280) and ripe for decision. For the reasons provided below, the motion is due to be denied.

**I.  Background**

This action was brought on October 13, 2014 on behalf of individuals confined in the custody of the Alabama Department of Corrections ("ADOC") at the St. Clair Correctional Facility. (Doc. # 1 at 2). After extensive litigation, on November 1, 2017, the parties reached a private settlement agreement, pursuant to 18 U.S.C. § 3626(c)(2). (Doc. # 180). The court administratively closed the case, but retained jurisdiction for the sole purpose of reinstating the action if a corresponding motion was filed by November 1, 2019. (Doc. # 181).

On October 29, 2019, the parties filed a joint request to stay. (Doc. # 184). Plaintiffs indicated their position was that the State had failed to substantially comply with their agreement and that dangerous conditions continued to exist at St. Clair. (*Id.* at 2). On the other hand, the State maintained that it had worked in good faith to comply with the agreement but that its performance

may have been frustrated for reasons beyond its control. (*Id.*). The court granted a nine-month stay of the action for the parties to attempt to resolve the dispute before reinstatement. (Docs. # 185, 186). The stay was later extended until January 31, 2021. (Doc. # 197).

On January 29, 2021, Plaintiffs sought reinstatement of the action. (Doc. # 198). After another attempt by the parties to mediate the case, the court vacated the December 1, 2017 dismissal order and reinstated this action. (Doc. # 202).

On November 8, 2021, Plaintiffs filed their Third Amended and Supplemental Complaint. (Doc. # 240). Defendants filed a partial motion to dismiss, arguing that (1) the court should dismiss those Named Plaintiffs no longer residing at St. Clair; (2) the court should dismiss all Defendants other than the Commissioner; and (3) *Braggs v. Dunn*, 2:14-cv-601-MHT (WO) (M.D. Ala. 2014), precluded injunctive relief regarding correctional and mental-health staffing. (Doc. # 248).

The court granted in part and denied in part that motion, dismissing certain Plaintiffs and Defendants without prejudice. (Doc. # 262). The court held that each Named Plaintiff who was not residing at St. Clair on the filing date of the Third Amended and Supplemental Complaint was dismissed without prejudice. (Docs. # 261 at 2; 262). The court also dismissed without prejudice each Defendant other than the Commissioner because Plaintiffs failed to allege that those Defendants had the power and duty to implement the relief sought. (Docs. # 261 at 2-3 n.1; 262). Further, the court held that *Braggs* did not preclude the relief sought in this action. (*Id.* at 3).

Plaintiffs then sought leave to file a Fourth Amended and Supplemental Complaint. (Doc. # 264). Plaintiffs identified two areas that would be the subject of the amendment. First, Plaintiffs sought to add factual allegations regarding Defendants' job responsibilities to explain each Defendant's authority and duty to implement changes to policies and practices at St. Clair. (*Id.* at 3). Second, Plaintiffs sought to substitute certain Defendants under Rule 25(d) of the Federal Rules

of Civil Procedure. (*Id.*). The court held a telephonic conference regarding the motion on February 4, 2022. (Doc. # 266). Following the conference, the court granted Plaintiffs' Motion for Leave to File a Fourth Amended Complaint. (*Id.*). The court noted that Defendants would have the opportunity to file a motion to dismiss. (*Id.*).

In their Fourth Amended and Supplemental Complaint, Plaintiffs continued to assert three claims for relief under 42 U.S.C. § 1983 related to alleged cruel and unusual punishment at St. Clair: (1) prisoner-on-prisoner violence; (2) sexual abuse; and (3) excessive force. (Doc. # 267 at 123-26). To remedy these alleged violations, Plaintiffs seek, in part, an injunction that would provide the following relief:

> 1. Reporting and Investigations: Policies and practices requiring the prompt, accurate and consistent classification, reporting of and investigations of incidents of violence and sexual assault among prisoners and between prisoners and correctional officers to the appropriate ADOC authorities;
>
> 2. Staffing: The immediate hiring of sufficient medical, mental health and correctional staffing to provide adequate and necessary care and security at St. Clair;
>
> 3. Overcrowding: The immediate reduction in the number of prisoners housed at St. Clair;
>
> 4. Cameras: The installation of an adequate system of camera surveillance and the implementation of policies, practices and procedures to maintain the camera surveillance system in sufficient condition to provide adequate security;
>
> 5. Contraband: The immediate development and implementation of policies, practices and procedures to eliminate the introduction of drugs, weapons and other contraband into St. Clair, including but not limited to policies governing the investigation into and discipline of correctional officers responsible for the introduction of drugs and contraband into St. Clair;
>
> 6. Classification System: The development and implementation of a classification system to adequately identify and segregate violent and non-violent offenders, as well as PREA offenders and victims, arriving at St. Clair;

7. Segregation: The development and implementation of policies, practices and procedures that ensure that prisoners are separated from each other as appropriate to protect their safety and that prisoners remain segregated as necessary;

8. Locks: The installation of working locking mechanisms and the implementation of policies, practices and procedures to maintain the locking mechanisms in sufficient condition to provide adequate security;

9. Programming: The development and implementation of rehabilitative, educational and vocational programming and therapeutic services; and

10. Training: The immediate development and implementation of policies, practices, procedures and training to reduce the excessive use of force by correctional officers against prisoners.

(*Id.* at 127-28).

In the pending motion to dismiss, Defendants argue that Plaintiffs' Fourth Amended and Supplemental Complaint continues to insufficiently plead that Defendants other than the Commissioner have the authority to implement the injunctive relief sought in this action. (Doc. # 271 at 2).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense ... to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

While an Eleventh Amendment immunity defense "is not jurisdictional in the sense that courts must address the issue *sua* sponte," the defense "is in the nature of a jurisdictional bar." *Bouchard Transp. Co. v. Fla. Dep't of Env't Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996). Generally, Federal Rule of Civil Procedure 12(b)(1) governs defenses concerning lack of subject matter jurisdiction. Challenges to subject matter jurisdiction under Rule 12(b)(1) can exist in two different forms: facial attacks and factual attacks. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When presented with a facial attack on a plaintiff's complaint, a court determines whether the complaint has sufficiently alleged subject-matter

jurisdiction. *Id*. The court proceeds as if it were evaluating a Rule 12(b)(6) motion, views the complaint in the light most favorable to the plaintiff, and accepts any well-pleaded facts alleged in the complaint as true. *Id*. Factual attacks, on the other hand, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*. (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, Defendants bring the motion under Rule 12(b)(6). (Doc. # 272 at 4). Also, while Defendants summarily reference materials outside the pleadings (ADOC's Administrative Regulations), neither those materials nor any other evidentiary materials are attached to the motion. Therefore, if the court were to evaluate Defendants' motion under Rule 12(b)(1), it would do so as a facial attack. Accordingly, the court will analyze Defendants' motion pursuant to the standards governing Rule 12(b)(6).

**III.   Analysis**

Defendants make two distinct arguments in their motion. First, Defendants contend that naming ADOC officials other than the Commissioner is redundant and unnecessary. (Doc. # 272 at 8-9). Second, Defendants argue that the *Ex parte Young* exception to Eleventh Amendment sovereign immunity does not apply to Defendants other than the Commissioner. (*Id.* at 9-10) (claiming that the "[*Ex parte Young*] exception applies ***only*** where the state official named as a defendant possesses the authority to grant the injunctive relief the Plaintiffs seek") (emphasis in original). The first contention appears to be a discretionary decision entrusted to the court, while the latter argument is a mandatory condition to overcome Eleventh Amendment sovereign immunity. For the reasons explained below, the court (1) declines to dismiss any Defendant as redundant or unnecessary and (2) holds that Plaintiffs have sufficiently pleaded that each

Defendant is proper under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity.

After the court ruled that Plaintiffs had not sufficiently alleged that Defendants, other than the Commissioner, had the authority and duty to implement the relief sought in the Third Amended and Supplemental Complaint (Doc. # 261 at 2-3 n.1), Plaintiffs requested leave to file a Fourth Amended and Supplemental Complaint in an attempt to cure this pleading deficiency -- which the court granted. (Doc. # 266). Thus, the court begins its analysis by comparing the factual allegations in the Third Amended and Supplemental Complaint and the Fourth Amended and Supplemental Complaint in side-by-side columns:[1]

| **Third Amended and Supplemental Complaint** | **Fourth Amended and Supplemental Complaint** |
|---|---|
| Defendant Dennis W. Stamper is the Deputy Commissioner of Operations for the ADOC. As Deputy Commissioner, Defendant Stamper is responsible for ensuring the effective and safe daily operations of prison facilities. Defendant Stamper is sued in his official capacity. Defendant Stamper is substituted as a party under Fed. R. Civ. P. 25(d) in place of Grant Culliver. | Defendant Wendy Williams is the Deputy Commissioner of Operations for ADOC, a position she assumed in January 2022. Her direct supervisor is the Commissioner. As Deputy Commissioner of Operations, Defendant Williams is responsible for ensuring the effective and safe daily operations of ADOC facilities, including St. Clair. *ADOC's administrative regulations authorize and require Defendant Williams to oversee institutional security at St. Clair; oversee classification of inmates (including implementing and evaluating plans and programs for classification, reviewing and drafting classification regulations, implementing classification policy and procedures and supervising the Classification Review Board) and transfers at St. Clair; review incident reports and investigations at St. Clair; administer the training program for departmental employees and oversee the Training Division; manage the Security Audit Team and ensure that security audits are* |

---

[1] The emphasized portion of the chart denotes the allegations that Plaintiffs added in the Fourth Amended and Supplemental Complaint.

7

| | |
|---|---|
| | *properly conducted to assess the adequacy of institutional policies and procedures; oversee the design and implementation of any necessary corrective action plans at St. Clair; and oversee facilities' staffing plans with regard to PREA compliance. Defendant Williams has the authority to conduct unannounced security audits at her discretion, receives all security audit reports, and is the point person on the ADOC administrative team* regarding security issues and prisoner-on-prisoner violence at St. Clair, among other facilities. *Defendant Williams also has supervisory authority over security equipment and devices for use in ADOC facilities, including St. Clair, and oversees use of force incidents at St. Clair. As such, Defendant Williams has the authority and duty to implement and/or supervise changes to departmental and institutional policies and practices relating to, but not limited to, staffing levels, external and internal classification of inmates, training of personnel, any corrective action plans for St. Clair created in response to security audits, and the use of force by correctional staff at St. Clair.* Defendant Williams is sued in her official capacity. Defendant Williams is substituted as a party under Fed. R. Civ. P. 25(d) in place of Dennis Stamper, who was named in the TAC. |
| Defendant Steve Watson is the Associate Commissioner for Plans and Programs for the ADOC. As Associate Commissioner, Defendant Watson is responsible for the Central Records Division, Research and Planning Division, Supervised Reentry Program, Religious Programs, Educational and Vocational Education Programs and Victim-Constituent Services. Defendant Watson is sued in his official capacity. Defendant Watson is substituted as a party under Fed. R. Civ. P. 25(d) in place of Terrance McDonnell. | [Excluded in Fourth Amended and Supplemental Complaint] |

8

| | |
|---|---|
| Defendant Jenny Abbott is the Director of Facilities Management for the ADOC. As Director, Defendant Abbott is responsible for ADOC's Engineering Administrative Division, the Environmental Division and the Security Technologies Division. She also oversees maintenance operations within ADOC's correctional institutions. Defendant Abbott is sued in her official capacity. Defendant Abbott is substituted as a party under Fed. R. Civ. P. 25(d) in place of Greg Lovelace. | Defendant Jenny Abbott is the Director of Facilities Management for ADOC, a position she assumed in ADOC Fiscal Year 2017. As Director of Facilities Management, Defendant Abbott is responsible for ADOC's Engineering Administrative Division, the Environmental Division and the Security Technologies Division. Defendant Abbott's direct supervisor is the Commissioner. *As Director of Facilities Management, Defendant Abbott is responsible for and has the authority to oversee new construction projects, renovation projects, and maintenance operations within ADOC's correctional institutions, including St. Clair, and also reviews and approves facility maintenance expenditures. Defendant Abbott is the person accountable for security construction and renovation projects at St. Clair, including replacement of security locks and installation of surveillance cameras. As such, Defendant Abbott has the authority and duty to implement and/or supervise changes to departmental and institutional policies and practices relating to, but not limited to, security construction and renovation projects, including those relating to cell locks and security cameras, at St. Clair.* Defendant Abbott is sued in her official capacity. |
| Defendant Edward Ellington is the Institutional Coordinator for the Northern Region of the ADOC. Defendant Ellington is responsible for planning, monitoring, and reviewing day-to-day operations of correctional institutions in his assigned area, including St. Clair. Defendant Ellington is sued in his official capacity. Defendant Ellington is substituted as a party under Fed. R. Civ. P. 25(d) in place of Grant Culliver. | Defendant Edward Ellington is the Institutional Coordinator for the Northern Region of ADOC, a position that he assumed in June 2017. As Institutional Coordinator for the Northern Region, *Defendant Ellington is responsible for leading the operations of all northern region facilities and managing 12 state prisons*, including planning, monitoring and reviewing the operations of correctional institutions in his assigned region, including St. Clair. *Upon information and belief, Defendant Ellington also supervises the wardens at each correctional institution in his assigned region, including St. Clair. Defendant Ellington's direct supervisor is the Deputy Commissioner of Operations. ADOC's administrative regulations authorize and* |

9

|  | |
|---|---|
|  | *require Defendant Ellington to lead the external Security Audit Team, including receiving and reviewing any security audits of St. Clair; review and oversee any corrective action plans for St. Clair created in response to security audits, including following-up on and monitoring of all unresolved recommendations identified by the security audit process; receive reports of PREA audits conducted at St. Clair; and review incident reports and investigations at St. Clair. Defendant Ellington also participates in the monthly meetings of the Quality Improvement Team ("QIT"), the goal of which is to identify and remedy issues that arise at St. Clair that impact operational safety and conditions. The QIT is responsible for the development and implementation of policy relating to classification of prisoners, and the reporting of incidents involving serious physical injury. Upon information and belief, Defendant Ellington has the authority to direct shakedown and contraband searches at St. Clair, including operations conducted by the Correctional Emergency Response Team ("CERT"). As such, Defendant Ellington has the authority and duty to implement and/or supervise changes to institutional policies and practices relating to, but not limited to, security audits, corrective action plans, the QIT, shakedowns and contraband searches, and operational safety conditions at St. Clair. Defendant Ellington is sued in his official capacity.* |
| Defendant Guy Noe is the Warden III of St. Clair. As Warden III, Defendant Noe is responsible for the day-to-day operations of the Facility, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Defendant Noe is sued in his official capacity. Defendant Noe is substituted as a party under Fed. R. Civ. P. 25(d) in place of Dewayne Estes. | Defendant Guy Noe is the Warden III at St. Clair, a position he assumed in February 2021. As Warden III at St. Clair, *Defendant Noe is responsible for establishing and modifying institutional policies and practices, including, but not limited to, the publication of standard operating procedures ("SOPs") consistent with the laws of the State of Alabama and in conjunction with the policies and directives of the Commissioner. His direct supervisor is the Institutional Coordinator for the Northern* |

10

| | |
|---|---|
| | *Region. In addition to planning, directing, controlling, and otherwise managing St. Clair to ensure the safety and security of its prisoners and staff, ADOC's administrative regulations authorize and require Defendant Noe to perform the following specific duties at St. Clair: reviewing and approving incident reports and assessing incidents to determine the need for involvement of the Investigations & Intelligence Division of ADOC ("I&I"); reviewing investigations at St. Clair; managing St. Clair's internal security audit team and debriefing external security audits with the external Security Audit Team; establishing procedures for, and ensuring compliance of, inspections and searches at St. Clair; requesting operational and search support from the CERT and properly briefing the State CERT Coordinator and ADOC officials of the institutional situation and what he would like accomplished on the mission; developing and documenting a facility staffing plan to provide for adequate staffing levels to protect prisoners against physical violence and sexual abuse; ensuring adequate classification and housing of prisoners, including providing input on prisoners' classification status and housing assignments based on behavior and other factors; developing policies to ensure the adequate reporting and investigation of incidents of sexual assault; developing policies to ensure that prisoners who report sexual abuse or sexual harassment are protected from retaliation; ensuring that prisoners at high risk for sexual victimization are not placed in involuntary segregation; ensuring compliance with administrative regulations as they relate to PREA; designating an Institutional PREA Compliance Manager; participating in audits related to PREA; and supervising, monitoring and recommending corrective action for subordinate employees at St. Clair. Defendant Noe has also participated in the monthly QIT meetings. As such, Defendant Noe has the authority and duty to implement and/or* |

11

| | |
|---|---|
| | *supervise changes to St. Clair policies and practices relating to, but not limited to, incident classification, reporting and investigation, security audits, procedures for inspections and searches, staffing, and prisoner classification and housing at St. Clair.* Defendant Noe is sued in his official capacity. |
| Defendant Phillip Mitchell is Warden II of St. Clair. As Warden II, Defendant Mitchell is responsible for the day-to-day operations of the Facility, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Defendant Mitchell is sued in his official capacity. Defendant Mitchell is substituted as a party under Fed. R. Civ. P. 25(d) in place of Eric Evans. | *Defendant Phillip Mitchell is the Warden II at St. Clair, a position he assumed in June 2020. As Warden II, Defendant Mitchell is responsible for implementing institutional policies and practices, consistent with the laws of the State of Alabama and in conjunction with the policies and directives of the Commissioner. The Institutional Coordinator for the Northern Region and Warden III supervise Warden II. As Warden II, ADOC's administrative regulations authorize and require Defendant Mitchell to perform the following specific duties: assessing incidents at St. Clair and determining need for I&I involvement; reviewing investigations; managing St. Clair's internal security audit team; requesting operational and search support from the CERT and properly briefing the State CERT Coordinator and ADOC officials of the institutional situation and what he would like accomplished on the mission; conducting use of force investigations and recommending further investigation by I&I; and supervising, monitoring, and recommending corrective action for subordinate employees at St. Clair. Upon information and belief, Defendant Mitchell is also responsible for supervising contraband searches, ensuring compliance with PREA standards and supervising the maintenance department. As such, Defendant Mitchell has the authority and duty to implement changes to St. Clair policies and practices relating to, but not limited to, incident reporting and investigation, security audits and procedures for inspections and searches at St. Clair.* |

12

|  | Defendant Mitchell is sued in his official capacity. |
|---|---|
| Defendant Darrel Fox is Warden I of St. Clair. As Warden I, Defendant Fox is responsible for the day-to-day operations of the Facility, as well as the safety of all inmates at the Facility and the supervision of all subordinate employees. Defendant Fox is sued in his official capacity. Defendant Fox is substituted as a party under Fed. R. Civ. P. 25(d) in place of Karen Carter. | Defendant Darrel Fox is the Warden I at St. Clair, a position he assumed in February 2021. As Warden I, Defendant Fox is responsible for *implementing institutional policies and practices, consistent with the laws of the State of Alabama and in conjunction with the policies and directives of the Commissioner.* The Institutional Coordinator for the Northern Region and Wardens III and II supervise Warden I. *As Warden I, ADOC's administrative regulations authorize and require Defendant Fox to perform the following specific duties: assessing incidents at St. Clair and determining need for I&I involvement; reviewing investigations; managing St. Clair's internal security audit team; requesting operational and search support from the CERT and properly briefing the State CERT Coordinator and ADOC officials of the institutional situation and what he would like accomplished on the mission; conducting use of force investigations and recommending further investigation by I&I; and supervising, monitoring, and recommending corrective action for subordinate employees at St. Clair. Upon information and belief, Defendant Fox is also responsible for ensuring compliance with PREA standards, managing rehabilitative programming and ensuring the timely completion of necessary facility maintenance. As such, Defendant Fox has the authority and duty to implement changes to St. Clair policies and practices relating to, but not limited to, incident reporting and investigation, security audits and procedures for inspections and searches at St. Clair.* Defendant Fox is sued in his official capacity. |
| Defendant Christopher Webster is a Captain at St. Clair. As Captain, Defendant Webster is responsible for the safety of all inmates at the Facility, for supervising the security activities | Defendant Christopher Webster is a Captain at St. Clair, a position he assumed in February 2021. Defendant Webster reports directly to Wardens III, II and I and is responsible for |

13

| | |
|---|---|
| of St. Clair and the supervision of all subordinate employees. Defendant Webster is sued in his official capacity. Defendant Webster is substituted as a party under Fed. R. Civ. P. 25(d) in place of Carl Sanders. | supervising all lieutenants, sergeants and correctional officers at St. Clair. *As a Captain at St. Clair, Defendant Webster has overseen operations in the restrictive housing unit (the "RHU"), and is responsible for ensuring the safety of all prisoners. His specific duties at St. Clair include reviewing subordinates' logbooks and duty post logs to ensure operations are being logged during shifts; reporting incidents to the wardens; notifying I&I of incidents and requesting investigative assistance; conducting use of force investigations involving subordinate staff and making findings and recommendations, including referring cases to I&I; reporting maintenance issues, including malfunctioning locks and cameras, to the wardens and requesting repairs; and ensuring that subordinates are carrying out their required monitoring of housing units, security checks, and contraband searches. He also has the authority to adjust prisoners' housing assignments in an emergency. As such, Defendant Webster has the authority and duty to implement changes to policies and practices relating to, but not limited to, staffing, incident classification, reporting and investigation of incidents, use of force by correctional staff at St. Clair, maintenance (including cell locks and security cameras), and daily monitoring, security checks, and contraband searches at St. Clair.* Defendant Webster is sued in his official capacity. |
| Defendant Gary Malone is a Captain at St. Clair. As Captain, Defendant Malone is responsible for the safety of all inmates at the Facility, for supervising the security activities of St. Clair and the supervision of all subordinate employees. Defendant Malone is sued in his official capacity | Defendant Gary Malone is a Captain at St. Clair, a position he has held since 2010. Defendant Malone reports directly to Wardens III, II and I and is responsible for supervising all lieutenants, sergeants and correctional officers at St. Clair. *As a Captain at St. Clair, Defendant Malone has overseen operations in the RHU and population housing units, and is responsible for ensuring the safety of all prisoners. His specific duties at St. Clair include serving on the Internal Classification Board (the "ICB") and ensuring that prisoners* |

14

|  | *are safely housed through his authority to make housing assignments, particularly for the RHU; reviewing subordinates' logbooks and duty post logs to ensure operations are being logged during shifts; reporting incidents to the wardens; notifying I&I of incidents and requesting investigative assistance; conducting use of force investigations involving subordinate staff and making findings and recommendations, including referring cases to I&I; reporting maintenance issues, including malfunctioning locks and cameras, to the wardens and requesting repairs; and ensuring that subordinates are carrying out their required monitoring of housing units, security checks, and contraband searches. As such, Defendant Malone has the authority and duty to implement changes to policies and practices relating to, but not limited to, the RHU and population housing units, external and internal classification of prisoners, staffing, incident classification, reporting and investigation of incidents, use of force by correctional staff at St. Clair, maintenance (including cell locks and security cameras), and daily monitoring, security checks, and contraband searches at St. Clair. Defendant Malone is sued in his official capacity.* |
|---|---|

(*Compare* Doc. # 240 at 3-9 *with* Doc. # 267 at 7-16) (emphasis added).

For a court to determine whether *Ex parte Young* applies to a particular action against a state official, it "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Attwood v. Clemons*, 818 F. App'x 863, 867 (11th Cir. 2020) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002). In *Atwood*, a panel of the Eleventh Circuit conducted this analysis in two parts. The court considered (1) whether there is an allegation of an ongoing violation of federal law, and (2) whether the requested relief is properly characterized as

prospective. 818 F. App'x at 867-68. Here, Plaintiffs allege ongoing violations of the Eighth Amendment, and they seek declaratory and injunctive relief — both of which are properly characterized as prospective. Thus, Plaintiffs satisfy the two requirements articulated in *Atwood*.

In addition, Plaintiffs must properly allege that each Defendant, in his official capacity, is "responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988). This is where Plaintiffs and Defendants part ways. Defendants argue that an official is "responsible for the action" only "where the state official named as a defendant possesses the authority to grant the injunctive relief the Plaintiffs seek."[2] (Doc. # 272 at 10). In contrast, Plaintiffs contend that "responsible for the action" merely amounts to "'some connection' to the challenged conduct." (Doc. # 275 at 9).[3]

---

[2] Defendants cite *Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257 (N.D. Ala. 2018), which in turn relied on *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326 (11th Cir. 1999) for this assertion. But, Defendants' reliance on these two cases is misplaced.

In *Summit Medical*, the plaintiffs sued the governor, attorney general, and a district attorney seeking injunctive and declaratory relief to prevent the enforcement of the Partial-Birth Abortion Ban Act of 1997. 180 F.3d at 1329. In part, the challenged act contained a civil enforcement provision, which was only enforceable by husbands and maternal grandparents. *Id.* at 1342. Because neither the governor, attorney general, nor district attorney had the *authority* to enforce the challenged provision, the Eleventh Circuit held that the *Ex parte Young* exception did not apply as to the civil enforcement provision. In other words, without authority to enforce the statutory provision, the governor, attorney general, and district attorney did not have a connection to the challenged conduct (enforcement of a statute). This interpretation is consistent with the Eleventh Circuit's decision in *Grizzle v. Kemp*, 634 F.3d 1314 (2011), which reasoned that: "A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." 634 F.3d at 1319. The facts of *Summit Medical* and *Grizzle*, however, are distinguishable than the challenged conduct alleged in this action (alleged Eighth Amendment violations at St. Clair).

In *Boglin*, the plaintiff brought a First Amendment retaliation claim against Alabama Agricultural Mechanical University ("Alabama A&M"), the individual members of the Alabama A&M's Board of Trustees in their official capacities, and Alabama A&M's Director of Career Development Services. 290 F. Supp. 3d at 1260-61. Citing *Summit Medical*, the court reasoned that "the *Ex parte Young* exception only applies in instances where 'the state officer [named as a defendant in her official capacity] has the authority to enforce an unconstitutional act in the name of the state.'" *Boglin*, 290 F. Supp. 3d at 1265 (alteration in original). The *Boglin* court held that the *Ex parte Young* exception did not apply as to the individual members of the Board because Alabama's statutory framework, as confirmed by the Alabama Supreme Court, explicitly provided that the Board shall not interfere in the university's day-to-day operations, which included the hiring (and reinstatement) of a department secretary. *Id.* at 1265. Here, as explained later in this opinion, Defendants have not shown that an Alabama statute explicitly precludes Defendants other than the Commissioner from implementing the injunctive relief sought by Plaintiffs.

[3] Plaintiffs rely on the following passage:

16

This court need not clarify if a Defendant *must* possess the authority to implement the injunctive relief sought by Plaintiff in the context of an alleged Eighth Amendment violation to satisfy the "some connection" requirement. That is because, here, Plaintiffs sufficiently allege in the Fourth Amended and Supplemental Complaint that each Defendant possesses such authority, and Defendants have not shown otherwise as a matter of law. In light of this allegation, the court turns to Defendants' arguments.

Defendants cite two Alabama statutes to support the proposition that the Commissioner is the only proper Defendant. The first provides:

> The department shall be headed by and under the independent direction, supervision and control of a Commissioner of Corrections, hereinafter referred to as "the commissioner," who shall be appointed by and serve at the pleasure of the Governor. …

Ala. Code § 14-1-1.3. The second statute provides:

> (a) The department may appoint officers and employees as it may require for the performance of its duties and shall fix and determine their qualifications, duties, and authority. The employees of the department, except the Commissioner of Corrections and the deputy commissioners of corrections, not to exceed three, shall be subject to the law with respect to the method, selection, classification, and compensation of state employees on a basis of merit.
>
> …

---

> As the *Young* court held, it is sufficient that the state officer sued must, "by virtue of his office, ha[ve] some connection" with the unconstitutional act or conduct complained of. "[W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists." *Young*, 209 U.S. at 157.

*Luckey*, 860 F.2d at 1015-16 (alterations in original). In *Luckey*, a class sought relief from alleged systematic deficiencies in Georgia's indigent criminal defense system against the Governor of Georgia, the Chief Judge of the Douglas Judicial Circuit, the Chief Judge of the Clayton Judicial Circuit, and all Georgia judges responsible for providing assistance of counsel to indigents criminally accused in Georgia courts. *Id.* at 1013. The court reasoned that (1) "the governor is responsible for law enforcement in that state and is charged with executing the laws faithfully" and (2) "[j]udges are responsible for administering the system of representation for the indigent criminally accused." *Id.* at 1016. (citing the Georgia Constitution and general Georgia statutes for those two assertions). Therefore, the *Luckey* court held that the named defendants were appropriate parties against whom prospective relief could be ordered. *Id.*

17

> (d) The deputy commissioners and all other appointed personnel shall serve at the pleasure of the Commissioner of the Department of Corrections.

Ala. Code § 14-1-4. These two statutes do not demonstrate, as a matter of law, that Defendants other than the Commissioner are precluded from implementing the injunctive relief sought by Plaintiffs.[4]

Based on the additional allegations in the Fourth Amended and Supplemental Complaint, the court concludes that Plaintiffs have sufficiently *pleaded* that Defendants in their official capacities have (1) a sufficient connection to the alleged constitutional violations and (2) the authority to implement portions of the injunctive relief sought by Plaintiffs. *See generally Doe v. Wooten*, 747 F.3d 1317, 1321 n.2 (11th Cir. 2014) (noting, under Georgia law, that multiple Bureau of Prison officials had the authority to implement the injunctive relief sought by the plaintiff in an Eighth Amendment action); *Thomas v. Bryant*, 614 F.3d 1288, 1293-94, 1326 (11th Cir. 2010) (holding that the district court did not abuse its discretion in granting a permanent injunction against two Department of Corrections officers in their official capacity -- the Secretary and a Warden -- in an Eighth Amendment action). At this stage of the litigation, Defendants have failed to negate these well-pled allegations as a matter of law.

Defendants contend that naming persons other than the Commissioner is redundant and unnecessary. Defendants quote *Kentucky v. Graham*, 473 U.S. 159 (1985) for the proposition that "[a]n official capacity claim 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" (Doc. # 272 at 8) (quoting *Graham*, 473 U.S. at 165). However, what Defendants fail to acknowledge is the exception to the general rule, which the

---

[4] Defendants argue that "ADOC's Administrative Regulations … make clear that policy is made by the ADOC Commissioner—as he signs and publishes those policies." (Doc. # 272 at 11). However, that statement does not establish as a matter of law that the other officials cannot implement the injunctive relief sought by Plaintiffs. Further, Defendants have not included those administrative regulations in the record, and it is questionable whether the court could consider them at this stage of the litigation.

*Graham* Court referenced in a related footnote: "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14 (citing *Young*, 209 U.S. 123 (1908)).

The only other controlling case that Defendants cite is *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). Defendants quote *Busby* as follows: "To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant…." (Doc. # 272 at 8) (quoting *Busby*, 931 F.2d at 776). However, that holding from *Busby* must be read in its proper context. In *Busby*, the plaintiff sued the City of Orlando as well as several city employees individually and in their official capacity. 931 F.2d at 770. In upholding the district court's decision to merge the plaintiff's claims against the City and the city employees in their official capacity, the Eleventh Circuit reasoned:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond). *See Kentucky v. Graham*, 473 U.S. at 166; *Brandon v. Holt*, 469 U.S. at 471-72. In Busby's action against the City of Orlando, the district court recognized that the intended defendant was actually the City. To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant….

*Id.* at 776. Importantly, the merged-claims were for monetary damages, not merely prospective injunctive relief. Moreover, here, Plaintiffs did not directly sue ADOC, and they exclusively seek prospective relief.

Therefore, the court declines to dismiss Defendants as redundant, particularly when the case may turn on proof of deliberate indifference by each of the named Defendants.

## IV.   Conclusion

Defendants' Partial Motion to Dismiss the Forth Amended and Supplemental Complaint (Doc. # 271) is **DENIED**.

**DONE** and **ORDERED** this June 17, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE