FILED

2023 Nov-15  PM 05:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit B

Page 1

1           IN THE UNITED STATES DISTRICT COURT FOR

2             THE NORTHERN DISTRICT OF ALABAMA

3                    MIDDLE DIVISION

4

5    CASE NUMBER:  4:14-cv-01952-RDP

6

7    MARK DUKE, et al.,

8                 Plaintiffs,

9                 vs.

10   JOHN HAMM, et al.,

11               Defendants.

12              S T I P U L A T I O N

13                   IT IS STIPULATED AND AGREED,

14   by and between the parties through their

15   respective counsel, that the deposition of

16   MELVIN RAY may be taken before Michelle L.

17   Parvin, Commissioner, at St. Clair

18   Correctional Facility, 1000 St. Clair Road,

19   Springville, Alabama, 35146, on the 27th day

20   of October, 2023.

21                   IT IS FURTHER STIPULATED AND

22   AGREED that the signature to and the reading

23   of the deposition by the witness is waived,

Page 2

1 the deposition to have the same force and
2 effect as if full compliance had been had
3 with all laws and rules of Court relating to
4 the taking of depositions.
5          IT IS FURTHER STIPULATED AND
6 AGREED that it shall not be necessary for any
7 objections to be made by counsel to any
8 questions, except as to form or leading
9 questions, and that counsel for the parties
10 may make objections and assign grounds at the
11 time of trial, or at the time said deposition
12 is offered in evidence, or prior thereto.
13          IT IS FURTHER STIPULATED AND
14 AGREED that notice of filing of the
15 deposition by the Commissioner is waived.
16
17
18
19
20
21
22
23

Page 4

1    IN THE UNITED STATES DISTRICT COURT FOR
2       THE NORTHERN DISTRICT OF ALABAMA
3            MIDDLE DIVISION
4 CASE NUMBER:  4:14-cv-01952-RDP
5 MARK DUKE, et al.,
6          Plaintiffs,
7          vs.
8 JOHN HAMM, et al.,
9          Defendants.
10
11 BEFORE:
12       Michelle L. Parvin, Certified
13 Court Reporter
14 APPEARANCES:
15          CRAVATH, SWAINE & MOORE, LLP,
16 by Mr. Scott Cohen, 825 Eighth Avenue, New
17 York, New York, 10019, appearing on behalf of
18 the Plaintiffs.
19          BUTLER SNOW, LLP, by Mr.
20 William R. Lunsford and Ms. Lynette E.
21 Potter, 200 West Side Square, Suite 100,
22 Huntsville, Alabama, 35801, appearing on
23 behalf of the Defendants.

Page 3

1              I N D E X
2
3 EXAMINATION BY:          PAGE NUMBER:
4 Mr. Lunsford            6
5
6 EXHIBITS:
7 (No exhibits marked.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 5

1          I, Michelle L. Parvin, a
2 Court Reporter of Birmingham, Alabama, acting
3 as Commissioner, certify that on this date,
4 as provided by the Federal Rules of Civil
5 Procedure of the United States District
6 Court, and the foregoing stipulation of
7 counsel, there came before me at 1000 St.
8 Clair Road, Springville, Alabama, 35146,
9 beginning at 8:52 a.m., MELVIN RAY, witness
10 in the above cause, for oral examination,
11 whereupon the following proceedings were had:
12
13          MELVIN RAY,
14 being first duly sworn, was examined and
15 testified as follows:
16
17          THE COURT REPORTER:  Okay.  Usual
18 stipulations?
19          MR. LUNSFORD:  Yes.
20          THE WITNESS:  First off, who is
21 representing me here?
22          MR. LUNSFORD:  Well, we'll go --
23 we'll go through this very quickly.

2 (Pages 2 - 5)

Page 6

1 EXAMINATION BY MR. LUNSFORD:
2
3     Q.   So, Mr. Wright, my name is Bill
4 Lunsford.  I represent several Department of
5 Corrections officials who have been sued in a
6 class action that was instituted by Mark Duke
7 and several other plaintiffs, or inmates here
8 at St. Clair --
9     A.   Uh-huh.
10    Q.   -- related to the conditions at
11 St. Clair.
12         And there's a variety of issues
13 in the lawsuit.
14         We've subpoenaed you today
15 because, based on what we understand, Mr.
16 Duke and others would propose that you and
17 others here at St. Clair would be
18 potentially, or they're going to ask the
19 court for you to be part of a class action.
20         And so, I understand that we have
21 another attorney here who represents Mr. Duke
22 and the other named plaintiffs, and that's
23 Mr. Cohen, who's seated to your right, okay?

Page 7

1         Let me -- let me first ask you a
2 couple of questions, then, we'll get into the
3 question that you asked related to legal
4 representation, okay?
5         First of all, could you just, for
6 the record, confirm what your full name is?
7         THE WITNESS:  What was your name
8 again? I'm sorry.
9         MS. POTTER:  My name is Lynette
10 Potter.
11         THE WITNESS:  Lynette what?
12         MS. POTTER:  Potter.
13         THE WITNESS:  Excuse me.  Go
14 ahead.
15    Q.   (BY MR. LUNSFORD)  Could you
16 please state your full legal name?
17    A.   My name is Melvin Ray.
18    Q.   Okay.  Have you ever gone by any
19 other names other than Melvin Ray?
20    A.   I'm going to refuse to answer
21 that until I get legal representation.
22    Q.   Do you understand that you're
23 here as a result of a subpoena issued by a

Page 8

1 Federal court?
2     A.   Yes.
3     Q.   Did you receive that subpoena?
4     A.   Yes, they served me a copy.
5     Q.   You said they served you a copy
6 of the subpoena?
7     A.   Yes.
8     Q.   Who's they?
9     A.   They called me to the shift
10 office, a ADOC officer.  He said he had a
11 document for me.  He said I don't have to
12 sign anything.  He had already signed for it
13 because it was for him to sign.
14    Q.   Okay.
15    A.   So, he signed the document and he
16 gave me the document.
17    Q.   Okay.  Do you still have a copy
18 of the subpoena?
19    A.   Yes.
20    Q.   Where is that located?
21    A.   In my property.
22    Q.   Do you know what a subpoena is?
23    A.   Yes.

Page 9

1     Q.   It's a Federal court order for
2 you to appear for a deposition today --
3     A.   That's right.
4     Q.   -- is that correct?
5     A.   Yes, sir.
6     Q.   And did you retain counsel after
7 you received the subpoena?
8     A.   No.
9     Q.   Okay.  Do you have any attorney
10 currently representing you in the Duke case?
11    A.   Not that I'm aware of.
12    Q.   Do you -- have you retained a
13 lawyer for any reason based on any current
14 legal needs you have?
15    A.   That's irrelevant.
16    Q.   I'm sorry, but there's no --
17 there's not a process by which you can decide
18 which of my questions to answer and which
19 ones you don't answer.  You're here under a
20 Federal subpoena.
21    A.   That was my answer.
22    Q.   I'm sure that -- I'm sorry?
23    A.   That was my answer.

3 (Pages 6 - 9)

1    Q.   Well, so, is that a yes or a no?
2 You've not retained counsel or you have
3 retained counsel?
4    A.   That's irrelevant.
5    Q.   To what?
6    A.   To your question.
7    Q.   No, it's relevant to today's
8 deposition.  If you have counsel, I would
9 like to know who that is just so I don't
10 communicate with you about a matter in which
11 you might be represented by counsel.  And so,
12 I need to know whether you're represented by
13 counsel in any action currently.
14    A.   Okay.  That's irrelevant.
15    Q.   So, you're refusing to answer my
16 question?
17    A.   I gave you an answer.
18    Q.   No, you haven't.  You've answered
19 yes or no.  Do you have --
20    A.   Okay.  Well, that's my answer.
21    Q.   Okay.  So, here's what's going to
22 happen after today, Mr. Ray:  We are going to
23 go back to the Federal courthouse.

1    A.   Uh-huh.
2    Q.   We're going to give the court
3 this transcript.
4    A.   Yes, sir.
5    Q.   And we're going to tell the court
6 that you refused to answer our questions or
7 cooperate with us.
8    A.   Okay.
9    Q.   And we're going to ask the court
10 to order you to answer our questions.  And
11 we're going to ask the court to hold you in
12 contempt.  And we're going to ask the court
13 to fine you.
14    A.   Uh-huh.
15    Q.   And then, I'm going to ask the
16 court for discovery to find out what
17 financial resources you have access to --
18    A.   Uh-huh.
19    Q.   -- and we're going to ask the
20 court for you to pay us to come back here and
21 question you again if you refuse to answer my
22 questions today.
23        So, the decision is yours as to

1 whether you would like to go through that
2 process and whether you --
3    A.   If you have some more questions,
4 ask your questions.  I don't need a --
5    Q.   Are you --
6    A.   -- lecture from you.
7    Q.   -- represented by counsel
8 currently in any matter?
9    A.   Irrelevant.
10    Q.   Have you ever been represented by
11 counsel in any matter?
12    A.   First, I want to make an
13 objection and I want to make a statement.
14 Yesterday, some attorney came down here, said
15 that he had been contacted to come down here
16 to sit in with me.  I asked him who sent him.
17 He said he does not know.  I asked him did
18 you all send him, did the DOJ send him, or
19 did EJI send him.  He said he did not know.
20 He works for a law firm and that they had
21 been contacted.
22        And so, I told him that I had not
23 consented to him coming down here to see me.

1 I did not authorize him to come and see me
2 and that, from my understanding, class
3 representatives were the EJI and whomever
4 they had worked with.  I have not been
5 contacted by EJI.  I've never communicated
6 with EJI.  I've not been abreast to the class
7 action litigation.  They have not fulfilled
8 their obligations to us as class members in
9 this class.
10        And so, those are my objections
11 and those are the reasons why I have
12 reservations about these proceedings because
13 I don't understand really what's going on.
14    Q.   You understand that you're under
15 oath?
16    A.   Yes.
17    Q.   What did you mean when you said
18 that the attorneys that represent the Duke
19 plaintiffs have not fulfilled their
20 obligations to you as a class member?
21    A.   Well, I understood that they
22 served -- filed a class action that covered
23 the time that I was incarcerated here at St.

Page 14

1 Clair and that they had a class
2 certification. That was my understanding. I
3 don't know. I have not saw the litigation.
4     Q.   What obligations do you want them
5 to fulfill to you as a class member?
6     A.   Well, I have some questions and I
7 have some objections about some of the things
8 related to these depositions.
9     Q.   What questions do you have?
10     A.   For my attorneys.
11     Q.   Who are your attorneys?
12     A.   Whomever is the class
13 representatives for the class action.
14     Q.   So, you've never had any
15 conversation with any attorney employed by
16 the Equal Justice Initiative; is that
17 correct?
18     A.   Not that I can remember after
19 these litigations. I've speaking to them
20 previously. But I don't recall if it was
21 specifically in relation to this or not. I
22 don't think that it was, but I just can't
23 remember one hundred percent for certain.

Page 15

1     Q.   Have you ever met Mr. Cohen
2 before --
3     A.   No.
4     Q.   -- who's seated there to your
5 right?
6     A.   Not that I recall.
7     Q.   Have you ever met with any
8 attorneys from the Cravath firm?
9     A.   No.
10     Q.   Do you know the name of the
11 attorney who appeared yesterday to meet with
12 you?
13     A.   I can't recall his name.
14     Q.   Had you met him before yesterday?
15     A.   No.
16     Q.   Did you request his assistance?
17     A.   No, I did not.
18     Q.   Do you know who instructed that
19 attorney to come here to St. Clair?
20     A.   I asked him, and he said he
21 didn't know. He was just here.
22     Q.   Why did you refuse the assistance
23 of that attorney?

Page 16

1     A.   Why should I accept it?
2     Q.   Why did you refuse it?
3     A.   Why should I accept it?
4     Q.   Do you believe you need to be
5 represented by an attorney today in this
6 deposition?
7     A.   Yes, sir.
8     Q.   Why was that attorney not
9 adequate?
10     A.   I don't know who he is. He
11 didn't know who sent him. He didn't know if
12 your office sent him. He didn't know if the
13 Department of Justice sent him. He didn't
14 know who sent him. He just showed up.
15     Q.   I can assure you that -- I can
16 assure you that I didn't send him.
17     A.   Okay.
18       MR. COHEN:  Could we discuss off
19 the record how to proceed because Mr. Ray
20 does want to be represented in this
21 deposition going forward?
22       MR. LUNSFORD:  No, because Mr.
23 Ray's had his subpoena for a period of time

Page 17

1 and you all could have communicated with him
2 before this deposition. EJI could have
3 communicated with him before this deposition.
4       THE WITNESS:  Exactly.
5       MR. LUNSFORD:  You all could have
6 told him that you were sending a lawyer up
7 here to meet with him.
8       THE WITNESS:  Exactly.
9       MR. LUNSFORD:  And I'm not here
10 to bail out plaintiffs' counsel for not
11 communicating with a purported class member.
12       THE WITNESS:  Exactly.
13       MR. LUNSFORD:  I actually
14 understand Mr. Ray's frustration. If some
15 lawyer shows up, doesn't even know why he's
16 here, I mean, yeah, that would make me
17 skeptical, too.
18       MR. COHEN:  Well, first of all, I
19 object to the insinuation that I or anybody
20 else representing the plaintiff class did
21 send somebody from Lightfoot to meet with
22 Mr. Ray. That is not substantiated and it's
23 just not true.

5 (Pages 14 - 17)

1        MR. LUNSFORD:  Well, then, who
2 sent him?
3        MR. COHEN:  I don't know who sent
4 him.
5        THE WITNESS:  That's my point.
6        MR. COHEN:  But if Mr. Ray's not
7 going to answer any questions --
8        THE WITNESS:  It's not that I'm
9 not going to answer.  I just explained my
10 position.  You all are class representatives.
11 You have not fulfilled your obligation to me
12 as a class member.  I have specific
13 objections related to the subpoena.  I have
14 attorney-client privilege.  And you all have
15 breached attorney-client privilege by
16 reaching out to this attorney or whoever it
17 is or whomever reached out to him.
18        And you all accepted the
19 settlement in this case.  It's a private
20 settlement.  We have not had copies of the
21 settlement.  We have not been able to discuss
22 the settlement.  Our understanding is that
23 Mr. Stevenson accepted six hundred thousand

1 dollars in a settlement and that they waived
2 our rights to receive compensation.  And we
3 have not consented to that.
4        So, there are a number of things
5 that I would like to discuss with whomever
6 the class representatives are before I agree
7 to participate in this proceeding.  And I'm
8 entitled to representation from counsel.  You
9 all signed your name and you should do your
10 job.
11    Q.   (BY MR. LUNSFORD)  Mr. Ray, would
12 you mind answering just some questions about
13 your experience here at St. Clair during
14 today's deposition?
15    A.   I don't mind answering some of
16 them.  Some of them are reserved for
17 litigation purposes.  And so, I'm not going
18 to speak into details about them.
19        I have been, I guess, what you
20 would say an activist, so to speak.  I have
21 been speaking out against a lot of the things
22 going on.  I've been jumped on.  I was
23 brutally beaten while I was in handcuffs

1 while I was here.  I've been subject to
2 multiple death threats by ADOC officers.
3 Another person who has did activist work
4 named ████████████████, the correctional
5 officers at Donaldson Correctional Facility
6 jumped on him, beat him within a fraction of
7 his life.  I've had just numerous issues
8 related with violence associated with these
9 officers.
10        And another thing about my
11 reservations is that without having these
12 attorneys to assure me that I'll be
13 protected, that there will not be any
14 retaliation for speaking because the
15 Department of Justice sent investigators into
16 this prison in 2016.  And after they left --
17 or maybe it was 2015 or '16.  After they
18 left, the officers found out who all was
19 speaking to DOJ, and they put a hit out on
20 them.
21    Q.   Let's go back through a couple of
22 things.  First of all, we're located today at
23 St. Clair Correctional Facility, right?

1    A.   That's right.
2    Q.   So, you're okay if I refer to
3 this facility as St. Clair --
4    A.   Correct.
5    Q.   -- right?
6        We're also going to talk about
7 the Alabama Department of Corrections, which
8 some people refer to as ADOC or DOC.  And if
9 I use those terms, you're okay with that,
10 right?
11    A.   Yes.
12    Q.   Have you ever heard of LESD, the
13 Law Enforcement Services Division?
14    A.   Yes.
15    Q.   Have you ever met with officers
16 or investigators with DOC's law -- or Law
17 Enforcement Services Division?
18    A.   I think I met with them one time.
19 It was unrelated to anything involving me.
20 And I've reached out to LESD a couple of
21 times in the past.
22        And earlier this year, I found
23 out that the officer that I was complaining

1 about was a liaison with LESD. And LESD
2 never came to contact me. They never allowed
3 me to make my concerns known. My family has
4 contacted them. They've emailed them. When
5 I was assaulted, they reached out to LESD.
6 They never would show up.
7        And I just recently found out
8 that the officer who orchestrated the assault
9 was a former captain and that he was the
10 person that was communicating and the liaison
11 with LESD. I found out that when I was
12 transferred to Donaldson Correctional
13 Facility. This same officer was part of the
14 reason why this hit was put out on me.
15        And so, they've intentionally
16 refused to come and meet with me and probably
17 for some of those reasons.
18   Q.   You said there was an
19 investigation that you spoke to LESD about
20 unrelated to you. What was it related to?
21   A.   In 2014 -- wait a minute. Let me
22 think what year that was. 2015. In 2015,
23 there was an officer assaulted here at the

1 facility. And the LESD officers were coming
2 to the facility trying to talk to people to
3 get some -- you know, to get people to --
4 this is when the violence exploded at this
5 prison.
6        And so, they were coming,
7 recruiting people to work with them to try to
8 get people to help them do their jobs, what
9 they're supposed to be doing. And so, I was
10 one of the people that they called out and
11 questioned about, you know, what could I do
12 or what was I willing to do. And I told them
13 that we've had people get stabbed, we've had
14 people get beat, we've had people murdered.
15 They never showed up. They didn't give a
16 damn about any of us or anything that was
17 happening to us. So, I told them don't show
18 up to try to question me when they feel like
19 they have a problem because we've got
20 problems, too, and they don't care about
21 them.
22   Q.   Who was the officer that was
23 assaulted that led to this interview in 2014?

1   A.   Lieutenant -- I can't -- his name
2 escapes me at the moment. ███████████████
3 ████████████████.
4   Q.   Where was ███████████████████
5 assaulted?
6   A.   I'm not sure. I was in solitary
7 confinement. I don't know exactly where all
8 of it --
9   Q.   Why were you interviewed as part
10 of that investigation?
11   A.   They felt like they were
12 interviewing people that they felt like had
13 influence in the prison that maybe could
14 assist them in whatever.
15   Q.   Do you know why ████████████████
16 was assaulted?
17   A.   ████████████████ was part of a
18 gang of officers that were going around
19 beating people. He had beat ten or fifteen
20 people. He was most recently charged with
21 beating another person at Childersburg Work
22 Center, beat him over the head with a
23 two-by-four.

1        Here, there was a guy who was in
2 the cell on a cell phone or something. And
3 the officers went in there and got him and
4 brought him out handcuffed. They jumped on
5 him at the dorm. They took him to the shift
6 office. They jumped on him again. They took
7 him to the infirmary. They jumped on him a
8 third time. And other people retaliated or
9 whatever.
10   Q.   How did you learn about the
11 incident in Childersburg involving ██████████
12 ████?
13   A.   It was all over the news. And
14 the guy that was beaten was brought here to
15 St. Clair. And he was in the dorm over
16 there. And --
17   Q.   Did you ever speak with that
18 other inmate who allegedly was beaten by
19 ████████████████ at Childersburg?
20   A.   He was actually beaten. It's not
21 an allegation.
22   Q.   Did you have -- my question is,
23 did you speak with the inmate?

Page 26

1   A.   Well, yes, sir, I spoke -- I
2 can't -- well, I remember hearing him
3 hollering out of the window talking to
4 someone, and he was telling them what was
5 going on. I didn't directly speak to him.
6 But I did overhear him. But I did receive
7 his paperwork.
8   Q.   What do you mean you received his
9 paperwork?
10   A.   They had wrote him some
11 disciplinaries, some bogus disciplinaries.
12   Q.   Do you know the name of the
13 inmate?
14   A.   I can't recall his name. I
15 don't -- I didn't -- it's not someone that I
16 knew. Just an incident.
17   Q.   But you weren't present when this
18 assault occurred at Childersburg --
19   A.   No.
20   Q.   -- were you?
21   A.   No.
22   Q.   And everything that you know
23 about the assault, you either heard from the

Page 27

1 inmate or read in the newspaper; is that
2 correct?
3   A.   That's correct.
4   Q.   Okay. Can you name any of the
5 individuals that ████████████ allegedly
6 assaulted here at St. Clair?
7   A.   It's been over -- it's been
8 almost ten years, so I can't remember
9 exactly. You know, they had a crew. There
10 was one guy -- I was right next door to him
11 in the cell. It was him, ████████████, and
12 another officer. They brought him out in the
13 hallway, handcuffed him, and then, came up
14 behind him and hit him in the back of the
15 head with closed fists with a ring full of
16 handcuffs and busted his scalp. The other
17 guy I just told you about. There was another
18 guy, they beat him with a radio. They beat
19 him so bad, they left the radio shards inside
20 of his skull. I was a worker in the
21 infirmary at the time, so I saw that.
22      It's just -- it was -- it was
23 happening on the regular.

Page 28

1   Q.   Can you name any other officers
2 who are allegedly part of this gang you
3 described with ████████████?
4   A.   Well, I used the gang term
5 loosely. They weren't -- I don't know what
6 they were. They functioned like a gang.
7 And, no, I don't remember all of their names.
8 But, you know, the paperwork's there.
9 They -- ████████████, I think, is
10 one of them. I can't remember the other
11 guy's name.
12   Q.   So, you can't remember any of the
13 other officers that were part of this group
14 of officers?
15   A.   Those were the guys that --
16 ████ is the guy that was assaulted. There
17 was an officer -- ████████ was one of
18 them. Let me think who all was back there.
19 I can't remember all of their names just
20 right off the top of my head.
21   Q.   Since --
22   A.   Well, I'm going to say this right
23 here, and then, we can end this: Until I

Page 29

1 speak to some attorneys and I know that the
2 things that I'm saying is not going to result
3 in retaliation, not going to cause me to be
4 harmed again, not going to cause me to be
5 beaten again, not going to cause me to be
6 stowed away in solitary confinement and
7 tortured again, not going to cause me to be
8 food poisoned by officers again, not going to
9 cause me to be housed in unconstitutional
10 units, I'm going to decline to participate
11 until I know that my attorneys are going to
12 work to make sure that I'm not going to be
13 subjected to any harm because of this. And I
14 think they have that obligation to me. And
15 so, I'm going to exercise my right to receive
16 that.
17   Q.   Who are your -- you said your
18 attorneys.
19   A.   Whomever is the class
20 representatives for the class action.
21   Q.   Well, they're here. I mean, Mr.
22 Cohen represents --
23   A.   I don't know Mr. Cohen from --

Page 30

1 Q. So, who do you want -- I'm just
2 trying to figure out what you want, Mr. Ray.
3 This is not that hard, okay?
4 A. Okay.
5 Q. This is not that hard.
6 A. Right.
7 Q. You say you want an attorney. I
8 can't go get an attorney for you if you don't
9 tell me what that is, okay?
10 A. I don't know.
11 Q. So, you can't just say, I want an
12 attorney and it has to be somebody with the
13 plaintiffs' class. We have somebody sitting
14 here who represents the plaintiffs.
15 A. Well, he just showed up today.
16 Q. Okay. So, explain to me what you
17 think you're entitled to so we can
18 consider --
19 A. I'm entitled to representation.
20 Q. Okay. Well, you have -- if you
21 want the plaintiff counsel, he is sitting
22 here right now.
23 A. Well, I haven't -- he haven't --

Page 31

1 I've never met this guy.
2 Q. That's not my problem.
3 A. Okay. Well, then, how can -- he
4 can't assist me in the middle of a hearing.
5 He doesn't -- the information that I'm -- the
6 questions that you're asking are things that
7 I would like to explain to my attorney,
8 explain my situation beforehand so I'll know
9 what my attorney's role is so he can
10 understand my position. And this man --
11 Q. Did anyone --
12 A. -- doesn't understand.
13 Q. -- with the EJI reach out to you
14 before this deposition?
15 A. No.
16 Q. Did anyone with the Cravath firm
17 reach out --
18 A. No.
19 Q. -- to you?
20 Okay. So, there was plenty --
21 did you reach out to plaintiffs' counsel?
22 A. They were served. Their names
23 are on the subpoenas today.

Page 32

1 Q. Did you reach out to plaintiffs'
2 counsel?
3 A. They were served.
4 Q. Did you reach out --
5 A. Their names are on the --
6 Q. -- to plaintiffs' counsel?
7 A. -- subpoenas.
8 Q. Did you reach out to plaintiffs'
9 counsel?
10 MR. LUNSFORD: I'm sorry.
11 A. I didn't reach out to anyone to
12 file a class action.
13 Q. Okay. Do you contend that
14 there's currently a hit out on you?
15 A. I don't know. I'm saying that
16 there was in the past. I have no idea
17 what --
18 Q. When was the last time there was
19 a hit out on you if you remember?
20 A. That I'm aware of, I think it was
21 in 2020 or 2021.
22 Q. Who put a hit out on you?
23 A. They didn't say. They just told

Page 33

1 me that they received a memo from Law
2 Enforcement Services Division that I need to
3 be -- they transferred -- as a matter of
4 fact, they put me in solitary confinement in
5 Fountain prison, and that's how I got back
6 here to St. Clair. But I reached out to Law
7 Enforcement Services Division, asked them who
8 was the people, who was involved. They never
9 responded.
10 Most recently, this year, I
11 received information from the administration
12 here. I do have that paperwork. And it said
13 on there that Law Enforcement Services
14 Division said this and -- this and so. Law
15 Enforcement Services Division never contacted
16 me. I reached out to them. I wrote them
17 letters. They never responded. And so,
18 then, after that is when I found out that
19 part of the reason why they probably wasn't
20 reaching out to me is because the officer who
21 was orchestrating most of this stuff was
22 their liaison or contact person. So, it's as
23 if they were working with him and they knew

Page 34

1 exactly what was going on the whole time.
2    Q.   Who is this officer you claim
3 served as a liaison?
4    A.   His name is ███████████.
5    Q.   So, let me -- let me go back for
6 a minute.  Who notified you --
7    A.   I've already told you that those
8 were the last questions that I was going to
9 answer.
10    Q.   You're not answering any more
11 questions today?
12    A.   Not until I get legal
13 representation and advice from counsel.
14    Q.   Okay.  And as I understand what
15 you've said is that legal representation is
16 representation by plaintiffs' counsel in this
17 case, correct?
18    A.   I don't know who the counsel is.
19    Q.   Well, then, how are we going to
20 confirm, Mr. Ray, that you have counsel and
21 we don't go through this whole charade again?
22    A.   Well, you'll have to talk to the
23 attorneys that are listed on the complaint.

Page 35

1    Q.   I'm going to give y'all five
2 minutes off the record to have a conversation
3 to resolve this.  And I'll say this:  If you
4 refuse to answer your questions, we're going
5 to go file a motion by the close of business
6 today to have you -- to compel this
7 deposition and to have our expenses paid in
8 order to come back here and take this
9 deposition again.  Because we properly issued
10 a subpoena, plaintiffs' counsel was fully
11 notified of this weeks in advance, had
12 adequate opportunity to come meet with you,
13 speak with you, do whatever it is you wanted.
14 You had adequate opportunity to retain your
15 own counsel if you wanted to or communicate
16 to us that you wanted counsel, and you never
17 even communicated to us.  So, I've laid out
18 what our full intention is if we do not
19 proceed.
20    A.   How would I communicate with the
21 defendants' legal counsel?  I don't --
22         MR. LUNSFORD:  All right.  So,
23 we'll go off the record for five minutes.

Page 36

1         MR. COHEN:  Before we go off
2 the -- before we go off the record, I just
3 want to say as counsel for plaintiffs in this
4 case representing the named plaintiffs, we
5 are not representing Mr. Ray in this
6 proceeding, in this deposition.  But off the
7 record, we can speak -- I'll speak with Mr.
8 Ray --
9         THE WITNESS:  I don't need to --
10         MR. COHEN:  -- and try to get
11 more information.
12         THE WITNESS:  I don't need to
13 speak with you if you're not representing me.
14    Q.   (BY MR. LUNSFORD)  So, who do you
15 want to speak with, Mr. Ray, before you go
16 forward?
17    A.   I want counsel.
18    Q.   Okay.  Any counsel?
19    A.   Whatever I'm entitled to.
20    Q.   You're not entitled to counsel.
21    A.   Well, I don't --
22    Q.   This is not a criminal
23 proceeding.

Page 37

1    A.   Well, I'm not answering any
2 questions without advice from counsel.
3    Q.   Okay.  All right.  Very good.
4 So, we will take this back to the court and
5 ask the court to compel your deposition and
6 for you to cover any expenses related to that
7 based on your refusal to participate today.
8         So, you're not going to answer
9 any further questions?
10         THE WITNESS:  Thank you.  Have a
11 nice day.
12         MR. LUNSFORD:  Just for the
13 record, Mr. Ray is standing up and he's
14 leaving the deposition.
15         MR. COHEN:  I reserve the right
16 to redirect him whatever happens, asked --
17         MR. LUNSFORD:  Listen, I'll --
18         MR. COHEN:  -- and answered in
19 this deposition.
20         MR. LUNSFORD:  I'll go ahead and
21 say for the record, you know, you're not
22 waiving anything and we certainly want you to
23 have an opportunity like we want an

10 (Pages 34 - 37)

Page 38

1 opportunity to ask Mr. Ray questions and do
2 the things that need to be done.  I'm very
3 sorry that you had to travel as far as we did
4 for this.  I certainly wish there was better
5 communication.  I am disappointed that we'll
6 have to do this again.
7        FURTHER DEPONENT SAITH NOT.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 39

1        C E R T I F I C A T E
2
3 STATE OF ALABAMA   )
4 JEFFERSON COUNTY   )
5        I hereby certify that the above
6 and foregoing deposition was taken down by me
7 in stenotype, and the questions and answers
8 thereto were transcribed by means of
9 computer-aided transcription, and that the
10 foregoing represents a true and correct
11 transcript of the testimony given by said
12 witness upon said hearing.
13        I further certify that I am
14 neither of counsel, nor of kin to the parties
15 to the action, nor am I an anywise interested
16 in the result of said cause.
17
18
19    MICHELLE L. PARVIN
20    Certified Court Reporter
21    License Number 126
22    Commission expires 9/30/24
23    Notary Public expires 1/26/26

| & |
|---|
| **&**   4:15 |

| 0 |
|---|
| **01952**   1:5 4:4 |

| 1 |
|---|
| **1/26/26**   39:23 |
| **100**   4:21 |
| **1000**   1:18 5:7 |
| **10019**   4:17 |
| **126**   39:21 |
| **16**   20:17 |
| **18332**   39:18 |

| 2 |
|---|
| **200**   4:21 |
| **2014**   22:21 23:23 |
| **2015**   20:17 22:22,22 |
| **2016**   20:16 |
| **2020**   32:21 |
| **2021**   32:21 |
| **2023**   1:20 |
| **27th**   1:19 |

| 3 |
|---|
| **35146**   1:19 5:8 |
| **35801**   4:22 |

| 4 |
|---|
| **4:14**   1:5 4:4 |

| 6 |
|---|
| **6**   3:4 |

| 8 |
|---|
| **825**   4:16 |
| **8:52**   5:9 |

| 9 |
|---|
| **9/30/24**   39:22 |

| a |
|---|
| **a.m.**   5:9 |
| **able**   18:21 |
| **above**   5:10 39:5 |
| **abreast**   13:6 |
| **accept**   16:1,3 |
| **accepted**   18:18 18:23 |
| **access**   11:17 |
| **acting**   5:2 |
| **action**   6:6,19 10:13 13:7,22 14:13 29:20 32:12 39:15 |
| **activist**   19:20 20:3 |
| **actually**   17:13 25:20 |
| **adequate**   16:9 35:12,14 |
| **administration**   33:11 |
| **adoc**   8:10 20:2 21:8 |
| **advance**   35:11 |
| **advice**   34:13 37:2 |
| **agree**   19:6 |

**agreed**   1:13,22 2:6,14
**ahead**   7:14 37:20
**aided**   39:9
**al**   1:7,10 4:5,8
**alabama**   1:2,19 4:2,22 5:2,8 21:7 39:3
**allegation**   25:21
**allegedly**   25:18 27:5 28:2
**allowed**   22:2
**answer**   7:20 9:18,19,21,23 10:15,17,20 11:6,10,21 18:7 18:9 34:9 35:4 37:8
**answered**   10:18 37:18
**answering**   19:12,15 34:10 37:1
**answers**   39:7
**anybody**   17:19
**anywise**   39:15
**appear**   9:2
**appearances**   4:14
**appeared**   15:11
**appearing**   4:17 4:22
**asked**   7:3 12:16 12:17 15:20

33:7 37:16
**asking**   31:6
**assault**   22:8 26:18,23
**assaulted**   22:5 22:23 23:23 24:5,16 27:6 28:16
**assign**   2:10
**assist**   24:14 31:4
**assistance**   15:16 15:22
**associated**   20:8
**assure**   16:15,16 20:12
**attorney**   6:21 9:9 12:14 14:15 15:11,19,23 16:5,8 18:14,15 18:16 30:7,8,12 31:7
**attorney's**   31:9
**attorneys**   13:18 14:10,11 15:8 20:12 29:1,11 29:18 34:23
**austin**   28:9
**authorize**   13:1
**avenue**   4:16
**aware**   9:11 32:20

| b |
|---|
| **back**   10:23 11:20 20:21 27:14 28:18 |

33:5 34:5 35:8
37:4
**bad**  27:19
**bail**  17:10
**based**  6:15 9:13
37:7
**beat**  20:6 23:14
24:19,22 27:18
27:18
**beaten**  19:23
25:14,18,20
29:5
**beating**  24:19
24:21
**beginning**  5:9
**behalf**  4:17,23
**believe**  16:4
**better**  38:4
**bill**  6:3
**birmingham**  5:2
**bogus**  26:11
**breached**  18:15
**brought**  25:4,14
27:12
**brutally**  19:23
**business**  35:5
**busted**  27:16
**butler**  4:19

**c**

**c**  39:1,1
**called**  8:9 23:10
**captain**  22:9
34:4
**care**  23:20

**carter**  24:2,3,4
24:15,17 25:12
25:19 27:5 28:3
**case**  1:5 4:4
9:10 18:19
34:17 36:4
**cause**  5:10 29:3
29:4,5,7,9 39:16
**cell**  25:2,2 27:11
**center**  24:22
**certain**  14:23
**certainly**  37:22
38:4
**certification**
14:2
**certified**  4:12
39:20
**certify**  5:3 39:5
39:13
**charade**  34:21
**charged**  24:20
**childersburg**
24:21 25:11,19
26:18
**civil**  5:4
**claim**  34:2
**clair**  1:17,18 5:8
6:8,11,17 14:1
15:19 19:13
20:23 21:3
25:15 27:6 33:6
**class**  6:6,19 13:2
13:6,8,9,20,22
14:1,5,12,13
17:11,20 18:10

18:12 19:6
29:19,20 30:13
32:12
**client**  18:14,15
**close**  35:5
**closed**  27:15
**cohen**  4:16 6:23
15:1 16:18
17:18 18:3,6
29:22,23 36:1
36:10 37:15,18
**come**  11:20
12:15 13:1
15:19 22:16
35:8,12
**coming**  12:23
23:1,6
**commission**
39:22
**commissioner**
1:17 2:15 5:3
**communicate**
10:10 35:15,20
**communicated**
13:5 17:1,3
35:17
**communicating**
17:11 22:10
**communication**
38:5
**compel**  35:6
37:5
**compensation**
19:2

**complaining**
21:23
**complaint**  34:23
**compliance**  2:2
**computer**  39:9
**concerns**  22:3
**conditions**  6:10
**confinement**
24:7 29:6 33:4
**confirm**  7:6
34:20
**consented**  12:23
19:3
**consider**  30:18
**contact**  22:2
33:22
**contacted**  12:15
12:21 13:5 22:4
33:15
**contempt**  11:12
**contend**  32:13
**conversation**
14:15 35:2
**cooperate**  11:7
**copies**  18:20
**copy**  8:4,5,17
**correct**  9:4
14:17 21:4 27:2
27:3 34:17
39:10
**correctional**
1:18 20:4,5,23
22:12
**corrections**  6:5
21:7

**counsel** 1:15 2:7
2:9 5:7 9:6 10:2
10:3,8,11,13
12:7,11 17:10
19:8 20:4 30:21
31:21 32:2,6,9
34:13,16,18,20
35:10,15,16,21
36:3,17,18,20
37:2 39:14
**county** 39:4
**couple** 7:2 20:21
21:20
**court** 1:1 2:3
4:1,13 5:2,6,17
6:19 8:1 9:1
11:2,5,9,11,12
11:16,20 37:4,5
39:20
**courthouse**
10:23
**cover** 37:6
**covered** 13:22
**cravath** 4:15
15:8 31:16
**crew** 27:9
**criminal** 36:22
**current** 9:13
**currently** 9:10
10:13 12:8
32:14
**cv** 1:5 4:4

**d**

**d** 3:1
**damn** 23:16
**date** 5:3
**day** 1:19 37:11
**death** 20:2
**decide** 9:17
**decision** 11:23
**decline** 29:10
**defendants** 1:11
4:9,23 35:21
**department** 6:4
16:13 20:15
21:7
**deponent** 38:7
**deposition** 1:15
1:23 2:1,11,15
9:2 10:8 16:6,21
17:2,3 19:14
31:14 35:7,9
36:6 37:5,14,19
39:6
**depositions** 2:4
14:8
**described** 28:3
**details** 19:18
**directly** 26:5
**disappointed**
38:5
**disciplinaries**
26:11,11
**discovery** 11:16
**discuss** 16:18
18:21 19:5

**district** 1:1,2
4:1,2 5:5
**division** 1:3 4:3
21:13,17 33:2,7
33:14,15
**doc** 21:8
**doc's** 21:16
**document** 8:11
8:15,16
**doing** 23:9
**doj** 12:18 20:19
**dollars** 19:1
**donaldson** 20:5
22:12
**door** 27:10
**dorm** 25:5,15
**duke** 1:7 4:5 6:6
6:16,21 9:10
13:18
**duly** 5:14

**e**

**e** 3:1 4:20 39:1,1
**earlier** 21:22
**effect** 2:2
**eighth** 4:16
**either** 26:23
**eji** 12:19 13:3,5
13:6 17:2 31:13
**emailed** 22:4
**employed** 14:15
**enforcement**
21:13,17 33:2,7
33:13,15
**entitled** 19:8
30:17,19 36:19

36:20
**equal** 14:16
**escapes** 24:2
**et** 1:7,10 4:5,8
**evidence** 2:12
**exactly** 17:4,8
17:12 24:7 27:9
34:1
**examination** 3:3
5:10 6:1
**examined** 5:14
**except** 2:8
**excuse** 7:13
**exercise** 29:15
**exhibits** 3:6,7
**expenses** 35:7
37:6
**experience**
19:13
**expires** 39:22,23
**explain** 30:16
31:7,8
**explained** 18:9
**exploded** 23:4

**f**

**f** 39:1
**facility** 1:18
20:5,23 21:3
22:13 23:1,2
**fact** 33:4
**family** 22:3
**far** 38:3
**federal** 5:4 8:1
9:1,20 10:23

**feel** 23:18
**felt** 24:11,12
**fifteen** 24:19
**figure** 30:2
**file** 32:12 35:5
**filed** 13:22
**filing** 2:14
**financial** 11:17
**find** 11:16
**fine** 11:13
**firm** 12:20 15:8
  31:16
**first** 5:14,20 7:1
  7:5 12:12 17:18
  20:22
**fists** 27:15
**five** 35:1,23
**following** 5:11
**follows** 5:15
**food** 29:8
**force** 2:1
**foregoing** 5:6
  39:6,10
**form** 2:8
**former** 22:9
**forward** 16:21
  36:16
**found** 20:18
  21:22 22:7,11
  33:18
**fountain** 33:5
**four** 24:23
**fraction** 20:6
**frustration**
  17:14

**fulfill** 14:5
**fulfilled** 13:7,19
  18:11
**full** 2:2 7:6,16
  27:15 35:18
**fully** 35:10
**functioned** 28:6
**further** 1:21 2:5
  2:13 37:9 38:7
  39:13

**g**

**gang** 24:18 28:2
  28:4,6
**gary** 34:4
**give** 11:2 23:15
  35:1
**given** 39:11
**go** 5:22,23 7:13
  10:23 12:1
  20:21 30:8 34:5
  34:21 35:5,23
  36:1,2,15 37:20
**going** 6:18 7:20
  10:21,22 11:2,5
  11:9,11,12,15
  11:19 13:13
  16:21 18:7,9
  19:17,22 21:6
  24:18 26:5
  28:22 29:2,3,4,5
  29:7,8,10,11,12
  29:15 34:1,8,19
  35:1,4 37:8
**good** 37:3

**grounds** 2:10
**group** 28:13
**guess** 19:19
**guy** 25:1,14
  27:10,17,18
  28:16 31:1
**guy's** 28:11
**guys** 28:15

**h**

**hallway** 27:13
**hamm** 1:10 4:8
**handcuffed**
  25:4 27:13
**handcuffs** 19:23
  27:16
**happen** 10:22
**happening**
  23:17 27:23
**happens** 37:16
**hard** 30:3,5
**harm** 29:13
**harmed** 29:4
**head** 24:22
  27:15 28:20
**heard** 21:12
  26:23
**hearing** 26:2
  31:4 39:12
**help** 23:8
**hit** 20:19 22:14
  27:14 32:14,19
  32:22
**hold** 11:11
**hollering** 26:3

**housed** 29:9
**huh** 6:9 11:1,14
  11:18
**hundred** 14:23
  18:23
**huntsville** 4:22

**i**

**idea** 32:16
**incarcerated**
  13:23
**incident** 25:11
  26:16
**individuals** 27:5
**infirmary** 25:7
  27:21
**influence** 24:13
**information**
  31:5 33:11
  36:11
**initiative** 14:16
**inmate** 25:18,23
  26:13 27:1
**inmates** 6:7
**inside** 27:19
**insinuation**
  17:19
**instituted** 6:6
**instructed**
  15:18
**intention** 35:18
**intentionally**
  22:15
**interested** 39:15
**interview** 23:23

**interviewed**
24:9
**interviewing**
24:12
**investigation**
22:19 24:10
**investigators**
20:15 21:16
**involved** 33:8
**involving** 21:19
25:11
**irrelevant** 9:15
10:4,14 12:9
**issued** 7:23 35:9
**issues** 6:12 20:7

**j**

**jefferson** 39:4
**job** 19:10
**jobs** 23:8
**john** 1:10 4:8
**jumped** 19:22
20:6 25:4,6,7
**justice** 14:16
16:13 20:15

**k**

**kin** 39:14
**knew** 26:16
33:23
**know** 8:22 10:9
10:12 12:17,19
14:3 15:10,18
15:21 16:10,11
16:11,12,14
17:15 18:3 23:3

23:11 24:7,15
26:12,22 27:9
28:5,8 29:1,11
29:23 30:10
31:8 32:15
34:18 37:21
**known** 22:3

**l**

**l** 1:12,16 4:12
5:1 20:4 39:19
**laid** 35:17
**law** 12:20 21:13
21:16,16 33:1,6
33:13,14
**laws** 2:3
**lawsuit** 6:13
**lawyer** 9:13
17:6,15
**leading** 2:8
**learn** 25:10
**leaving** 37:14
**lecture** 12:6
**led** 23:23
**left** 20:16,18
27:19
**legal** 7:3,16,21
9:14 34:12,15
35:21
**lesd** 21:12,20
22:1,1,5,11,19
23:1
**letters** 33:17
**liaison** 22:1,10
33:22 34:3

**license** 39:21
**lieutenant** 24:1
24:2,3,4,15,17
25:11,19 27:5
28:3
**life** 20:7
**lightfoot** 17:21
**listed** 34:23
**listen** 37:17
**litigation** 13:7
14:3 19:17
**litigations** 14:19
**llp** 4:15,19
**located** 8:20
20:22
**loosely** 28:5
**lot** 19:21
**lukama** 27:11
28:17
**lunsford** 3:4
4:20 5:19,22 6:1
6:4 7:15 16:22
17:5,9,13 18:1
19:11 32:10
35:22 36:14
37:12,17,20
**lynette** 4:20 7:9
7:11

**m**

**made** 2:7
**make** 2:10
12:12,13 17:16
22:3 29:12
**malone** 34:4

**man** 31:10
**mark** 1:7 4:5
6:6
**marked** 3:7
**matter** 10:10
12:8,11 33:3
**mean** 13:17
17:16 26:8
29:21
**means** 39:8
**meet** 15:11 17:7
17:21 22:16
35:12
**melvin** 1:16 5:9
5:13 7:17,19
**member** 13:20
14:5 17:11
18:12
**members** 13:8
**memo** 33:1
**met** 15:1,7,14
21:15,18 31:1
**michelle** 1:16
4:12 5:1 39:19
**middle** 1:3 4:3
31:4
**mind** 19:12,15
**minute** 22:21
34:6
**minutes** 35:2,23
**moment** 24:2
**moore** 4:15
**motion** 35:5
**multiple** 20:2

**murdered**  23:14

**n**

**n**  1:12 3:1
**name**  6:3 7:6,7
 7:9,16,17 15:10
 15:13 19:9 24:1
 26:12,14 27:4
 28:1,11 34:4
**named**  6:22
 20:4 36:4
**names**  7:19 28:7
 28:19 31:22
 32:5
**necessary**  2:6
**need**  10:12 12:4
 16:4 33:2 36:9
 36:12 38:2
**needs**  9:14
**neither**  39:14
**never**  13:5
 14:14 22:2,2,6
 23:15 31:1 33:8
 33:15,17 35:16
**new**  4:16,17
**news**  25:13
**newspaper**  27:1
**nice**  37:11
**northern**  1:2
 4:2
**notary**  39:23
**notice**  2:14
**notified**  34:6
 35:11
**number**  1:5 3:3
 4:4 19:4 39:21

**numerous**  20:7

**o**

**o**  1:12
**oath**  13:15
**object**  17:19
**objection**  12:13
**objections**  2:7
 2:10 13:10 14:7
 18:13
**obligation**  18:11
 29:14
**obligations**  13:8
 13:20 14:4
**occurred**  26:18
**october**  1:20
**offered**  2:12
**office**  8:10
 16:12 25:6
**officer**  8:10
 21:23 22:8,13
 22:23 23:22
 27:11,12 28:17
 28:17 33:20
 34:2
**officers**  20:2,5,9
 20:18 21:15
 23:1 24:18 25:3
 28:1,13,14 29:8
**officials**  6:5
**okay**  5:17 6:23
 7:4,18 8:14,17
 9:9 10:14,20,21
 11:8 16:17 21:2
 21:9 27:4 30:3,4
 30:9,16,20 31:3

 31:20 32:13
 34:14 36:18
 37:3
**ones**  9:19
**opportunity**
 35:12,14 37:23
 38:1
**oral**  5:10
**orchestrated**
 22:8
**orchestrating**
 33:21
**order**  9:1 11:10
 35:8
**overhear**  26:6
**own**  35:15

**p**

**p**  1:12
**page**  3:3
**paid**  35:7
**paperwork**  26:7
 26:9 33:12
**paperwork's**
 28:8
**part**  6:19 22:13
 24:9,17 28:2,13
 33:19
**participate**  19:7
 29:10 37:7
**parties**  1:14 2:9
 39:14
**parvin**  1:17
 4:12 5:1 39:19
**past**  21:21 32:16

**pay**  11:20
**people**  21:8 23:2
 23:3,7,8,10,13
 23:14,14 24:12
 24:19,20 25:8
 33:8
**percent**  14:23
**period**  16:23
**person**  20:3
 22:10 24:21
 33:22
**phone**  25:2
**plaintiff**  17:20
 30:21
**plaintiffs**  1:8
 4:6,18 6:7,22
 13:19 17:10
 30:13,14 31:21
 32:1,6,8 34:16
 35:10 36:3,4
**please**  7:16
**plenty**  31:20
**point**  18:5
**poisoned**  29:8
**position**  18:10
 31:10
**potentially**  6:18
**potter**  4:21 7:9
 7:10,12,12
**present**  26:17
**previously**
 14:20
**prior**  2:12
**prison**  20:16
 23:5 24:13 33:5

| | | | |
|---|---|---|---|
| **private** 18:19 | **questions** 2:8,9 | **recall** 14:20 | **represent** 6:4 |
| **privilege** 18:14 | 7:2 9:18 11:6,10 | 15:6,13 26:14 | 13:18 |
| 18:15 | 11:22 12:3,4 | **receive** 8:3 19:2 | **representation** |
| **probably** 22:16 | 14:6,9 18:7 | 26:6 29:15 | 7:4,21 19:8 |
| 33:19 | 19:12 31:6 34:8 | **received** 9:7 | 30:19 34:13,15 |
| **problem** 23:19 | 34:11 35:4 37:2 | 26:8 33:1,11 | 34:16 |
| 31:2 | 37:9 38:1 39:7 | **recently** 22:7 | **representatives** |
| **problems** 23:20 | **quickly** 5:23 | 24:20 33:10 | 13:3 14:13 |
| **procedure** 5:5 | **r** | **record** 7:6 | 18:10 19:6 |
| **proceed** 16:19 | **r** 4:20 39:1 | 16:19 35:2,23 | 29:20 |
| 35:19 | **radio** 27:18,19 | 36:2,7 37:13,21 | **represented** |
| **proceeding** 19:7 | **ray** 1:16 5:9,13 | **recruiting** 23:7 | 10:11,12 12:7 |
| 36:6,23 | 7:17,19 10:22 | **redirect** 37:16 | 12:10 16:5,20 |
| **proceedings** | 16:19 17:22 | **refer** 21:2,8 | **representing** |
| 5:11 13:12 | 19:11 30:2 | **refusal** 37:7 | 5:21 9:10 17:20 |
| **process** 9:17 | 34:20 36:5,8,15 | **refuse** 7:20 | 36:4,5,13 |
| 12:2 | 37:13 38:1 | 11:21 15:22 | **represents** 6:21 |
| **properly** 35:9 | **ray's** 16:23 | 16:2 35:4 | 29:22 30:14 |
| **property** 8:21 | 17:14 18:6 | **refused** 11:6 | 39:10 |
| **propose** 6:16 | **rdp** 1:5 4:4 | 22:16 | **request** 15:16 |
| **protected** 20:13 | **reach** 31:13,17 | **refusing** 10:15 | **reservations** |
| **provided** 5:4 | 31:21 32:1,4,8 | **regular** 27:23 | 13:12 20:11 |
| **public** 39:23 | 32:11 | **related** 6:10 7:3 | **reserve** 37:15 |
| **purported** | **reached** 18:17 | 14:8 18:13 20:8 | **reserved** 19:16 |
| 17:11 | 21:20 22:5 33:6 | 22:20 37:6 | **resolve** 35:3 |
| **purposes** 19:17 | 33:16 | **relating** 2:3 | **resources** 11:17 |
| **put** 20:19 22:14 | **reaching** 18:16 | **relation** 14:21 | **respective** 1:15 |
| 32:22 33:4 | 33:20 | **relevant** 10:7 | **responded** 33:9 |
| **q** | **read** 27:1 | **remember** | 33:17 |
| **question** 7:3 | **reading** 1:22 | 14:18,23 26:2 | **result** 7:23 29:2 |
| 10:6,16 11:21 | **really** 13:13 | 27:8 28:7,10,12 | 39:16 |
| 23:18 25:22 | **reason** 9:13 | 28:19 32:19 | **retain** 9:6 35:14 |
| **questioned** | 22:14 33:19 | **reporter** 4:13 | **retained** 9:12 |
| 23:11 | **reasons** 13:11 | 5:2,17 39:20 | 10:2,3 |
| | 22:17 | | |

retaliated   25:8
retaliation
   20:14 29:3
right   6:23 9:3
   15:5 20:23 21:1
   21:5,10 27:10
   28:20,22 29:15
   30:6,22 35:22
   37:3,15
rights   19:2
ring   27:15
road   1:18 5:8
robert   20:4
role   31:9
ronald   24:3
rules   2:3 5:4

**s**

s   1:12
saith   38:7
saw   14:3 27:21
saying   29:2
   32:15
scalp   27:16
scott   4:16
seated   6:23 15:4
see   12:23 13:1
send   12:18,18
   12:19 16:16
   17:21
sending   17:6
sent   12:16 16:11
   16:12,13,14
   18:2,3 20:15
served   8:4,5
   13:22 31:22

32:3 34:3
services   21:13
   21:17 33:2,7,13
   33:15
settlement
   18:19,20,21,22
   19:1
several   6:4,7
shards   27:19
shift   8:9 25:5
show   22:6 23:17
showed   16:14
   23:15 30:15
shows   17:15
side   4:21
sign   8:12,13
signature   1:22
   39:18
signed   8:12,15
   19:9
sir   9:5 11:4 16:7
   26:1
sit   12:16
sitting   30:13,21
situation   31:8
six   18:23
skeptical   17:17
skull   27:20
snow   4:19
solitary   24:6
   29:6 33:4
somebody   17:21
   30:12,13
sorry   7:8 9:16
   9:22 32:10 38:3

speak   19:18,20
   25:17,23 26:5
   29:1 35:13 36:7
   36:7,13,15
speaking   14:19
   19:21 20:14,19
specific   18:12
specifically
   14:21
spoke   22:19
   26:1
springville   1:19
   5:8
square   4:21
st   1:17,18 5:7
   6:8,11,17 13:23
   15:19 19:13
   20:23 21:3
   25:15 27:6 33:6
stabbed   23:13
standing   37:13
state   7:16 39:3
statement   12:13
states   1:1 4:1
   5:5
stenotype   39:7
stevenson   18:23
stipulated   1:13
   1:21 2:5,13
stipulation   5:6
stipulations
   5:18
stowed   29:6
stuff   33:21

subject   20:1
subjected   29:13
subpoena   7:23
   8:3,6,18,22 9:7
   9:20 16:23
   18:13 35:10
subpoenaed
   6:14
subpoenas
   31:23 32:7
substantiated
   17:22
sued   6:5
suite   4:21
supposed   23:9
sure   9:22 24:6
   29:12
swaine   4:15
sworn   5:14

**t**

t   1:12,12 39:1,1
take   35:8 37:4
taken   1:16 39:6
talk   21:6 23:2
   34:22
talking   26:3
tell   11:5 30:9
telling   26:4
ten   24:19 27:8
term   28:4
terms   21:9
testified   5:15
testimony   39:11
thank   37:10

**thereto** 2:12
  39:8
**thing** 20:10
**things** 14:7 19:4
  19:21 20:22
  29:2 31:6 38:2
**think** 14:22
  21:18 22:22
  28:9,18 29:14
  30:17 32:20
**third** 25:8
**thousand** 18:23
**threats** 20:2
**time** 2:11,11
  13:23 16:23
  21:18 25:8
  27:21 32:18
  34:1
**times** 21:21
**today** 6:14 9:2
  10:22 11:22
  16:5 20:22
  30:15 31:23
  34:11 35:6 37:7
**today's** 10:7
  19:14
**told** 12:22 17:6
  23:12,17 27:17
  32:23 34:7
**took** 25:5,6
**top** 28:20
**tortured** 29:7
**transcribed**
  39:8

**transcript** 11:3
  39:11
**transcription**
  39:9
**transferred**
  22:12 33:3
**travel** 38:3
**trial** 2:11
**true** 17:23 39:10
**try** 23:7,18
  36:10
**trying** 23:2 30:2
**two** 24:23

**u**

**u** 1:12
**uh** 6:9 11:1,14
  11:18
**unconstitutional**
  29:9
**under** 9:19
  13:14
**understand**
  6:15,20 7:22
  13:13,14 17:14
  31:10,12 34:14
**understanding**
  13:2 14:2 18:22
**understood**
  13:21
**united** 1:1 4:1
  5:5
**units** 29:10
**unrelated** 21:19
  22:20

**use** 21:9
**used** 28:4
**usual** 5:17

**v**

**variety** 6:12
**violence** 20:8
  23:4
**vs** 1:9 4:7

**w**

**wait** 22:21
**waived** 1:23
  2:15 19:1
**waiving** 37:22
**want** 12:12,13
  14:4 16:20 30:1
  30:2,7,11,21
  36:3,15,17
  37:22,23
**wanted** 35:13
  35:15,16
**we've** 6:14
  23:13,13,14,19
**weeks** 35:11
**went** 25:3
**west** 4:21
**william** 4:20
**willing** 23:12
**window** 26:3
**wish** 38:4
**witness** 1:23 5:9
  5:20 7:7,11,13
  17:4,8,12 18:5,8
  36:9,12 37:10
  39:12

**work** 20:3 23:7
  24:21 29:12
**worked** 13:4
**worker** 27:20
**working** 33:23
**works** 12:20
**wright** 6:3
**wrote** 26:10
  33:16

**x**

**x** 3:1
**xavier** 28:9
**xavion** 28:9,16

**y**

**y'all** 35:1
**yeah** 17:16
**year** 21:22
  22:22 33:10
**years** 27:8
**yesterday** 12:14
  15:11,14
**york** 4:17,17

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.