# Exhibit B

Page 1

1      IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
2                  MIDDLE DIVISION
3
4   MARK DUKE, et al.,
5        PLAINTIFFS,
6                              CASE NO.
    vs.
7                              4:14-cv-01952-RDP
8   JOHN HAMM, et al.,
9        DEFENDANTS.
10
11
12         DEPOSITION OF THOMAS STROTHER
13            TAKEN NOVEMBER 14, 2023
14
15           * * * * * * * * * * *
16       Taken pursuant to stipulation and
17   agreement before Joseph Jones, CCR,
18   Commissioner for the State of Alabama at
19   Large, at Donaldson Correctional Facility,
20   100 Warrior Lane, Bessemer Lane, Bessemer
21   Alabama, commencing at approximately 9:00
22   a.m. (CT).
23           * * * * * * * * * * *

Page 2

```
 1          APPEARANCES
 2  FOR THE PLAINTIFFS:
 3     Ms. Lauren Rosenberg
        CRAVATH, SWAINE & MOORE
 4      Attorneys at Law
        Worldwide Plaza
 5      825 Eighth Avenue
        New York, New York  10019
 6
 7  FOR THE DEFENDANTS:
 8     Mr. Daniel Chism
        Ms. Lynette Potter
 9      BUTLER SNOW, LLP
        Attorneys at Law
10      200 West Side Square, Suite 100
        Huntsville, Alabama  35801
11
12  FOR THE WITNESS:
13     Mr. Nick Langford
        LIGHTFOOT FRANKLIN & WHITE, LLC
14      Attorneys at Law
        The Clark Building
15      400 20th Street North
        Birmingham, Alabama
16
            * * * * * * * * * * * *
17
          EXAMINATION INDEX
18
    THOMAS STROTHER
19
    BY MR. CHISM                    4
20
          EXHIBIT INDEX
21
    DEFENDANTS'
22
    EXHIBIT 28, Notice and Subpoena     13
23
```

Page 3

```
 1              STIPULATIONS
 2       It is hereby stipulated and agreed by
 3   and between counsel representing the parties
 4   that the deposition of THOMAS STROTHER is
 5   taken pursuant to the Federal Rules of Civil
 6   Procedure and that said deposition may be
 7   taken before Joseph Jones, Court Reporter and
 8   Commissioner for the State of Alabama at
 9   Large, without the formality of a commission;
10   that objections to questions other than
11   objections as to the form of the questions
12   need not be made at this time but may be
13   reserved for a ruling at such time as the
14   deposition may be offered in evidence or used
15   for any other purpose as provided for by the
16   Federal Rules of Civil Procedure.
17       It is further stipulated and agreed by
18   and between counsel representing the parties
19   in this case that said deposition may be
20   introduced at the trial of this case or used
21   in any manner by either party hereto provided
22   for by the Federal Rules of Civil Procedure.
23            * * * * * * * * * * * * *
```

Page 4

```
 1          THOMAS STROTHER,
 2       the witness, having first been
 3  duly sworn or affirmed to speak the truth, the
 4  whole truth, and nothing but the truth,
 5  testified as follows:
 6              EXAMINATION
 7  BY MR. CHISM:
 8      Q.   Good morning, Mr. Strother.  My
 9  name is Dan.  I represent the Department of
10  Corrections and the State in a lawsuit that's
11  been filed by some plaintiffs in St. Clair,
12  and before I go any further, am I pronouncing
13  your name right?
14      A.   Strother.
15      Q.   Strother?
16      A.   Yes, sir.
17      Q.   Okay.  So this morning, did we
18  pull you out of any anything?  Were you in a
19  program or anything like that this morning?
20      A.   No, sir.
21      Q.   What were you doing when we pulled
22  you over here?
23      A.   Getting some fresh air.
```

Page 5

```
 1      Q.   So you were on the yard?
 2      A.   Yes, sir.
 3      Q.   How long had you been out there?
 4      A.   Like, 15, 20 minutes.
 5      Q.   Okay.  Which dorm are you in right
 6  now?
 7      A.   I think "W."
 8      Q.   Sorry?
 9      A.   "W."
10      Q.   "W?"
11      A.   Yes, sir.
12      Q.   Is that a general population dorm?
13      A.   No.  It's seg.
14      Q.   Did you get breakfast this
15  morning?
16      A.   Every day, sir.
17      Q.   What time is breakfast?
18      A.   You know I just left St. Clair, so
19  they're on a different time schedule.  So I
20  don't know.  You know, St. Clair feeds
21  at 3:00.  I think they be getting their trays
22  around, like, 2:00 something.
23      Q.   2:00 o'clock this morning?
```

Page 6

1    A.   Yes, sir.
2    Q.   And have you ever sued anyone
3  before?
4    A.   No, sir, I haven't.
5    Q.   Have you ever been sued?
6    A.   No, sir, I haven't.
7    Q.   Is this the first time you've ever
8  given a deposition?
9    A.   Yes, sir, it is.
10   Q.   Okay.  I'm going to go over some
11 ground rules for you just to make sure that we
12 communicate clearly.  So we have a court
13 reporter here on my left.  He's taking down
14 everything we say.  He's taking down
15 everything you say.
16        And you understand you're under
17 oath, correct?
18   A.   (Witness nods head.)
19   Q.   What -- sorry.  Second rule, you
20 have to answer out loud.  I know you're
21 nodding your head.
22   A.   Oh.  Yes, sir.  Yes, sir.
23   Q.   I understand you, but he can't

Page 7

1  record that.  So what is being under oath mean
2  to you?
3    A.   What is what?
4    Q.   Being under oath mean to you.
5    A.   I don't know.  Are you going to
6  explain it to me?
7    Q.   So you know today you have to tell
8  the truth to all the questions I ask?
9    A.   We just went through that.
10   Q.   Yeah.  So you understand you're
11 under oath, and you're telling the truth to me
12 today?
13   A.   Right.
14   Q.   I just want to make sure you
15 understood.
16   A.   Right.
17   Q.   So, as we're going through today,
18 at some point, you may need a break.  If you
19 need a break, just tell me.  We'll take five,
20 ten minutes.  Let you go to the bathroom, get
21 water, whatever.
22   A.   So how long this is going to take?
23   Q.   I can't give you a full time.  We

Page 8

1  have seven hours.
2    A.   I couldn't -- I couldn't give you
3  a full time.  I gave you an estimate.
4    Q.   Sorry?
5    A.   I couldn't give you a full time of
6  how long I was on the yard and what time
7  breakfast time comes.  I just rounded it off
8  and give you an estimate.
9    Q.   Okay.
10   A.   You can't do the same?
11   Q.   Yeah.  So we have seven hours on
12 the record today.
13   A.   Oh, no.
14   Q.   I don't know if we'll take all
15 that time, but we have it.  Okay.  So, as
16 we're going through, like I said, if you need
17 a break, just let me know.  Occasionally, you
18 may hear your attorney on your left object.
19 If he objects, you can still answer unless he
20 tells you not to.  You understand?
21   A.   Yes, sir.
22   Q.   I may ask a bad question at some
23 point today.  I probably will.  If you don't

Page 9

1  understand one of my questions, just tell me,
2  and I'll rephrase it.
3    A.   Can I ask you something?  Why am I
4  sitting in front of you?  Why am I here?
5    Q.   We'll get to that.
6    A.   I don't like being -- you feel --
7  you're even dressed to impress.  Here I am
8  looking all -- I'm not comfortable right now
9  because I'm caught off guard, man.
10   Q.   I understand.  Why are you not
11 comfortable?
12   A.   Look at me, man.  I ain't got my
13 hair cut.  Come on, man.  I ain't myself.  I'm
14 a fly young man.
15   Q.   I understand.
16   A.   Yes, sir.
17   Q.   I want you to understand, we're
18 not judging your appearance today.
19   A.   It don't matter.  I'm not in
20 public.  I ain't just in prison.  It's just
21 me.  It ain't about y'all.  I almost said fuck
22 y'all, but forget y'all.  It's about me.
23   Q.   I understand.  We're --

3 (Pages 6 - 9)

Page 10

1    A.   My folks taught me where you got
2  to stand outside the door and make sure you're
3  clean and lean.
4    Q.   I got you.  Well, like I said,
5  we're not going to take any judgment about
6  your appearance today.
7         Did you know about today's
8  deposition?
9    A.   No.  I wouldn't be looking like a
10 damn fool.
11   Q.   So you didn't know about today at
12 all?
13   A.   No, sir.
14   Q.   Did you meet with your attorney
15 before this deposition?
16   A.   Sir?
17   Q.   Did you meet with your attorney
18 before the deposition today?
19        THE WITNESS:  Did I meet with my
20 attorney?
21        MS. LANKFORD:  (Nods.)
22   A.   Yes, sir.
23   Q.   We're not going to do that.  I'm

Page 11

1  going to ask you a question, and you're going
2  to answer it.  He can't answer --
3    A.   You can't do that because -- no.
4    Q.   Yeah, I can.  So I'm asking you
5  questions.
6    A.   Well, I'm through talking.  I
7  don't want -- I'm ready to go.
8    Q.   I want you to understand --
9         THE WITNESS:  See how he's going
10 to do that?
11   Q.   He can't answer the questions.
12        MS. LANKFORD:  He's going to be
13 asking you questions.  You got to answer.
14 I'll fill -- can we take a five-minute break?
15        MR CHISM:  Sure.
16        (A recess was taken.)
17        THE WITNESS:  I apologize.
18        MR. CHISM:  You're good.  Are you
19 ready?
20        THE COURT REPORTER:  (Nods.)
21   Q.   Mr. Strothers, I think we got off
22 on the wrong foot.  If you'll bear with me,
23 I'll explain why we're here, and we can get

Page 12

1  through this today.
2    A.   Who put that in your head?
3    Q.   What?
4    A.   That we got off on a bad foot.
5    Q.   You seem very frustrated by our
6  initial meeting, and I'm not trying to
7  frustrate you.  I'm not trying to trick you
8  today.  I just need to ask you questions about
9  your time in prison.  Is that fair?
10   A.   You can ask me whatever you feel.
11 I'm going to give you a correct answer.
12   Q.   Okay.  And I'm going to give you a
13 chance to tell us about your experience.
14   A.   I don't want to do no talking.
15 I'm going to let you do the talking.
16   Q.   Okay.  So, as we're going through
17 today, like I said, I'm going to ask you a
18 bunch of questions.  When I ask a question,
19 make sure you let me finish the question just
20 so we don't interrupt each other.  Like I
21 said, I want to make sure we're communicating
22 very effectively.  Is that fair?
23   A.   Yes, sir.

Page 13

1    Q.   If I ask you a question and you
2  don't understand it, like I said, just let me
3  know.  I'll reask it, but if you answer, I'm
4  going to assume you understood.  Is that fair?
5    A.   Yes, sir.
6    Q.   Okay.  So I'm going to hand you --
7  can you read?  I'm not trying to embarrass
8  you.
9    A.   Yes, sir.
10   Q.   Okay.  I just want to make sure as
11 I'm handing you stuff you understand what I'm
12 handing you.
13        MR. CHISM:  Okay.  This is going
14 to be Defendants' Exhibit Number 28.
15        (Defendants' Exhibit Number 28 was
16        marked for identification.)
17   Q.   Okay.  Do you recognize this
18 document?
19   A.   Yes, sir, I do.
20   Q.   Okay.  What is that document?
21   A.   It's a subpoena, ain't it?
22   Q.   Is it?  I'm going to turn to
23 page 3 of -- sorry -- page 4 of Defendants'

Page 14

1  Exhibit 28.  Do you recognize this document?
2      A.   Yes, sir, I do.
3      Q.   What is that document?
4      A.   The third amendment.
5      Q.   Sorry?
6      A.   The third amendment.
7      Q.   I'm sorry.  I don't understand
8  you.
9      A.   The third amendment.
10     Q.   Oh.  Does it say third amended
11 notice of deposition of Thomas Strother?
12     A.   Yes, sir.
13     Q.   And, again, I'm not not trying to
14 trick you.  I just want to make sure we're
15 talking about the same document.
16     A.   Yes, sir, we are.
17     Q.   Okay.  So you said you do
18 recognize it?
19     A.   (Witness nods head.)
20     Q.   And you see at the top there it
21 says, Mark Duke versus John Hamm?
22     A.   Yes, sir.
23     Q.   So you realize that's a lawsuit

Page 15

1  that's been filed, correct?
2      A.   Yes, sir.
3      Q.   Do you know anything about that
4  lawsuit?
5      A.   No, sir.
6      Q.   Okay.  So I'm just going to give
7  you a little bit of information about it so we
8  can talk more clearly about what's going on.
9  Is that fair?
10     A.   Yes, sir.
11     Q.   So there were some inmates at
12 St. Clair including Mr. Mark Duke, who is a
13 plaintiff who filed a lawsuit against the
14 Department of Corrections including Mr. John
15 Hamm.  Do you know who John Hamm is?
16     A.   No, sir.  Who the inmate is?
17     Q.   Mark Duke is the inmate.
18     A.   He know me?
19     Q.   Well, do you know him?
20     A.   No, sir, I do not.
21     Q.   Okay.  We're going to get to that,
22 I promise.  So you don't know who John Hamm
23 is?

Page 16

1      A.   No, sir, I do not.
2      Q.   Do you know anything about this
3  lawsuit?
4      A.   No, sir, I do not.  That's
5  probably why I'm being a pain in the ass, but
6  I'm not trying to be because I don't like to
7  be questioned like this in front of people
8  like y'all.
9      Q.   Why not?
10     A.   Because I don't be understanding.
11     Q.   Okay.  Well, here is what we'll
12 do.  If you don't understand, you just tell
13 me, and I'll make sure I make it as clear as I
14 can.  Okay?
15     A.   I don't understand none of that,
16 and I really don't understand.  Excuse me.
17     Q.   Okay.  So we're going to ask you
18 questions today about your time at St. Clair
19 and other prisons in Alabama because this
20 lawsuit was filed by inmates.  So we're trying
21 to figure out what their allegations are.
22 We're trying to figure out the substance of
23 their allegations.  So we just need your

Page 17

1  testimony about the conditions inside of
2  St. Clair.  Is that fair?
3      A.   Oh, yes, sir.
4      Q.   So you said you came from
5  segregation today.  I'm going to set that
6  aside for just a second.  You said you came
7  from segregation today, correct?
8      A.   Seg, lockup, yes, sir.
9      Q.   Why were you in segregation?
10     A.   I've been in seg three years now.
11     Q.   Three years straight?
12     A.   Yes, sir.
13     Q.   Okay.  Let's go back.  When did
14 you first enter segregation?
15          MS. ROSENBERG:  For the record,
16 can we just be clear about the time at
17 Donaldson versus St. Clair.  I just think it's
18 a little confusing.
19          THE WITNESS:  Thank you.
20     Q.   Okay.  So three years ago, were
21 you at St. Clair?
22     A.   Three years ago was I at
23 St. Clair... Yeah.  Yes, sir.

5 (Pages 14 - 17)

Page 18

1  Q. And you were in segregation three
2  years ago?
3  A. Yes, sir.
4  Q. Okay. So what date -- or as close
5  as you can get, what date did you enter
6  segregation?
7  A. Like, a week before Valentines
8  Day.
9  Q. In what year would that be?
10  A. '20.
11  Q. 2020?
12  A. Yes, sir.
13  Q. Why did you enter segregation a
14  week before Valentines Day in 2020?
15      MR. LANGFORD: I'd like to advise
16  my client of his fifth amendment rights.
17      THE WITNESS: Thank you.
18      MR. CHISM: What are you advising
19  him about?
20      MR. LANGFORD: Of his fifth
21  amendment protections.
22      MR. CHISM: Yeah. He doesn't have
23  a fifth amendment protection.

Page 19

1      THE WITNESS: I think it's all
2  right.
3  A. For a stabbing.
4  Q. Okay. And who did you stab?
5  A. Do I supposed to know my victim?
6  Q. Do you know your victim?
7  A. No, sir, I do not. I know
8  somebody came to get me and told me that
9  this -- got a problem going on. So I'm the
10  problem solver. So they always come get
11  Mr. Thomas Strother.
12  Q. You said you're the problem
13  solver.
14  A. I'm very wise. I'm not dumb.
15  Don't judge the book by the outside of the
16  cover. I'm very wise.
17  Q. I've already told you. I'm not
18  judging you.
19  A. Sure, sure.
20  Q. I'm just asking you questions.
21  A. Sure, sure, sure.
22  Q. Okay?
23  A. Yes, sir.

Page 20

1  Q. I'm not putting any judgment on
2  your answers. I'm just asking you questions,
3  getting answers. Is that fair?
4  A. Yes, sir.
5  Q. Okay. So you said you're a
6  problem solver, right?
7  A. Yes, sir.
8  Q. What does that mean?
9  A. Like, why I went to jail. Why I
10  went to lockup. A dude told my homeboy that
11  this cell -- this prison ain't big enough for
12  both of them. So he got to go somewhere. He
13  came and told me. What? So he put you out of
14  your cell? You were there first? So you know
15  how I'm going to handle it. He tried to talk
16  to him. So we got to do it the hard way. My
17  homeboy was here first. You come in here and
18  try to regulate? No.
19  Q. So let's break that down a little
20  bit. So one of your friends, your homeboy,
21  came and told you he had a problem with his
22  cellmate; is that right?
23  A. Right. His cellmate trying to put

Page 21

1  him in his cell. He was there first.
2  Q. Okay. And this is at St. Clair,
3  correct?
4  A. Yes, sir.
5  Q. Which dorm is this at St. Clair?
6  A. N-Dorm.
7  Q. N-Dorm?
8  A. 2. N-2.
9  Q. Okay. N-2. So N-2 in 2020,
10  February; is that correct?
11  A. Yeah.
12  Q. Okay. Your friend came and told
13  you he had a problem with his cellmate and
14  asked you to handle it. Is that fair?
15  A. No, he didn't ask me to handle it.
16  I just took it upon myself. He came and told
17  me, so obviously he wanted my help. He knew I
18  would go out and get the job done. TJ, hey,
19  man. All right, come on, let's go.
20  Q. So he didn't ask for help. You
21  took it upon yourself to go and fix the
22  problem?
23  A. Right.

Page 22

1  Q. Okay. How did you fix the
2  problem?
3  A. I just told you. That's how I
4  went to seg.
5  Q. So you stabbed the inmate who was
6  in your friend's cell?
7  A. Right.
8  Q. Was there any other reason besides
9  he was in your friend's cell?
10  A. No, sir, there wasn't.
11  Q. Was he assigned to that cell?
12  A. Yes, sir, he was.
13  Q. Okay. Was your friend assigned to
14  that cell?
15  A. Yes, sir, he was.
16  Q. So ADOC St. Clair had assigned
17  those two inmates to the same cell?
18  A. Right.
19  Q. They had a problem with each
20  other?
21  A. From back in the day.
22  Q. Okay. So they had a problem with
23  each other before they were assigned to the

Page 23

1  same cell?
2  A. Right, from a different prison and
3  just met -- and just seen each other again.
4  Q. Did ADOC know they had a problem
5  with each other?
6  A. I'm pretty sure they didn't.
7  Q. So ADOC didn't know, so they
8  assigned these two inmates to the same cell?
9  A. Right.
10  Q. Do you know the name of the inmate
11  who was stabbed?
12  A. No. If I did, I wouldn't give it.
13  Q. Why wouldn't you give me his name?
14  A. Come on, man. That's just like me
15  talking to the police. Just like I'm in here
16  right now just telling. I just told you I
17  don't want to do no talking. I really don't
18  want to be here, for real. Don't make me mad.
19  I'm not going to give you no name. Come on,
20  man.
21  Q. I tell you what, we can mark
22  anything you say as confidential. So, if we
23  talk about names, you don't want anyone else

Page 24

1  to see it, we can say it's confidential.
2  A. I ain't going to do -- can we
3  go -- can I -- can we reschedule this, or can
4  I just dismiss it? I don't want to -- you
5  just --
6  Q. No.
7  A. No?
8  Q. So you recognize the subpoena,
9  correct?
10  A. I'm through talking. I don't got
11  no more. I'm ready to go. Excuse me.
12  Q. Mr. Strother, will you sit down
13  for five minutes and let me explain what's
14  going to happen if you don't sit down?
15  MR. CHISM: Will you let the
16  record reflect Mr. Strother walked out of the
17  deposition? You want five minutes with him?
18  MR. LANGFORD: I'll try.
19  (A recess was taken.)
20  MR. CHISM: We're back on the
21  record. Mr. Strother has not returned to his
22  deposition after counsel with his attorney.
23  We have informed his attorney that we will

Page 25

1  seek a motion to compel if he does not return.
2  Upon information, I believe his attorney has
3  explained that to him, and he has still not
4  returned. At this point the deposition is
5  stayed.
6  (Deposition was stayed at 9:31
7  a.m.)

7 (Pages 22 - 25)

```
                                              Page 26
 1           REPORTER'S CERTIFICATE
 2   STATE OF ALABAMA
 3   ETOWAH COUNTY
 4        I, Joseph Jones, Certified Court
 5   Reporter and Commissioner for the State of
 6   Alabama at Large, hereby certify that on
 7   November 14, 2023, I reported the deposition
 8   of THOMAS STROTHER, who was first duly sworn
 9   or affirmed to speak the truth in the matter
10   of the foregoing cause, and that pages 4
11   through 25 contain a true and accurate
12   transcription of the examination of said
13   witness by counsel for the parties set out
14   herein.
15        I further certify that I am neither kin
16   nor of counsel to any of the parties to said
17   cause nor in any manner interested in the
18   results thereof; and that this transcript was
19   certified and prepared on November 14, 2023.
20
21             JOSEPH JONES, CCR
               Commissioner for the
22             State of Alabama at Large
               CCR # 645, Expires 09/30/24
23
               MY COMMISSION EXPIRES: 06/01/25
```

**&**
& 2:3,13

**0**
01952 1:7
06/01/25 26:23
09/30/24 26:22

**1**
100 1:20 2:10
10019 2:5
13 2:22
14 1:13 26:7,19
15 5:4
18453 26:20

**2**
2 21:8,8,9,9
20 5:4 18:10
200 2:10
2020 18:11,14 21:9
2023 1:13 26:7 26:19
20th 2:15
25 26:11
28 2:22 13:14,15 14:1
2:00 5:22,23

**3**
3 13:23
35801 2:10
3:00 5:21

**4**
4 2:19 13:23 26:10
400 2:15
4:14 1:7

**6**
645 26:22

**8**
825 2:5

**a**
a.m. 1:22 25:7
accurate 26:11
adoc 22:16 23:4 23:7
advise 18:15
advising 18:18
affirmed 4:3 26:9
ago 17:20,22 18:2
agreed 3:2,17
agreement 1:17
ain't 9:12,13,20 9:21 13:21 20:11 24:2
air 4:23
al 1:4,8
alabama 1:1,18 1:21 2:10,15 3:8 16:19 26:2,6,22
allegations 16:21,23
amended 14:10

amendment 14:4,6,9 18:16 18:21,23
answer 6:20 8:19 11:2,2,11 11:13 12:11 13:3
answers 20:2,3
apologize 11:17
appearance 9:18 10:6
appearances 2:1
approximately 1:21
aside 17:6
asked 21:14
asking 11:4,13 19:20 20:2
ass 16:5
assigned 22:11 22:13,16,23 23:8
assume 13:4
attorney 8:18 10:14,17,20 24:22,23 25:2
attorneys 2:4,9 2:14
avenue 2:5

**b**
back 17:13 22:21 24:20
bad 8:22 12:4
bathroom 7:20

bear 11:22
believe 25:2
bessemer 1:20 1:20
big 20:11
birmingham 2:15
bit 15:7 20:20
book 19:15
break 7:18,19 8:17 11:14 20:19
breakfast 5:14 5:17 8:7
building 2:14
bunch 12:18
butler 2:9

**c**
case 1:6 3:19,20
caught 9:9
cause 26:10,17
ccr 1:17 26:21 26:22
cell 20:11,14 21:1 22:6,9,11 22:14,17 23:1,8
cellmate 20:22 20:23 21:13
certificate 26:1
certified 26:4,19
certify 26:6,15
chance 12:13
chism 2:8,19 4:7 11:15,18 13:13 18:18,22 24:15

| | | | |
|---|---|---|---|
| 24:20 | confusing 17:18 | 25:4,6 26:7 | exhibit 2:20,22 |
| civil 3:5,16,22 | contain 26:11 | different 5:19 | 13:14,15 14:1 |
| clair 4:11 5:18 | correct 6:17 | 23:2 | experience |
| 5:20 15:12 | 12:11 15:1 17:7 | dismiss 24:4 | 12:13 |
| 16:18 17:2,17 | 21:3,10 24:9 | district 1:1,1 | expires 26:22,23 |
| 17:21,23 21:2,5 | correctional | division 1:2 | explain 7:6 |
| 22:16 | 1:19 | document 13:18 | 11:23 24:13 |
| clark 2:14 | corrections 4:10 | 13:20 14:1,3,15 | explained 25:3 |
| clean 10:3 | 15:14 | doing 4:21 | **f** |
| clear 16:13 | counsel 3:3,18 | donaldson 1:19 | facility 1:19 |
| 17:16 | 24:22 26:13,16 | 17:17 | fair 12:9,22 |
| clearly 6:12 | county 26:3 | door 10:2 | 13:4 15:9 17:2 |
| 15:8 | court 1:1 3:7 | dorm 5:5,12 | 20:3 21:14 |
| client 18:16 | 6:12 11:20 26:4 | 21:5,6,7 | february 21:10 |
| close 18:4 | cover 19:16 | dressed 9:7 | federal 3:5,16 |
| come 9:13 19:10 | cravath 2:3 | dude 20:10 | 3:22 |
| 20:17 21:19 | ct 1:22 | duke 1:4 14:21 | feeds 5:20 |
| 23:14,19 | cut 9:13 | 15:12,17 | feel 9:6 12:10 |
| comes 8:7 | cv 1:7 | duly 4:3 26:8 | fifth 18:16,20 |
| comfortable 9:8 | **d** | dumb 19:14 | 18:23 |
| 9:11 | damn 10:10 | **e** | figure 16:21,22 |
| commencing | dan 4:9 | effectively 12:22 | filed 4:11 15:1 |
| 1:21 | daniel 2:8 | eighth 2:5 | 15:13 16:20 |
| commission 3:9 | date 18:4,5 | either 3:21 | fill 11:14 |
| 26:23 | day 5:16 18:8 | embarrass 13:7 | finish 12:19 |
| commissioner | 18:14 22:21 | enter 17:14 18:5 | first 4:2 6:7 |
| 1:18 3:8 26:5,21 | defendants 1:9 | 18:13 | 17:14 20:14,17 |
| communicate | 2:7,21 13:14,15 | estimate 8:3,8 | 21:1 26:8 |
| 6:12 | 13:23 | et 1:4,8 | five 7:19 11:14 |
| communicating | department 4:9 | etowah 26:3 | 24:13,17 |
| 12:21 | 15:14 | evidence 3:14 | fix 21:21 22:1 |
| compel 25:1 | deposition 1:12 | examination | fly 9:14 |
| conditions 17:1 | 3:4,6,14,19 6:8 | 2:17 4:6 26:12 | folks 10:1 |
| confidential | 10:8,15,18 | excuse 16:16 | follows 4:5 |
| 23:22 24:1 | 14:11 24:17,22 | 24:11 | |

**[fool - looking]** Page 29

| | | | |
|---|---|---|---|
| **fool**  10:10 | 12:15,16,17 | **including**  15:12 | **know**  5:18,20 |
| **foot**  11:22 12:4 | 13:4,6,13,22 | 15:14 | 5:20 6:20 7:5,7 |
| **foregoing**  26:10 | 15:6,8,21 16:17 | **index**  2:17,20 | 8:14,17 10:7,11 |
| **forget**  9:22 | 17:5 19:9 20:15 | **information** | 13:3 15:3,15,18 |
| **form**  3:11 | 23:19 24:2,14 | 15:7 25:2 | 15:19,22 16:2 |
| **formality**  3:9 | **good**  4:8 11:18 | **informed**  24:23 | 19:5,6,7 20:14 |
| **franklin**  2:13 | **ground**  6:11 | **initial**  12:6 | 23:4,7,10 |
| **fresh**  4:23 | **guard**  9:9 | **inmate**  15:16,17 | **l** |
| **friend**  21:12 | **h** | 22:5 23:10 | **lane**  1:20,20 |
| 22:13 | **hair**  9:13 | **inmates**  15:11 | **langford**  2:13 |
| **friend's**  22:6,9 | **hamm**  1:8 14:21 | 16:20 22:17 | 18:15,20 24:18 |
| **friends**  20:20 | 15:15,15,22 | 23:8 | **lankford**  10:21 |
| **front**  9:4 16:7 | **hand**  13:6 | **inside**  17:1 | 11:12 |
| **frustrate**  12:7 | **handing**  13:11 | **interested**  26:17 | **large**  1:19 3:9 |
| **frustrated**  12:5 | 13:12 | **interrupt**  12:20 | 26:6,22 |
| **fuck**  9:21 | **handle**  20:15 | **introduced**  3:20 | **lauren**  2:3 |
| **full**  7:23 8:3,5 | 21:14,15 | **j** | **law**  2:4,9,14 |
| **further**  3:17 | **happen**  24:14 | **jail**  20:9 | **lawsuit**  4:10 |
| 4:12 26:15 | **hard**  20:16 | **job**  21:18 | 14:23 15:4,13 |
| **g** | **head**  6:18,21 | **john**  1:8 14:21 | 16:3,20 |
| **general**  5:12 | 12:2 14:19 | 15:14,15,22 | **lean**  10:3 |
| **getting**  4:23 | **hear**  8:18 | **jones**  1:17 3:7 | **left**  5:18 6:13 |
| 5:21 20:3 | **help**  21:17,20 | 26:4,21 | 8:18 |
| **give**  7:23 8:2,5,8 | **hereto**  3:21 | **joseph**  1:17 3:7 | **lightfoot**  2:13 |
| 12:11,12 15:6 | **hey**  21:18 | 26:4,21 | **little**  15:7 17:18 |
| 23:12,13,19 | **homeboy**  20:10 | **judge**  19:15 | 20:19 |
| **given**  6:8 | 20:17,20 | **judging**  9:18 | **llc**  2:13 |
| **go**  4:12 6:10 | **hours**  8:1,11 | 19:18 | **llp**  2:9 |
| 7:20 11:7 17:13 | **huntsville**  2:10 | **judgment**  10:5 | **lockup**  17:8 |
| 20:12 21:18,19 | **i** | 20:1 | 20:10 |
| 21:21 24:3,11 | **identification** | **k** | **long**  5:3 7:22 |
| **going**  6:10 7:5 | 13:16 | **kin**  26:15 | 8:6 |
| 7:17,22 8:16 | **impress**  9:7 | **knew**  21:17 | **look**  9:12 |
| 10:5,23 11:1,1,9 | | | **looking**  9:8 10:9 |
| 11:12 12:11,12 | | | |

**[loud - questions]** Page 30

| | | | |
|---|---|---|---|
| **loud** 6:20<br>**lynette** 2:8 | **n**<br>**n** 21:6,7,8,9,9 | **oh** 6:22 8:13<br>  14:10 17:3 | **prisons** 16:19<br>**probably** 8:23 |
| **m** | **name** 4:9,13<br>  23:10,13,19 | **okay** 4:17 5:5<br>  6:10 8:9,15 | 16:5<br>**problem** 19:9 |
| **mad** 23:18<br>**made** 3:12<br>**make** 6:11 7:14<br>  10:2 12:19,21<br>  13:10 14:14<br>  16:13,13 23:18<br>**man** 9:9,12,13<br>  9:14 21:19<br>  23:14,20<br>**manner** 3:21<br>  26:17<br>**mark** 1:4 14:21<br>  15:12,17 23:21<br>**marked** 13:16<br>**matter** 9:19<br>  26:9<br>**mean** 7:1,4 20:8<br>**meet** 10:14,17<br>  10:19<br>**meeting** 12:6<br>**met** 23:3<br>**middle** 1:2<br>**minute** 11:14<br>**minutes** 5:4<br>  7:20 24:13,17<br>**moore** 2:3<br>**morning** 4:8,17<br>  4:19 5:15,23<br>**motion** 25:1 | **names** 23:23<br>**need** 3:12 7:18<br>  7:19 8:16 12:8<br>  16:23<br>**neither** 26:15<br>**new** 2:5,5<br>**nick** 2:13<br>**nodding** 6:21<br>**nods** 6:18 10:21<br>  11:20 14:19<br>**north** 2:15<br>**northern** 1:1<br>**notice** 2:22<br>  14:11<br>**november** 1:13<br>  26:7,19<br>**number** 13:14<br>  13:15<br>**o**<br>**o'clock** 5:23<br>**oath** 6:17 7:1,4<br>  7:11<br>**object** 8:18<br>**objections** 3:10<br>  3:11<br>**objects** 8:19<br>**obviously** 21:17<br>**occasionally**<br>  8:17<br>**offered** 3:14 | 12:12,16 13:6<br>  13:10,13,17,20<br>  14:17 15:6,21<br>  16:11,14,17<br>  17:13,20 18:4<br>  19:4,22 20:5<br>  21:2,9,12 22:1<br>  22:13,22<br>**outside** 10:2<br>  19:15<br>**p**<br>**page** 13:23,23<br>**pages** 26:10<br>**pain** 16:5<br>**parties** 3:3,18<br>  26:13,16<br>**party** 3:21<br>**people** 16:7<br>**plaintiff** 15:13<br>**plaintiffs** 1:5<br>  2:2 4:11<br>**plaza** 2:4<br>**point** 7:18 8:23<br>  25:4<br>**police** 23:15<br>**population** 5:12<br>**potter** 2:8<br>**prepared** 26:19<br>**pretty** 23:6<br>**prison** 9:20 12:9<br>  20:11 23:2 | 19:10,12 20:6<br>  20:21 21:13,22<br>  22:2,19,22 23:4<br>**procedure** 3:6<br>  3:16,22<br>**program** 4:19<br>**promise** 15:22<br>**pronouncing**<br>  4:12<br>**protection**<br>  18:23<br>**protections**<br>  18:21<br>**provided** 3:15<br>  3:21<br>**public** 9:20<br>**pull** 4:18<br>**pulled** 4:21<br>**purpose** 3:15<br>**pursuant** 1:16<br>  3:5<br>**put** 12:2 20:13<br>  20:23<br>**putting** 20:1<br>**q**<br>**question** 8:22<br>  11:1 12:18,19<br>  13:1<br>**questioned** 16:7<br>**questions** 3:10<br>  3:11 7:8 9:1 |

11:5,11,13 12:8
12:18 16:18
19:20 20:2

**r**

**rdp** 1:7
**read** 13:7
**ready** 11:7,19
  24:11
**real** 23:18
**realize** 14:23
**really** 16:16
  23:17
**reask** 13:3
**reason** 22:8
**recess** 11:16
  24:19
**recognize** 13:17
  14:1,18 24:8
**record** 7:1 8:12
  17:15 24:16,21
**reflect** 24:16
**regulate** 20:18
**rephrase** 9:2
**reported** 26:7
**reporter** 3:7
  6:13 11:20 26:5
**reporter's** 26:1
**represent** 4:9
**representing**
  3:3,18
**reschedule** 24:3
**reserved** 3:13
**results** 26:18
**return** 25:1

**returned** 24:21
  25:4
**right** 4:13 5:5
  7:13,16 9:8 19:2
  20:6,22,23
  21:19,23 22:7
  22:18 23:2,9,16
**rights** 18:16
**rosenberg** 2:3
  17:15
**rounded** 8:7
**rule** 6:19
**rules** 3:5,16,22
  6:11
**ruling** 3:13

**s**

**says** 14:21
**schedule** 5:19
**second** 6:19
  17:6
**see** 11:9 14:20
  24:1
**seek** 25:1
**seem** 12:5
**seen** 23:3
**seg** 5:13 17:8,10
  22:4
**segregation**
  17:5,7,9,14 18:1
  18:6,13
**set** 17:5 26:13
**seven** 8:1,11
**side** 2:10
**signature** 26:20

**sir** 4:16,20 5:2
  5:11,16 6:1,4,6
  6:9,22,22 8:21
  9:16 10:13,16
  10:22 12:23
  13:5,9,19 14:2
  14:12,16,22
  15:2,5,10,16,20
  16:1,4 17:3,8,12
  17:23 18:3,12
  19:7,23 20:4,7
  21:4 22:10,12
  22:15
**sit** 24:12,14
**sitting** 9:4
**snow** 2:9
**solver** 19:10,13
  20:6
**somebody** 19:8
**sorry** 5:8 6:19
  8:4 13:23 14:5,7
**speak** 4:3 26:9
**square** 2:10
**st** 4:11 5:18,20
  15:12 16:18
  17:2,17,21,23
  21:2,5 22:16
**stab** 19:4
**stabbed** 22:5
  23:11
**stabbing** 19:3
**stand** 10:2
**state** 1:18 3:8
  4:10 26:2,5,22

**states** 1:1
**stayed** 25:5,6
**stipulated** 3:2
  3:17
**stipulation** 1:16
**stipulations** 3:1
**straight** 17:11
**street** 2:15
**strother** 1:12
  2:18 3:4 4:1,8
  4:14,15 14:11
  19:11 24:12,16
  24:21 26:8
**strothers** 11:21
**stuff** 13:11
**subpoena** 2:22
  13:21 24:8
**substance** 16:22
**sued** 6:2,5
**suite** 2:10
**supposed** 19:5
**sure** 6:11 7:14
  10:2 11:15
  12:19,21 13:10
  14:14 16:13
  19:19,19,21,21
  19:21 23:6
**swaine** 2:3
**sworn** 4:3 26:8

**t**

**take** 7:19,22
  8:14 10:5 11:14
**taken** 1:13,16
  3:5,7 11:16
  24:19

| | | | |
|---|---|---|---|
| **talk** 15:8 20:15 23:23 | **tj** 21:18 | 9:17,23 11:8 13:2,11 14:7 16:12,15,16 | **wise** 19:14,16 |
| **talking** 11:6 12:14,15 14:15 23:15,17 24:10 | **today** 7:7,12,17 8:12,23 9:18 10:6,11,18 12:1 12:8,17 16:18 17:5,7 | **understanding** 16:10 | **witness** 2:12 4:2 6:18 10:19 11:9 11:17 14:19 17:19 18:17 19:1 26:13 |
| **taught** 10:1 | **today's** 10:7 | **understood** 7:15 13:4 | **worldwide** 2:4 |
| **tell** 7:7,19 9:1 12:13 16:12 23:21 | **told** 19:8,17 20:10,13,21 21:12,16 22:3 23:16 | **united** 1:1 | **wrong** 11:22 |
| **telling** 7:11 23:16 | | **used** 3:14,20 | **y** |
| **tells** 8:20 | **took** 21:16,21 | **v** | **y'all** 9:21,22,22 16:8 |
| **ten** 7:20 | **top** 14:20 | **valentines** 18:7 18:14 | **yard** 5:1 8:6 |
| **testified** 4:5 | **transcript** 26:18 | **versus** 14:21 17:17 | **yeah** 7:10 8:11 11:4 17:23 18:22 21:11 |
| **testimony** 17:1 | **transcription** 26:12 | **victim** 19:5,6 | **year** 18:9 |
| **thank** 17:19 18:17 | **trays** 5:21 | **vs** 1:6 | **years** 17:10,11 17:20,22 18:2 |
| **thereof** 26:18 | **trial** 3:20 | **w** | **york** 2:5,5 |
| **think** 5:7,21 11:21 17:17 19:1 | **trick** 12:7 14:14 | **w** 5:7,9,10 | **young** 9:14 |
| | **tried** 20:15 | **walked** 24:16 | |
| **third** 14:4,6,9 14:10 | **true** 26:11 | **want** 7:14 9:17 11:7,8 12:14,21 13:10 14:14 23:17,18,23 24:4,17 | |
| **thomas** 1:12 2:18 3:4 4:1 14:11 19:11 26:8 | **truth** 4:3,4,4 7:8 7:11 26:9 | | |
| | **try** 20:18 24:18 | **wanted** 21:17 | |
| | **trying** 12:6,7 13:7 14:13 16:6 16:20,22 20:23 | **warrior** 1:20 | |
| **three** 17:10,11 17:20,22 18:1 | **turn** 13:22 | **water** 7:21 | |
| | **two** 22:17 23:8 | **way** 20:16 | |
| **time** 3:12,13 5:17,19 6:7 7:23 8:3,5,6,7,15 12:9 16:18 17:16 | **u** | **week** 18:7,14 | |
| | **under** 6:16 7:1 7:4,11 | **went** 7:9 20:9 20:10 22:4 | |
| | **understand** 6:16,23 7:10 8:20 9:1,10,15 | **west** 2:10 | |
| | | **white** 2:13 | |

Alabama Rules of Civil Procedure

Part V. Depositions and Discovery

Rule 30

(e) Submission to witness; changes; signing. When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by the witness, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within thirty (30) days of its submission to the witness, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the

court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

(F) Certification and filing by officer; exhibits; copies; notice of filing.

(1) The officer shall certify on the deposition that the witness was duly sworn by the officer and that the deposition is a true record of the testimony given by the witness. Unless otherwise ordered by the court, the officer shall then securely seal the deposition in an envelope indorsed with the title of the action and marked "Deposition of [here insert name of witness]" and shall promptly file it with the court in which the action is pending or send it by registered or certified mail to the clerk thereof for filing.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.