# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| MARK DUKE, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-001952-RDP |
| ) | |
| JOHN HAMM, et al., ) | |
| ) | |
| Defendants. ) | |

### SPECIAL MASTER REPORT AND RECOMMENDATION
### ON EVIDENTIARY FACT CUTOFF DATE

This Report and Recommendation is respectfully submitted to the Honorable R. David Proctor, United States District Judge, pursuant to the Court's Order dated November 9, 2021 (Doc. 242).

### Proceedings

Plaintiffs and Defendants are at an impasse on the issue of entry of an evidentiary fact cutoff date and have each submitted letter briefs. Plaintiffs submitted a letter brief (attached as Ex. A) on October 13, 2023, and Defendants responded with their brief (attached as Ex. B) on November 3, 2023. Having considered the briefs of the parties, the undersigned makes the following Report and Recommendation to the Court.

### *Plaintiffs' Position*

Plaintiffs request the entry of an evidentiary fact cutoff date, *i.e.*, a date after which any evidence created or otherwise not previously disclosed may not be presented or considered at trial, except for good cause. Plaintiffs requests that the close of discovery date (currently January 31,

2024) should also serve as the fact cutoff date for establishing liability.[1] Plaintiffs argue that such a fact cutoff will allow the Court to ensure that all evidence presented at trial is subject to reasonable discovery, will avoid unfair advantages if Defendants seek to admit last-minute alleged corrective actions, and will avoid delay and the continued reopening of discovery. Plaintiffs point out that a party may still present any potentially relevant evidence after the fact cutoff at a remedy hearing subsequent to trial and any liability finding.

*Defendants' Position*

Defendants assert that a fact cutoff date is inappropriate and contend that this action is materially different from *United States of America v. State of Alabama and Alabama Department of Corrections*, United States District Court for the Northern District of Alabama, Civil Action No. 2:20-cv-01971 ("*United States v. Alabama*"), in which an evidentiary fact cutoff date was imposed. Defendants argue that (1) *United States v. Alabama* was brought by the Department of Justice in its law enforcement capacity against fourteen facilities, whereas this litigation concerns only St. Clair Correctional Facility ("St. Clair") and is brought by Named Plaintiffs on behalf of a putative class, and (2) the Named Plaintiffs still reside at St. Clair and, therefore, can "easily observe and evaluate the changes at St. Clair up to and through trial." In addition, Defendants maintain their position that imposing an evidentiary fact cutoff date conflicts with the PLRA as relief under the PLRA can only address "current and ongoing constitutional violations."

---

[1] Plaintiffs request the evidentiary fact cutoff date be the same date as "the discovery deadline imposed in the Amended Scheduling Order (Doc. 343)[.]" The Scheduling Order has since been amended. The January 12, 2024 Amended Scheduling Order (Doc. 371) closes fact discovery on January 31, 2024.

*Analysis*

For the reasons set forth below, it is **respectfully recommended** that this Court enter a fact cutoff deadline of January 31, 2024 (simultaneous with the fact discovery deadline) for dispositive motions, with an exception for good cause shown, and enter a trial evidentiary cutoff deadline of April 26, 2024 (simultaneous with the expert discovery deadline) and order that any evidence created after that date, or otherwise not disclosed before the expert discovery deadline, may not be presented or considered at trial, except for good cause shown.

I. *A Fact Cutoff is Necessary and Appropriate to Ensure Fairness and Finality.*

As both Plaintiffs and Defendants identify, the undersigned and this Court previously considered an evidentiary fact cutoff deadline in *United States v. Alabama*, No. 2:20-cv-01971, (Docs. 85, 93). As discussed therein, it is within the sound discretion of this Court to enter a scheduling order containing a deadline for which all relevant facts must be determined. Courts maintain the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *accord Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Federal Rule of Civil Procedure 16(b)(3) explicitly authorizes a court's scheduling order to modify the timing and extent of discovery. FED. R. CIV P. 16(b)(3). Courts may also "consider and take appropriate action on . . . adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," as well as to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action." FED. R. CIV P. 16(c)(2).

As previously identified and discussed by the undersigned, courts have established evidentiary fact cutoff dates in civil rights cases alleging systemic violations. *See* No. 2:20-cv-

3

01971, (Doc. 85). Plaintiffs largely argue that the undersigned, for the same reasons contained in the Report and Recommendation in *United States v. Alabama*, should recommend an evidentiary fact cutoff deadline in this matter. In response, Defendants argue that the differences between *United States* and this instant case militate against imposing an evidentiary fact cutoff. Defendants argue the procedural posture disfavors a deadline because Plaintiffs failed to ask for an evidentiary fact cutoff at the outset of the case and instead "waited nearly a decade into this action to seek an evidentiary cut-off and months after re-opening of discovery" whereas the Department of Justice maintained its request since the inception of the *United States* case. In addition, Defendants contend that entry of an evidentiary fact cutoff deadline would "work[] against judicial economy" as it would allow Plaintiffs to litigate "resolved issues or issues undergoing change."

First, the undersigned finds the same rationale set out in the Report and Recommendation in *United States v. Alabama* applies with equal force in this case. The imposition of an evidentiary fact cutoff date is necessary for the orderly presentation of evidence, efficient management of trial, and to further judicial economy and fairness to the parties. *See Brown,* 563 U.S. at 523 ("Orderly trial management may require discovery deadlines and a clean distinction between litigation of the merits and the remedy."); *Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2022 WL 17485561, at *5 (M.D. La. Dec. 7, 2022) (discussing its imposition of an evidentiary cutoff and noting that courts have wide discretion to manage discovery even in "prison cases involving injunctive relief for continuing constitutional violations."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11cv01846-LHK, 2013 WL 5737310, at *2 (N.D. Cal. Oct. 22, 2013) (holding evidentiary cutoff was "in the interest of fairness to the parties and in light of the need to make efficient use of the Court's limited resources" and exclusion of evidence after cutoff was "necessary to the efficient management of this trial and is in the interests of justice"); *Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 30 n.4 (D.

Mass. 2006) (imposing fact cutoff with exception for good cause as "obviously necessary" to prevent prejudice to plaintiffs and pointing out that evidence after cutoff date could be considered for determining an appropriate remedy); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986) (finding district court acted within its discretion imposing cutoff date in class action litigation alleging violations of securities laws where post-cutoff evidence would only lengthen the trial and confuse the jury).

Second, the undersigned is not convinced that the differences between this case and *United States v. Alabama* render an evidentiary fact cutoff deadline inapplicable in this case. On the contrary, the undersigned finds the facts of this case support the application of an evidentiary fact cutoff date. This matter has been ongoing for nearly a decade with seemingly no end in sight—the complaint has been amended four times and the matter stayed for years. The case was first stayed in October 2016 for mediation. (Doc. 154) This stay was extended for an additional ninety days on April 25, 2017 (Doc. 166) and thereafter extended until August 30, 2017 (Docs. 174, 175). Subsequently, the case was administratively closed at the request of the Parties until August 1, 2020 due to a private settlement agreement. (Docs. 180, 181, 185, 186)  The Parties then moved for an extension of the stay until January 1, 2021 "in order to permit the parties to continue their efforts to resolve this action." (Doc. 194 at 1) The motion was granted and the stay was extended until January 1, 2021 (Doc. 195) and then again until January 31, 2021 (Doc. 197) and then, upon further joint motion, again extended until April 14, 2021 (Doc. 201). The case was finally reinstated on April 15, 2021. (Doc. 202) The Parties have purportedly been seeking to resolve this case, out of court, for over four years during the stays and administrative closure. Thus, the undersigned does not find Plaintiffs' request for a fact cutoff deadline at this time to be unwarranted. The Parties have been working together for years to resolve the alleged constitutional

5

violations to no avail—at some point, the issues must be tried. The Court has "discretion to establish its discovery deadlines to promote the progression of trial." *Tellis v. LeBlanc*, No. CV 18-541, 2023 WL 6985678, at *1 (W.D. La. Oct. 23, 2023) (citing *Plata*, 563 U.S. at 523).

Defendants are also concerned that their efforts to resolve issues will create a moot and justiciable issue as the Court will find liability due to a "stale violation." Defendants have failed to support their concern with any basis in the record.[2] This case, as discussed, has been ongoing for nearly a decade with the Parties attempting to resolve the alleged issues for more than four years outside the confines of the courtroom. While the undersigned appreciates that the conditions of confinement within State facilities are continually changing and the State fears its efforts "on staffing, the results of those efforts, and the operational fruits that flow from those efforts will not be tried," this litigation will never end if there are constantly changing goalposts. Even if the State makes material changes to its staffing over the six-month interlude between the trial evidentiary cutoff date and trial, there will be continued legal arguments and expert opinions on whether those changes remedy the alleged constitutional violations, whether the changes themselves present or create constitutional violations and by the time those questions were explored and briefed to the Court, Defendants could argue there are new changes. This recursive process could continue for years with Parties continually seeking to reset trial. Thus, judicial economy is best served by implementing an evidentiary cutoff date.

Defendants also contend that the Named Plaintiffs in this action can easily observe and evaluate changes at St. Clair up to and through trial and, therefore, the risk of a "trial by ambush"

---

[2] Defendants have offered no support for their contention that Plaintiffs' evidence will be "stale." For example, Defendants do not describe what efforts, policy changes, or other items that they are undertaking that would render moot any of Plaintiffs' claims. Moreover, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 727, 184 L. Ed. 2d 553 (2013).

is mitigated. While the Named Plaintiffs may witness acts of prisoner-on-prisoner violence, see contraband, or otherwise observe changes to locks or the physical conditions of confinement, this would represent only a sliver of potential actions taken (or, in the case of continued allegations of constitutionally deficient conduct, not taken). Nor would the Named Plaintiffs be privy to any policy changes or new policies adopted. For example, even if Defendants hired more personnel *and* presupposing the Named Plaintiffs saw and understood the new staff to be additional staff to increase staffing ratios (rather than new staff replacing those who quit or were fired), it is unlikely the Named Plaintiffs would know the qualifications of those hired, the total number of new hires, the training received, etc. Accordingly, the undersigned is not persuaded that the presence of the Named Plaintiffs in St. Clair renders the imposition of an evidentiary cutoff date inapplicable.

    II.    *The Burden of not Using a Fact Cutoff Date is Greater on Plaintiffs than the Burden Experienced by Defendants if a Fact Cutoff Date is Implemented.*

The undersigned recognizes that each side may suffer some prejudice depending on whether a fact cutoff date is implemented. But the purpose of a pretrial scheduling order as a procedural tool is to ensure the economical and efficient trial of every case on its merits without chance or surprise. *Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir. 1980), *cert. denied*, 450 U.S. 918. Balancing the equities here reveals that the prejudice to Plaintiffs without the use of a fact cutoff date is more severe than the prejudice to Defendants.

While there will be some period of months between the fact cutoff and the trial in this matter, having a fact cutoff date allows the parties to complete discovery and to present witnesses at trial based on the facts in existence on a given date. And using a trial fact cutoff date (April 26, 2024) provides appropriate incentives for Defendants to take prompt action if they truly intend to remedy problems, rather than attempting to secure tactical advantages on the eve of trial. Although

a fact cutoff may mean the trial could involve some dated evidence, it also provides the Court and the parties with an efficient, fair, and reliable approach to assessing liability. It also is worth noting that a fact cutoff date will apply equally to Plaintiffs and limit their ability to use incidents of harm or other evidence occurring after the date.

Defendants contend that entry of an evidentiary cutoff "works against judicial economy in that it permits Plaintiffs to knowingly litigate resolved issues or issues undergoing change." However, this recommendation does not leave Defendants without some safeguards to address their concerns of liability being rendered on a "stale" violation. Defendants may move the Court for leave to present post-cutoff evidence "for good cause shown" and could even, in the extraordinary circumstance that post-trial conduct arises that resolves the alleged constitutional violation(s), seek leave to present or submit post-trial evidence or briefs.[3] Thus, the entry of a fact cutoff deadline does not prevent Defendants from seeking to submit evidence of changed circumstances where good cause is shown. Certainly, evidence that Defendants had—over the course of the intervening months before trial—remedied the alleged constitutional violations would be welcome news to the Court (and surely the incarcerated Named Plaintiffs) in this decade old action. On the other hand, the prejudice to Plaintiffs if there is no fact cutoff date is more severe than any prejudice to Defendants.

The undersigned finds the rationale set forth in the Report and Recommendation in *United States v. Alabama*, United States District Court for the Northern District of Alabama, Civil Action No. 2:20-cv-01971, (Doc. 85), to be persuasive and equally applicable to the facts of this case.

---

[3] Nothing in this Report and Recommendation should be taken as a guarantee or prediction of what the Court may do.

III.     **The PLRA Does Not Prevent Entry of a Fact Cutoff Date.**

Defendants' primary argument against a fact cutoff date is centered around the Prison Litigation Reform Act, 18 U.S.C. § 3626. Defendants argue that there may no longer be a "current and ongoing" violation at the time of trial, which could result in this Court basing liability on a stale violation. In addition, Defendants take issue with the undersigned's analysis and application of *Thomas* in *United States v. Alabama*, United States District Court for the Northern District of Alabama, Civil Action No. 2:20-cv-01971, (Doc. 85). The undersigned has reviewed the Report and Recommendation and Defendants' letter brief and finds Defendants' objections to be without merit. The undersigned hereby incorporates by reference his reasoning in the Report and Recommendation in *United States v. Alabama*, United States District Court for the Northern District of Alabama, Civil Action No. 2:20-cv-01971, (Doc. 85).

Moreover, the undersigned finds Defendants' interpretation of *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200 (11th Cir. 2021), *vacated*, 33 F.4th 1325 (11th Cir. 2022), unconvincing. *Jackson*, which was indeed vacated, did not even address an evidentiary fact cutoff deadline or set out law that would bar the entry of such. Instead, the focus of *Jackson* was whether a permanent injunction must be entered to prevent the expiration by operation of law of a preliminary injunction issued under the PLRA. The *Jackson* Court answered that question in the affirmative. *Jackson*, 4 F.4th at 1211. The Eleventh Circuit found that 18 U.S.C. § 3626(a)(2) contemplates two separate proceedings—the district court must make an initial set of need-narrowness-intrusiveness findings after a hearing to impose the preliminary injunction and then must make a second set of findings before imposing a permanent injunction. *Id.* at 1213-14; 15. Indeed, *Jackson* reiterated, in line with *Thomas*, that the district court's analysis at the entry of an injunction stage is the need-narrowness-intrusiveness analysis—not the "current and ongoing" analysis. *Jackson*, 4 F.4th at 1207 ("Second,

it provides that preliminary injunctive relief must meet the need-narrowness-intrusiveness requirements."), 1215 (finding that a court must make need-narrowness-intrusiveness findings when it converts a preliminary injunction into a permanent injunction).

Contrary to Defendants' assertion, the Eleventh Circuit did *not* find "the PLRA prevented a district court from relying on a finding of a constitutional violation in a preliminary injunction when it made that injunction final 90 days later." The Eleventh Circuit actually found that the appeal was moot because the preliminary injunction had expired by operation of law where the district court entered the preliminary injunction and did not make the second need-narrowness-intrusiveness findings to make the injunction permanent. While the *Jackson* Court noted that the second inquiry must be made separately, there is no prohibition on relying on earlier evidence in conducting the second need-narrowness-intrusiveness inquiry:

> [T]he court must make a second set of findings before converting the preliminary injunction into a permanent injunction. This is consistent with the model contemplated by the Federal Rules of Civil Procedure, which require separate findings for the issuance of preliminary and permanent injunctions. *See* Fed. R. Civ. P. Rule 52(a)(1)&(2). Because circumstances may change during the 90-day period in which the preliminary injunction is in place, this requirement furthers the PLRA's goal of eliminating unnecessary and overbroad prison injunctions.

*Jackson*, 4 F.4th at 1213–14. Thus, "a court must make need-narrowness-intrusiveness findings when it converts a preliminary injunction into a permanent injunction, even if it already made those findings when issuing the preliminary injunction initially." *Id.* at 1215. Earlier in the opinion, the Eleventh Circuit explored some of the avenues available to litigants *after* a district court enters a preliminary injunction:

> To see what we mean, consider the possible outcomes after a district court issues a 90-day preliminary injunction. One possibility is that the defendant reforms its practices to comply with the terms of the injunction within the 90 days. In this situation, a district court should ask whether the defendant's reforms "have

10

> completely and irrevocably eradicated the effects of the alleged violations," *Thomas v. Bryant*, 614 F.3d 1288, 1321 (11th Cir. 2010) . . . If the district court is satisfied that the defendant's reforms are in earnest and sufficiently enduring, it should ordinarily let the preliminary injunction expire on the 90th day and dismiss the case, since a permanent injunction would no longer be "necessary to correct the violation of the Federal right." § 3626(a)(1)(A). . . .
>
> If, on the other hand, the defendant fails to implement reforms or implements half-baked or impermanent reforms, the district court should proceed to a trial on the merits, determine whether a permanent injunction can be issued consistent with § 3626(a)(1)'s requirements, and if so, make the findings required by that section and enter a permanent injunction as part of a final judgment—or in the words of the PLRA, "make[ ] the order final." § 3626(a)(2).

*Id.* at 1210. Thus, while a district court reviews the evidence, including any remediations made by a defendant, in the second need-narrowness-intrusiveness inquiry prior to entry of a permanent injunction, this also necessarily entails reviewing the prior evidence of the violations.[4]

Defendants also cite to two cases from the United States Court of Appeals for the Fifth Circuit, *Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021) and *Dockery v. Cain*, 7. F.4th 375 (5th Cir. 2021). *Valentine* and *Dockery* are distinguishable from this action. In *Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2022 WL 17485561, at *3 (M.D. La. Dec. 7, 2022), the district court, in imposing an evidentiary fact cutoff date for the remedy portion of its bifurcated trial, noted that *Valentine* was distinguishable from its facts as *Valentine* "was entirely within the context of the prison's response to ever-changing health guidelines, CDC regulations, and recommendations in response to the novel COVID-19 pandemic sweeping through the country." However, in view of the trial court's wide discretion to manage discovery, the *Lewis* court ultimately found it could set

---

[4] In *Melendez v. Sec'y, Fla. Dep't of Corr.*, No. 21-13455, 2022 WL 1124753, at *11, 19 (11th Cir. Apr. 15, 2022), the Eleventh Circuit, in an unpublished opinion, found that a district court did not err in its conclusion in entering a second preliminary injunction nor in its findings of fact. The district court relied on and "expressly incorporated the reasoning of the first injunction" in issuing the second preliminary injunction. *Id.*

11

boundaries on discovery. *Id.* at *4. Here, as discussed above, the Parties have been litigating these issues for nearly a decade. The Parties have had ample opportunity to resolve the disputes and Defendants have had years to institute remedies. The Eleventh Circuit has stated that the PLRA is designed to "expedit[e] prison litigation and end[] judicial micromanagement of prison systems." *Jackson*, 4 F. 4th at 1211. The evidence being submitted can and, likely will, be as recent as early 2024 for a trial that same year. The undersigned is not convinced that this length of time is so great as to result in a liability finding on a "stale" violation. To the extent that such a change occurs, the Parties may seek leave from the Court to submit such evidence for good cause.

In *Dockery*, the Fifth Circuit consistently emphasized the wide discretion given to courts in *Farmer*. *Farmer* provided as follows:

> In a suit such as petitioner's, insofar as it seeks injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct," *Helling, supra*, at 36, 113 S. Ct., at 2482; their attitudes and conduct at the time suit is brought and persisting thereafter. An inmate seeking an injunction on the ground that there is "a contemporary violation of a nature likely to continue," *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 695, 96 L. Ed. 978 (1952), must adequately plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. In so doing, the inmate may rely, **in the district court's discretion**, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction.[9] . . . [FN9] At the same time, even prison officials who had a subjectively culpable state of mind when the lawsuit was filed could prevent issuance of an injunction by proving, during the litigation, that they were no longer unreasonably disregarding an

12

> objectively intolerable risk of harm and that they would not revert to their obduracy upon cessation of the litigation. . . .
>
> Of course, a district court should approach issuance of injunctive orders with the usual caution, *see Bell v. Wolfish*, *supra*, 441 U.S., at 562, 99 S. Ct., at 1886 (warning courts against becoming "enmeshed in the minutiae of prison operations"), and **may, for example, exercise its discretion if appropriate** by giving prison officials time to rectify the situation before issuing an injunction.

511 U.S. 825, 845–47 (1994) (emphasis added in bold). *Farmer* provides that a district court *may*, in its discretion, allow parties to rely on evidence that postdates pleadings and pretrial motions in determining whether an injunction is warranted and *may* even allow defendants time to correct the alleged violations before issuing the injunction. The *Dockery* court affirmed the trial court because it "correctly applied these instructions from *Farmer*" where "[i]t exercised its discretion to 'giv[e] prison officials time to rectify' possible violations and then relied on 'developments that postdate[d] the pleadings and pretrial motions' to find Plaintiffs were 'not entitled to an injunction.'" *Dockery*, 7 F.4th at 379. The *Dockery* court went on to reject the plaintiffs' arguments insisting that a court must make risk-of-recurrent findings before declining to issue an injunction because such a reading would "swallow the broad discretion given district courts elsewhere in the opinion," and that the footnote "merely sketches one way to resolve an injunction suit, not the only way." *Id.* at 380. *Dockery* simply represents a court choosing to exercise the discretion granted to it in *Farmer*.

In sum, the undersigned is still not persuaded that the PLRA bars the implementation of an evidentiary fact cutoff date. The Court may use its sound discretion in managing its affairs in accordance with the Federal Rules and may impose a fact cutoff date in order to ensure fairness and finality, while promoting efficiency and preserving limited judicial resources. In the instant

matter, a fact cutoff will provide the Court with evidence subject to adversarial discovery and alleviate the potential need to continuously reopen discovery to test the evidence.

## RECOMMENDATION

IT THEREFORE IS RESPECTFULLY RECOMMENDED that this Court enter a provision in the Scheduling Order containing an evidentiary fact cutoff date of January 31, 2024 (simultaneous with the fact discovery deadline) for dispositive motions, with an exception for good cause shown, and enter a trial evidentiary cutoff deadline of April 26, 2024 (simultaneous with the expert discovery deadline) and order that any evidence created after that date, or otherwise not disclosed before the expert discovery deadline, may not be presented or considered at trial, except for good cause shown.

Pursuant to Section 4(a) of this Court's November 9, 2021 Order (Doc. 242), objections to this Report and Recommendation are due seven days after the issuance of the Report and Recommendation. Briefs in support of the Report and Recommendation are due seven days after the objection. Replies are due five days after the brief in support.

Respectfully recommended on January 24th, 2024.

*/s/ R. Bruce Barze, Jr.*
Special Master

R. Bruce Barze, Jr.
BARZE TAYLOR NOLES LOWTHER LLC
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
(205) 872-1015
bbarze@btnllaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of January, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

*/s/ R. Bruce Barze, Jr.*
Special Master