IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MARK DUKE, et al.,

                Plaintiffs;

    v.

JOHN HAMM, et al.,

                Defendants.

Civil No. 4:14-cv-01952-RDP

**STATEMENT OF INTEREST OF THE UNITED STATES**

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES ................................................................................... 1
BACKGROUND .............................................................................................................................. 2
DISCUSSION .................................................................................................................................... 3
I.   Prisons with high levels of violence and terror pose a substantial risk of serious harm to prisoners. ................................................................................................................................. 4
II.  The Eighth Amendment requires Defendants' objectively reasonable response to known risks of harm. ........................................................................................................................... 7
CONCLUSION ................................................................................................................................ 15

**INTEREST OF THE UNITED STATES**

Prison officials are not free to let violence run rampant—assault and abuse are not part of the penalty prisoners pay for their crimes. The Eighth Amendment requires basic decency in prohibiting cruel and unusual punishment. Plaintiffs allege disturbing conditions at St. Clair Correctional Facility ("St. Clair"), including pervasive violence, sexual abuse, and use of excessive force by correctional officers. They also allege Defendants have disregarded measures that could mitigate these harms. Defendants argue that because they have made some efforts, there is no valid constitutional claim before this Court, even as they acknowledge that their efforts have been insufficient to address the pervasive serious harm. But the Constitution holds Defendants accountable for maintaining basic standards of decency, including providing a reasonably safe environment for the men in their custody at St. Clair. Knowingly inadequate measures do not satisfy this obligation.

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case addresses important principles regarding the constitutional requirement that prisons protect prisoners from a substantial risk of serious harm.

Congress has explicitly vested the Attorney General with authority to enforce the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 *et seq.*, to address unconstitutional conditions of confinement in state and local correctional facilities. Under this authority, the United States has undertaken numerous investigations and cases across the country regarding conditions of confinement, including litigation pending before this Court against the Alabama Department of Corrections ("ADOC") and State of Alabama over conditions in 13

1

men's prisons, including the facility at issue in this case.[1] *See United States v. State of Alabama*, No. 2:20-cv-01971-RDP (N.D. Ala.).

The United States has a substantial interest in protecting the constitutional rights of all people, including prisoners, and ensuring the proper application of the legal standards grounded in the Eighth Amendment. The United States expresses no view on any factual disputes before the Court, nor on any legal questions other than those discussed below.[2]

### BACKGROUND

Plaintiffs, a group of men incarcerated or formerly incarcerated in Alabama,[3] allege Defendants, certain ADOC officials, fail to protect prisoners in St. Clair from violence, sexual abuse, and use of excessive force in violation of the Eighth Amendment. Fourth Amended and Supplemental Complaint (Doc. 268). Defendants move for summary judgment, arguing there is no genuine dispute as to any material fact on Plaintiffs' claims. ADOC Officials' Motion for Summary Judgment ("Defendants' Motion") (Doc. 448).[4]

Plaintiffs allege that prisoner-on-prisoner violence and sexual assault are commonplace at St. Clair. Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Plaintiffs' Motion") (Doc. 457, p. 5). They allege frequent violent incidents, including attacks with weapons and ones resulting in outside hospitalization. *Id.* at 5–6. They

---

[1] The United States notes Defendants' admission that the United States' CRIPA action is a proper avenue for addressing claims that ADOC fails to protect prisoners from harm. ADOC Officials' Motion for Summary Judgment (Doc. 448, p. 44).
[2] The United States does not address all of Defendants' arguments, as several relate specifically to Plaintiffs' status as a potential class. *See* ADOC Officials' Motion for Summary Judgment (Doc. 448, pp. 31–33, 41–44).
[3] Plaintiffs have moved the Court to certify a class of persons who are now, or will be, incarcerated at St. Clair. Plaintiffs' Motion for Class Certification (Doc. 417).
[4] Defendants also argue that the *Braggs* class action against ADOC precludes Plaintiffs from seeking relief related to correctional staffing here. Defendants' Motion (Doc. 448, pp. 44–45). As Defendants acknowledge, the Court has already rejected this argument in both this case (Doc. 261, p. 3), and the United States' case against ADOC, *United States v. Alabama*, No. 2:20-cv-1971 (N.D. Ala.) (Doc. 57, pp. 5–7). The Court has correctly determined that both cases seek relief that is different from that sought in *Braggs*. The Court should, again, reject Defendants' argument.

allege sexual assaults occur across St. Clair, in every cell block and common area, routinely at knifepoint or by multiple assailants. *Id.* at 6–7. They also allege that St. Clair correctional officers regularly use excessive force, teaming up on a single prisoner, attacking prisoners who are already restrained, and using chemical spray on prisoners who do not pose a threat. *Id.* at 12–13. Plaintiffs allege Defendants know how to make St. Clair safer. *Id.* at 2, 13–15. But Plaintiffs contend that violence is pervasive at St. Clair because Defendants will not change dangerous and harmful practices such as: allowing prisoners to move around St. Clair without authorization; failing to repair various security tools; providing inadequate training; assigning prisoners to housing areas without appropriate risk screening; using ineffective search practices; failing to implement an effective staffing plan; and conducting inadequate investigations. *Id.* at 1, 7–15.

If there is a genuine dispute of fact as to Plaintiffs' allegations, then summary judgment for Defendants is inappropriate, as these allegations, if proven, establish Eighth Amendment violations. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–55 (1986).

## DISCUSSION

The Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Under the Eighth Amendment, prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). This includes a duty to protect prisoners from excessive force by correctional officers and violence by other prisoners. *Id.* at 832–33. Prison officials violate the Eighth Amendment when

3

they are deliberately indifferent to a substantial risk of serious harm to the prisoners in their custody. *Id.* at 828.

Here, Plaintiffs have alleged facts that show both a substantial risk of serious harm to prisoners at St. Clair and Defendants' deliberate indifference to that risk.

## I. Prisons with high levels of violence and terror pose a substantial risk of serious harm to prisoners.

The Supreme Court has long held that prison officials have a duty to protect prisoners from harm, whether from other prisoners or correctional staff. *Farmer*, 511 U.S. at 832-833. "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Regardless of whether prisoners have contributed to such violence, prison officials "are not free to let the state of nature take its course" and "gratuitously allow[] the beating or rape of one prisoner by another." *Id.* at 833; *see also Hudson*, 468 U.S. at 526–27 ("Within this volatile 'community,' prison administrators . . . are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."). Rather, "the protection [a prisoner] is afforded against other inmates" is a condition of confinement that is subject to the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Prison conditions that expose prisoners to a substantial risk of serious harm deny "'the minimal civilized measure of life's necessities,'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S. at 347), in violation of the Eighth Amendment.

In analyzing whether allegedly violent conditions present a substantial risk of serious harm, courts in the Eleventh Circuit look to evidence that prisoners are subject to an "unjustified constant and unreasonable exposure to violence." *LaMarca v. Turner*, 995 F.2d 1526, 1535

4

(11th Cir. 1993). Courts distinguish cases involving "occasional, isolated attacks by one prisoner on another," from those where "violence and terror reign." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Purcell v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005)). Alongside examining the number of violent incidents, courts assess whether there are specific features or conditions at the facility that make it particularly violent, which can include "pervasive staffing and logistical issues rendering prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Id.* at 1235.

Eleventh Circuit cases illustrate this approach for determining a substantial risk of harm. In *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995),[5] the Eleventh Circuit held that a reasonable jury could find an unconstitutional risk of harm where overcrowding perpetuated regular prisoner-on-prisoner violence "severe enough to require medical attention and even hospitalization on occasion." *Id.* at 1583. Similarly, the Eleventh Circuit in *Cotton v. Cooper*, No. 22-12927, 2024 WL 340033 (11th Cir. Jan. 30, 2024), held that a reasonable jury could find an "excessive risk of prisoner-on-prisoner violence" where the plaintiff personally "witnessed multiple incidents of beatings, stabbings, and rape," and the facility's "violent and unsafe conditions" were enabled by understaffing, overcrowding, widespread access to weapons, and inadequate supervision. *Id.* at *2 (reversing summary judgment to the defendants when the plaintiff described ADOC's Ventress Correctional Facility as an "environment where the strong preyed on the weak with impunity, leaving him 'in fear of [his] life every day'"); *see also Lane*

---

[5] While this case involved a pretrial detainee, the Eleventh Circuit evaluated his claims under the Eighth Amendment.  *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 & n.4 (11th Cir. 1995).

*v. Philbin*, 835 F.3d 1302, 1307–08 (11th Cir. 2016) (reversing dismissal of a complaint where allegations of beatings, high gang participation, widespread possession of weapons, and understaffing at a Georgia state prison permitted the reasonable inference that "violence and terror were the norm"); *Boykins v. Dunn*, --- F. Supp. 3d ----, No. 4:19-cv-01934, 2023 WL 6379601, at *14–15 (N.D. Ala. Sept. 30, 2023) (denying summary judgment where "[i]nmate-made weapons and other contraband like cellphones permeate St. Clair" and "[t]he frequency and severity of violence is staggering").

Here, too, Plaintiffs allege frequent prisoner-on-prisoner violence, sexual abuse, and use of excessive force by correctional officers at St. Clair, exacerbated by understaffing, faulty security measures, and prisoners' unabated access to drugs and weapons. *See* Plaintiffs' Motion (Doc. 457, p. 5–13). Defendants nevertheless claim that the level of violence at St. Clair "falls within an expected range for a maximum-security facility," and cite testimony asserting that "eliminating inmate violence in prison represents an impossible task." Defendants' Motion (Doc. 448, p. 6). The Eighth Amendment does not require prison officials to eliminate every instance of harm within a facility, but Defendants cannot self-select a constitutionally permissible level of violence by positing a supposed "expected range" of violent incidents. In fact, the Eleventh Circuit has declined to set a "proverbial 'floor'" as to how many violent incidents or deficient conditions establish an unconstitutional risk of harm. *Purcell*, 400 F.3d at 1323. Rather, the court has deemed the risk of harm to prisoners substantial when violent incidents are prevalent and when specific conditions make the facility particularly violent. *See Marbury*, 936 F.3d at 1234–35. Plaintiffs here allege that St. Clair prisoners face significant risk of serious harm because of frequent incidents of violence and ADOC's failure to remedy known deficiencies in security and supervision.

## II. The Eighth Amendment requires Defendants' objectively reasonable response to known risks of harm.

The Constitution forbids Defendants from being deliberately indifferent to a substantial risk of harm to prisoners in their custody.  *See Farmer*, 511 U.S. at 834.  Prison officials are deliberately indifferent when they "know[] of and disregard[] an excessive risk to inmate health or safety."  *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting *Farmer*, 511 U.S. at 837).  The standard entails more than negligence but does not require a showing that "a prison official acted or failed to act believing that harm actually would befall an inmate."  *Id.* at 842.  As explained in *Farmer*, deliberate indifference means the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  511 U.S. at 847.   In other words, the test "more simply stated, [is] whether they 'recklessly disregard[ed]'" the risk.  *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 836).

The Eleventh Circuit has further articulated this standard as requiring "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  Some Eleventh Circuit panels have indicated that conduct needs to amount to more than "gross negligence" instead of "mere negligence" in the third part of this test.  *See Wade v. McDade*, 67 F.4th 1363, 1371–74 (11th Cir. 2023), *vacated*, 83 F.4th 1332 (11th Cir. 2023).  The *en banc* Eleventh Circuit currently is considering a case involving allegations of deliberate indifference to prisoners' medical needs that may resolve this inconsistency but has not yet issued a decision.[6]

---

[6] Because *Wade* concerns allegations of failure-to-treat, it is not apparent that the standard ultimately articulated by the *Wade* court would apply to failure-to-protect cases like this one.  In failure-to-protect cases, the Eleventh Circuit and this Court generally have applied the standard as originally laid out in *Farmer*. *See, e.g.*, *Cox*, 15 F.4th at 1358;

7

*Wade v. McDade*, 83 F.4th 1332 (11th Cir. 2023). *Wade* should not affect this case, however, because Plaintiffs' allegations that Defendants knowingly disregarded a substantial risk of harm to prisoners at St. Clair, if true, would satisfy the standard for deliberate indifference whether it is "more than gross negligence" or "more than mere negligence." Plaintiffs' Motion (Doc. 457, pp. 13–15); *see Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1321, 1324 (11th Cir. 2016) (explaining allegations that prison officials knew about the substantial risk "are not assertions of mere or even gross negligence").

Deliberate indifference has a subjective and objective component. *Cox*, 15 F.4th at 1358. The subjective component is that "the defendant actually (subjectively) knew that [the prisoner] faced a substantial risk of serious harm." *Id.* (alteration in original) (quoting *Mosley*, 966 F.3d at 1270). The objective component is that "the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (quoting *Mosley*, 966 F.3d at 1270).

Defendants do not dispute the subjective component here. They knew that the prisoners faced a serious risk of harm. Instead, Defendants focus on the objective component—whether their response to any risk of harm was reasonable. *See* Defendants' Motion (Doc. 448, p. 18). In making that assessment, the Court should consider Defendants' entire course of conduct in addressing the risk of harm. *See Swain*, 961 F.3d at 1287–88. This includes Defendants' efforts at mitigating the risk, other reasonable efforts that Defendants could have taken but did not, and whether Defendants continued measures they knew would be ineffective at addressing the risk of harm. *See LaMarca,* 995 F.2d at 1537–39.

---

*Mosley v. Zachery*, 966 F.3d 1265, 1270–71 (11th Cir. 2020); *Marbury*, 936 F.3d at 1233; *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Pope v. Dozier*, No. 2:20-cv-01399-RDP, 2023 WL 3956157, at *7 (N.D. Ala. June 12, 2023) (Proctor, J.).

Plaintiffs allege Defendants knew of measures they could have taken and still could take to make St. Clair safer but have stubbornly refused to change their practices despite the ongoing pervasive violence at St. Clair. Plaintiffs' Motion (Doc. 457, pp. 1–2, 7–15). Defendants identify specific actions they claim to have taken, arguing they are not deliberately indifferent "as to correctional staffing" or to areas allegedly identified by Plaintiffs, such as cameras, contraband, and locks. *See* Defendants' Motion (Doc. 448, pp. 12–31). But the relevant question is *not* whether Defendants are deliberately indifferent to any specific action, but rather whether Defendants are deliberately indifferent to a substantial risk of serious harm to prisoners in their custody. *See Farmer*, 511 U.S. at 828. Defendants attempt to disaggregate their actions and argue here that their alleged efforts to improve staffing levels at St. Clair negate their responsibility to address any harm alleged by Plaintiffs. *See* Defendants' Motion (Doc. 448, pp. 12–21). But "[i]n deliberate-indifference cases, as in life, context matters." *Mosley*, 966 F.3d at 1272. The analysis turns on whether Defendants' "entire course of conduct" in response to that risk shows deliberate indifference, not whether they took any specific action. *Swain*, 961 F.3d at 1287–88.

In determining reasonableness under the Eighth Amendment, courts look at the response, or lack thereof, compared to the risk of harm. *See Farmer*, 511 U.S. at 842-45. In *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993),[7] the Eleventh Circuit determined evidence of both the prison officials' efforts and the plaintiff's identified corrective measures were probative of whether the prison official acted with deliberate indifference. *Id.* at 1537–38. The prison official

---

[7] *LaMarca* was decided before *Farmer*, but the Eleventh Circuit had already recognized the Supreme Court's holding that the Eighth Amendment contains a subjective component, requiring the plaintiff to prove the prison official possessed knowledge of the infirm condition. *See LaMarca*, 995 F.2d at 1535; *cf. Farmer*, 511 U.S. at 837. *LaMarca* has therefore been cited as binding authority in the Eleventh Circuit after *Farmer*. *See, e.g., Hale*, 50 F.3d at 1582.

9

pointed "to evidence of his actions to improve safety conditions" at the prison, including that he "attempted to secure additional funds, make improvements to [the prison's] physical plant, expand recruitment efforts, and institute policies that would have reduced the risk of violence if his staff had followed them." *Id.* at 1537.  The plaintiffs presented evidence that the prison official "failed to ensure that his direct subordinates followed the polices he established"[8] and there were "specific, low-cost actions that [the prison official] could have taken and that his successors successfully undertook." *Id.*  The plaintiffs also showed that the prison official "could have, but did not, take steps to minimize" various problems in the prison including: inadequate staff training; staff not reporting rapes and assaults; failed supervision of staff; not stationing officers to patrol the dormitories; permitting the obscuring of officers' vision by allowing prisoners to hang sheets; failing to employ standard procedures for investigating rapes; lack of prisoner movement controls; and failing to transfer known assailants out of the prison. *Id.* at 1537–38.  All this evidence, the court held, "must be considered" when determining whether prison officials "recklessly disregarded the necessary means to protect inmate safety." *Id.* at 1538.

Similarly, in *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995), the Sheriff claimed he was not deliberately indifferent to the risk of violence because "he worked toward construction of a new jail, which, he contend[ed] was the only way to reduce the risk of violence." *Id.* at 1584.  The Eleventh Circuit noted that these efforts were relevant to whether the Sheriff was deliberately indifferent, but "would not necessarily absolve him or the County of

---

[8] "A supervisors' conscious refusal to enforce a policy is identical to the absence of that policy." *McCarley v. Dunn*, --- F. Supp. 3d ----, No. 4:21-cv-570-LSC, 2024 WL 993884, at *9 (N.D. Ala. 2024) (citing *Ingram v. Kubik*, 30 F.4th 1241, 1255–56 (11th Cir. 2022)); *see also Wilson v. Dunn*, 618 F. Supp. 3d 1253, 1276 (N.D. Ala. 2022) ("The ADOC Officials' mere enactment of a directive that their own subordinates notified them was never implemented or enforced reflects that they 'recklessly disregarded the necessary means to protect inmate safety.'" (quoting *LaMarca*, 995 F.2d at 1538)).

10

liability." *Id.* Rather, the Sheriff could still be found deliberately indifferent if a jury found he disregarded "'alternative means' or interim measures for reducing the risk of violence such as those advanced by [the plaintiff]." *Id.* (quoting *LaMarca*, 995 F.2d at 1536). The plaintiff identified several measures he alleged were reasonable responses to reduce the risk of violence that the Sheriff did not pursue, including: "classifying and segregating the inmates based on their likelihood for violence; assigning inmates to cells and bunks rather than letting them choose for themselves; adequately training jailers; and adequately supervising and monitoring the inmates." *Id.* at 1583. Taken together, the Eleventh Circuit determined there was sufficient evidence for the plaintiff to go the jury on whether the Sheriff and the County were deliberately indifferent. *Id.* at 1584.

Defendants mistakenly assert that their response to the risk of harm is only unconstitutional if it is "conscience-shocking." Defendants' Motion (Doc. 448, p. 22) (citing *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020)). But that "conscience-shocking" standard comes from medical treatment cases, which apply a different measure than applied in failure-to-protect cases. The Eleventh Circuit has emphasized that medical treatment in a carceral setting "'violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hoffer*, 973 F.3d at 1277 (alterations in original) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). The court has applied that high standard to avoid imposing liability under the Eighth Amendment for disagreements over medical judgment. *See Hoffer*, 973 F.3d at 1273 ("Because the plaintiffs here are receiving medical care—and because the adequacy of that care is the subject of genuine, good-faith disagreement between healthcare professionals—we are hard-pressed to find that the Secretary has acted in so

11

reckless and conscience-shocking a manner as to have violated the Constitution."); *Brown v. McClure*, 849 F. App'x 837, 840-41 (11th Cir. 2021) (same); *Hammonds v. Theakston*, 833 F. App'x 295, 300–02 (11th Cir. 2020) (same). Here, the question does not involve medical treatment, much less medical judgment. It involves Defendants' failure to protect plaintiffs from violence. The Court should look to failure-to-protect precedent. *See, e.g.*, *LaMarca*, 995 F.2d at 1536; *Hale*, 50 F.3d at 1584.

The Constitution does not require that all harm be averted; therefore, an analysis of the objective reasonableness of a response cannot turn exclusively on the outcome. *See Farmer*, 511 U.S. at 844. Outcomes, however, are still relevant to the extent Defendants continued to respond in a manner they knew was ineffective, when alternative measures were known and available. Defendants contend they are not deliberately indifferent because ADOC officials allegedly did their best, like the jail officials in *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020), a medical case about the conditions of confinement in a Miami jail during the COVID-19 outbreak. Defendants' Motion (Doc. 448, p. 18). *Swain*, however, stands for the narrow proposition that a court cannot evaluate deliberate indifference based solely on outcomes or require impossible measures. The Eleventh Circuit explained it was error for the district court to "assume a state of affairs in which [the jail officials] had taken numerous measures to combat the virus," but find them deliberately indifferent solely because the rate of COVID-19 infections had increased, and because the jail failed to implement seemingly impossible social distancing. *Swain*, 961 F.3d at 1287. In evaluating deliberate indifference, the Eleventh Circuit explained the court "must focus not on isolated failures—or impossibilities, as the case may be—but rather on the defendant's entire course of conduct." *Id.* at 1287–88. The Eleventh Circuit then detailed all the steps the jail had taken to mitigate the risk of harm from COVID-19 and noted the absence of any finding

12

that "defendants knew of any potential lapses in enforcement [of policies and procedures] and deliberately ignored them." *Id.* at 1290. Here, Plaintiffs have not held Defendants to an impossible standard and do allege that Defendants knew their responses to the glut of violence in the prisons were inadequate and nonetheless failed to act. *Swain* reinforces the key point advanced here, that in evaluating deliberate indifference, the court should consider Defendants' entire course of conduct in addressing the risk of harm.

While *Swain* illustrates why deliberate indifference cannot be evaluated *solely* on outcomes, that does not mean outcomes are irrelevant in determining a reasonable response or that any response, even a patently inadequate one, discharges Defendants' constitutional obligations. To the contrary, the Eleventh Circuit has explained that "if the evidence showed that [a prison official] knew of ways to reduce the harm but knowingly declined to act, or that he knew of ways to reduce the harm but recklessly declined to act," then a jury could find the prison official failed to reasonably respond. *Hale*, 50 F.3d at 1583. There is a balance between requiring the impossible and requiring that prison officials respond reasonably: "if an official attempts to remedy a constitutionally deficient prison condition, but fails in that endeavor, he cannot be deliberately indifferent *unless he knows of, but disregards an appropriate and sufficient alternative*." *LaMarca*, 995 F.2d at 1536 (emphasis added). Where there is evidence that "the actions [the prison officials] undertook would be insufficient to provide inmates with reasonable protection from violence, and that other means were available to him which he nevertheless disregard," then the prison officials can be found deliberately indifferent to the risk of harm. *Id.* at 1539. Even in a non-binding case relied on by Defendants, where the Seventh Circuit found the prison officials were not deliberately indifferent, the Seventh Circuit distinguished those facts from a case "in which prison officials persisted in taking steps they

13

knew were insufficient to prevent the harm." *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022); *see* Defendants' Motion (Doc. 448, pp. 19–20).

In assessing whether Defendants responded reasonably to a risk of harm, the Court should consider all of Defendants' actions and omissions, including whether they continued ineffective measures while disregarding available means to mitigate the harm. *See, e.g.*, *Ogletree v. Colbert Cnty., Ala.*, No. 3:18-cv-01218, 2021 WL 4477630, at *44–46 (N.D. Ala. Sept. 30, 2021) (denying summary judgment where a reasonable juror could find the defendants were deliberately indifferent, in part because "they knew about, but declined to implement, reasonable alternative measures"). Defendants concede that, despite their alleged efforts, staffing issues persist at St. Clair. Defendants' Motion (Doc. 448, pp. 20–21).[9] Yet they ask the Court to reject Plaintiffs' claims based on their failed attempts, with full knowledge that those attempts failed. Because Defendants know their efforts have been ineffective at addressing the violence at St. Clair, they cannot avoid liability without taking other reasonable measures to mitigate the substantial risk of serious harm to prisoners, such as those identified by Plaintiffs.

The deliberate indifference standard ensures that prison officials have the "sufficiently culpable state of mind" to be liable under the Eighth Amendment for cruel and unusual punishment. *Farmer*, 511 U.S. at 534 (quoting *Wilson*, 501 U.S. at 297). The Constitution does not require prison officials to prevent every instance of harm, but when prison officials continue to take actions they know are not enough to address substantial harm, when there are known available alternatives that would mitigate the harm, they objectively are not responding

---

[9] Defendants also argue that their refusal to implement "Plaintiffs' preferred solution" does not amount to deliberate indifference. (Doc. 418, p. 3) (citing *Hoffer*, 973 F.3d at 1271-72). But Plaintiffs can show deliberate indifference where Defendants only attempt to implement "solutions" that they know have not resolved the deficiencies. *LaMarca*, 995 F.2d at 1536.

14

reasonably. They are, therefore, deliberately indifferent and can be held liable under the Eighth Amendment.[10]

## CONCLUSION

The Eighth Amendment requires that Defendants protect prisoners in their custody from a substantial risk of serious harm. In recognition of prison officials' difficult job, the Eighth Amendment does not require perfect conditions. But people do not lose their constitutional rights behind prison walls. The Eighth Amendment guarantees humane conditions, which necessitates that prison officials take reasonable measures to provide for prisoners' safety. Defendants violate this right if they fail to respond reasonably to known risks of harm, including by taking actions they know to be ineffective and refusing to take reasonable actions to mitigate the harm. The United States respectfully requests that the Court consider this Statement of Interest in applying the Eighth Amendment to this case.

---

[10] Defendants contend Plaintiffs must establish they were acting unconstitutionally "at the time of summary judgment." Defendants' Motion (Doc. 448, p. 15). Defendants do not expound on this point, but this Court has established a fact cutoff date in this case, such that "any evidence created after the evidentiary fact cutoff date . . . or otherwise not disclosed before that date, may not be used in connection with any dispositive motions . . . ." Order (Doc. 397, p. 2). The Court was within its discretion to set this evidentiary cutoff for an orderly administration of this case. *See Brown v. Plata*, 563 U.S. 493, 523 (2011).

| | |
|---|---|
| STEVEN H. ROSENBAUM<br>Chief | JASON R. CHEEK<br>Chief, Civil Division |
| KERRY KRENTLER DEAN<br>Deputy Chief | CARLA C. WARD<br>Deputy Civil Chief<br>United States Attorney's Office |
| _/s/ Eileen Ulate_<br>CURTIS HARRIS<br>GEORGE EPPSTEINER<br>EILEEN ULATE<br>MATTHEW J. DONNELLY<br>Trial Attorneys<br>United States Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 705-8762<br>Natasha-Eileen.Ulate@usdoj.gov | Northern District of Alabama<br>1801 Fourth Avenue North<br>Birmingham, Alabama 35203<br>(205) 244-2185<br>carla.ward@usdoj.gov |

DATED: July 3, 2024

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 3, 2024, I electronically filed the foregoing STATEMENT OF INTEREST using the CM/ECF system and caused to be served by email a copy of this filing to counsel of record.

                                           */s/ Eileen Ulate*
                                           EILEEN ULATE
                                           Attorney for the United States