# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

MARK DUKE, *et al.*,

    Plaintiffs,

vs.     Civil Action No: 4:14-cv-01952-RDP

JOHN HAMM, *et al.*,

    Defendants.

## PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING EN BANC DECISION IN *WADE v. McDADE*

Mark Duke, Robert Carlile, Nathaniel Harris, Benny Jones and Johnny Young (collectively, "Plaintiffs") respectfully submit this brief in response to the Court's July 15, 2024 Order inviting the Parties to address how the Eighth Amendment standard articulated in *Wade v. McDade*, No. 21-14275 (11th Cir. July 10, 2024) (en banc) applies in this case.  (Dkt. No. 474.)  Plaintiffs submit that the Eleventh Circuit's decision brings its understanding of the Eighth Amendment's "deliberate indifference" standard back in line with the Supreme Court's longstanding formulation under *Farmer v. Brennan*, 511 U.S. 825 (1994), and—as such—has no impact on Defendants' currently pending motion for summary judgment or this litigation as a whole.  Indeed, the en banc court's holding that a plaintiff must prove a defendant acted recklessly with respect to a substantial risk of serious harm breaks no new ground and is consistent with how Plaintiffs have been litigating this case.[1]  Plaintiffs marshalled extensive evidence during the course of discovery to establish that Defendants knew that their actions (or inactions) caused a substantial risk of harm to inmates at St. Clair.  Consequently, summary judgment remains inappropriate and Defendants' motion should be denied.

Below, Plaintiffs (1) outline the clarified deliberate indifference standard, (2) explain why the evidence adduced in their summary judgment briefing satisfies the clarified standard and (3) address the ways in which Defendants mischaracterized the clarified standard in their response to the Department of Justice's Statement of Interest.

---

[1] Notably, the opinion of the en banc court reflects a consensus among the Circuit's judges, indicating the uncontroversial nature of the decision.

I.   **DELIBERATE INDIFFERENCE STANDARD UNDER *WADE***

Prior to the en banc decision in *Wade v. McDade*, a plaintiff asserting an Eighth Amendment deliberate indifference claim in the Eleventh Circuit needed to prove (1) "that the official was subjectively aware that the inmate was at risk of serious harm"; (2) "that the official disregarded that risk"; and (3) that the official acted with "more than some requisite level of negligence"—either more than *mere* negligence or more than *gross* negligence.[2]  *Wade v. McDade*, --- F.4th ---, 2024 WL 3354963, at *2 (11th Cir. July 10, 2024) (en banc).  The Eleventh Circuit's decision addressed only the third of these sub-requirements, and clarified that the proper standard should be criminal recklessness—*i.e.*, "the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm".  *Id.*

Notably, the *Wade* court emphasized numerous times that this formulation was not new, and was instead an effort to re-tether the Eleventh Circuit's explanation of deliberate indifference to the standard set forth by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), thirty years ago.  *See Wade*, 2024 WL 3354963, at *1, *3, *5, *7.  Moreover, the court offered several pieces of guidance to help litigants apply the "subjective awareness" test going forward:

*First*, quoting *Farmer*, the *Wade* en banc court explained that "deliberate indifference describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result".  *Id.* at *3 (quoting *Farmer*, 511 U.S. at 835).

---

[2] These three sub-requirements pertain only to the "subjective prong" of the deliberate indifference standard.  In all cases, a plaintiff asserting an Eighth Amendment claim must also show that he has experienced a deprivation that is "objectively" sufficiently serious.  *Wade*, 2024 WL 3354963, at *3.

2

This element may be proven through either direct or circumstantial evidence. *Id.* at *8 (Jordan, J., concurring) (citing *Regalado Cuellar v. United States*, 553 U.S. 550, 567 n.8 (2008)).

*Second*, the en banc court explained that although a plaintiff must show the defendant was aware of a risk he *created*, a defendant may create such a risk by being deliberately indifferent to a *preexisting* danger. *Id.* at *6. That is because, even where some underlying danger already exists, the official's actions or inactions may be what ultimately *exposes* the plaintiff to the substantial risk posed by the underlying danger. *Id.* at *5-6. As a result, "the relevant risk is inextricably tied to the defendants' own conduct". *Id.* at *6. In *Wade*, for example, "the substantial risk to [the plaintiff's] health resulted not from epilepsy *itself*, but rather from the fact that his epilepsy *went untreated*" because "the prison officials at [the prison] failed to procure his [medication]—that is, because the officials misstepped". *Id.*

*Third*, deliberate indifference may be premised on either a defendant's actions or inactions. *Id.* at *5. Action cases "target prison officials' affirmative misconduct" while inaction cases "challenge prison officials' failure to do something". *Id.* In either scenario, however, the analysis is the same—the reviewing court must "assess the defendant's knowledge by reference to the risk created by his own conduct". *Id.* at *6. Again, the necessary consideration is whether "the relevant risk is inextricably tied to the defendants' own conduct". *Id.*

*Fourth*, the en banc court reiterated the caveat in *Farmer* that, even if the defendant actually knew of the substantial risk of harm, he cannot be found liable if he "responded reasonably to the risk, even if the harm ultimately was not averted". *Id.* at *4.

3

Importantly, "the reasonable response component of deliberate indifference is objective and not subjective". *Id.* at *8 (Jordan, J., concurring).

*Fifth*, not one other judge on the en banc court signed onto Judge Newsom's concurrence advocating for an interpretation of the Eighth Amendment that "applies *only* to penalties that are imposed intentionally and purposefully". *Id.* at *15 (Newsom, J., concurring). The lack of support for that view makes clear that prison officials cannot "avoid responsibility" for their harmful actions. *See id.* at *14 (Rosenbaum, J., concurring) ("As today's decision reiterates, our Constitution demands more.").

## II. SUBSTANTIAL EVIDENCE DEMONSTRATES DEFENDANTS' SUBJECTIVE RECKLESSNESS UNDER *WADE*.

Applying the *Farmer/Wade* standard in this case, the evidence Plaintiffs adduced in their summary judgment briefing demonstrates that Defendants were "subjectively aware that [their] own conduct put the plaintiff[s] at substantial risk of serious harm". *Wade*, 2024 WL 3354963, at *2. That evidence also shows that Defendants' response to that risk was objectively unreasonable. As to both of these, there exists (at the very least) genuine disputes of fact that will require the Court to weigh the competing evidence at trial, particularly because resolution of these issues call for credibility determinations with respect to each Defendant's knowledge and intentions. *See Baker*, 94 F.4th at 1317.

### A. Prisoner-on-Prisoner Violence (Claim 1) and Prisoner-on-Prisoner Sexual Assault (Claim 2)

Substantial direct and circumstantial evidence demonstrates that Defendants are aware their own conduct exposes the prisoners at St. Clair to a substantial risk of prisoner-on-prisoner violence and sexual assault. For example:

4

- Testimony from St. Clair witnesses shows that the mandatory "critical posts" –which the facility's own policy states must be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮—often go unfilled (SOF ¶¶ 210, 215-216), frequently leaving units without officer presence for entire eight-hour shifts.

- St. Clair officials and Defendants' experts testified that cell door locks are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF ¶¶ 171, 174), that the surveillance cameras installed in the dorms and common areas for live-feed viewing are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SOF ¶ 197) and that "half" of the call buttons "don't work" (SOF ¶ 168). Without the ability to assign additional officers to areas of concern, prisoners are left without adequate means of protection.

- Multiple St. Clair officers testified that institutional searches are conducted infrequently and in a cursory manner. (SOF ¶¶ 288-291.) Defendants also commonly allow staff to enter the facility without being searched, patted or scanned. (SOF ¶¶ 298, 300-303.) Former Captain Ronald England testified that all staff do not have to pass through a body scanner each time they enter St. Clair, and he could not recall the last time he was required to be scanned. (SOF ¶ 302.)

- Defendants do not require their officers to search for and confiscate dangerous contraband that was involved in serious violent incidents, including stabbings where no knives were recovered. (SOF ¶¶ 294, 305-307.)

- Defendants assign housing without consideration of pertinent classification information. For example, prisoners are often housed in contravention of their PREA designations (SOF ¶¶ 258-259, 263) and without considering relevant gang-affiliation information (SOF ¶¶ 265-269).

- Defendants fail to conduct adequate investigations of reported sexual assaults. Instead, Defendants begin and end sexual assault investigations by encouraging victims to sign a waiver of prosecution, and close the case. St. Clair's Institutional PREA Compliance Manager Kevin Gillilan testified that he "assumes" that any time a victim signs a prosecution waiver, the victim's prison rape allegations are "deemed unfounded", and, further, that he could not recall a single instance in which his office continued looking into a prison rape where the victim had declined to prosecute. (SOF ¶ 328.) This is the case even if there is strong evidence that a violent crime has been committed (SOF ¶ 329) or the investigator suspects that the victim signed the prosecution waiver out of fear of retaliation from the perpetrator (SOF ¶ 330).

- Defendants were necessarily aware of the conditions relevant to this lawsuit—including widespread prisoner-on-prisoner violence and sexual assault—at least as far back as November 2017, when the parties reached a settlement agreement and Defendants committed to implement reforms and remedial

measures to address the unconstitutional conditions at St. Clair.  (Dkt. No. 53 ¶¶ 12-20, 36, 53; Dkt. No. 180; Dkt. No. 203 ¶¶ 5-7.)

Moreover, the evidence shows that Defendants have failed to respond to these serious risks in an objectively reasonable way, including by refusing to implement reasonable, known, low-cost measures that would immediately reduce the level of violence at St. Clair:

- Defendants refuse to adopt any of the proposals set forth in the Daniels Plan for optimizing St. Clair's scarce human resources, limiting the spread of contraband and regaining control of the prison's most dangerous areas.  (SOF ¶¶ 153-156, 159, 161, 220-222, 276, 279.)

- Defendants refuse to employ real-time monitoring of surveillance cameras that have already been installed throughout the facility.  (SOF ¶¶ 196, 198, 202-204.)

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- Defendants refuse to remove obstructions that render cell door locks inoperable and unreasonably delay repairs to broken cell door locks. (SOF ¶¶ 175, 180.)  Defendants also refuse to either retain a company to provide regular lock maintenance or hire a full-time locksmith to keep the locks in working order.  (SOF ¶¶ 179, 181-182.)

- Defendants refuse to reinstate the Quality Improvement Team after disbanding it in December 2022, leaving the facility without a method for data-informed corrective actions and staff accountability.  (SOF ¶ 98.)

B.   **Officer-on-Prisoner Excessive Force (Claim 3)**

Substantial evidence demonstrates that Defendants are aware that their own conduct has created an excessive-force culture at St. Clair that continues to pose a substantial risk of serious harm to the prisoners confined therein.  Some examples of direct evidence and admissions include:

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6

- Defendant Captain Omar Parker admitted that he and Defendant Captain Bradley Howard did not receive the required use-of-force investigations training until approximately nine months after they were promoted to their current positions, leaving only one captain (Carla Graham) available to conduct all use-of-force investigations for the entire prison.  (SOF ¶ 344.)

- Defendant Captain Omar Parker testified that "incidents where officers use force against prisoners take place in the dorms" over which he is the population captain.  (SOF ¶ 124.)

- St. Clair's "Lesson Guide" for use of force training clearly instructs officers to "not hesitate" to use force, and that it is their "duty" to use force on the job.  (SOF ¶ 231.)

- Defendants were necessarily aware of the conditions relevant to this lawsuit—including widespread use of excessive force—at least as far back as November 2017, when the parties reached a settlement agreement and Defendants committed to implement reforms and remedial measures to address the unconstitutional conditions at St. Clair.  (Dkt. No. 53 ¶¶ 22-23, 24(a)-(ak); Dkt. No. 180; Dkt. No. 203 ¶¶ 5-7.)

In addition, the record is replete with evidence of the "obviousness of the risk" of ongoing excessive force, raising the inference that Defendants—high-ranking officers with the responsibility over operating the facility and supervising its personnel—are aware of their failure to prevent inappropriate officer-on-prisoner force:

- Former Defendant Captain Carla Graham testified "I'm sure it does" when asked if unnecessary force is used at St. Clair.  (SOF ¶ 233.)

- Lieutenant Roderick Gadson testified that officers "can go and be malicious and use force every day" and "probably get justified for it".  (SOF ¶ 233.)

- Lieutenant Gadson also testified that he is "sure" that officers sometimes do not report when they use force.  (SOF ¶ 238.)

- ██████████████████████████████████████████████████████████████████████████

- Another correctional officer stated that that she used chemical spray against a prisoner because he "failed to obey a direct order to leave M2 dorm and was insubordinate".  (SOF ¶ 234.)

- Another correctional officer stated that "if [a prisoner] spit in your face that's a total different ball game. I think you should least be able to get a punch in if he just spit in your face." (SOF ¶ 236.)

- Between November 2020 and November 2023, there were only three instances in which a correctional officer received discipline for inappropriate use of force despite there being hundreds of reported incidents, and many more unreported incidents, involving officer use of force. (SOF ¶ 345; CSOF Additional Undisputed Fact ¶ 39.)

The awareness of this widespread malfeasance among the Defendants, who are responsible for preventing and disciplining such malfeasance, is powerful evidence that Defendants were "subjectively aware that [their] own conduct put the plaintiff[s] at substantial risk of serious harm". *See Wade*, 2024 WL 3354963, at *2.

### III. DEFENDANTS MISCHARACTERIZE THE LAW UNDER *WADE*.

Defendants mischaracterized the state of the law after *Wade v. McDade* when they responded to the Department of Justice's Statement of Interest in this case. (*See* Dfs.' SOI Response, Dkt. No. 496.) To set the record straight, Plaintiffs address two critical issues below.

*First*, Defendants suggest that *Wade* precludes Eighth Amendment claims premised on the risk of prisoner-on-prisoner violence because that is a "preexisting risk" that prison officials do not "create". (Dfs.' SOI Response at 6-7.) That is wrong. In fact, the *Wade* Court specifically rejected Defendants' argument when it explained that just because there is a preexisting danger, a prison official's actions or inactions may wrongfully *expose* the plaintiff to that danger in violation of the Eighth Amendment. *Wade*, 2024 WL 3354963, at *5-6. As the en banc court described it: "[T]he relevant 'risk' will rarely, if ever, exist in a vacuum; it will almost always result from something a prison official either does or doesn't do." *Id.* at *6.

8

Plaintiffs' claims here parallel those found to be viable in *Wade*. Just as in *Wade*—where the court explained that the serious risk of harm at issue was *not* the plaintiff's preexisting epilepsy but rather the result of prison officials' failure to provide his required seizure medication—the relevant risk of harm in this case is *not* the preexisting tendency of prisoners to commit violence but rather the result of Defendants' own conduct: improper housing assignments, decisions not to control prisoner movement, decisions not to repair cell locks and many more set forth above. In other words, Plaintiffs are not seeking to hold Defendants responsible for prisoner-on-prisoner violence in a vacuum; rather, this lawsuit is about Defendants' deliberate decisions (actions and inactions) as the causes of the serious risk of harm to which St. Clair's prisoners are subjected.

Here, Defendants expose St. Clair's prisoners to prisoner-on-prisoner violence by deliberately refusing to take actions they know would prevent or decrease harmful inmate interactions (*e.g.*, ignoring broken locks, failing to carry out thorough contraband searches). They have also created additional risks at the facility. For example, by assigning prisoners to housing without regard for their possible gang affiliation or sexual predation/vulnerability, Defendants increase the risk of gang retribution and sexual abuse. And by permitting the widespread practice of St. Clair correctional officers leaving gates separating common areas and housing blocks unlocked and permitting prisoners to travel to housing areas to which they are not assigned, Defendants increase the risk of enemy violence and sexual assault.

*Second*, Defendants introduce confusion by referring to conduct that "shock[s] the conscience" as the bar for what constitutes an Eighth Amendment violation.

9

(Dfs.' SOI Response at 8-9.)  To be clear, the *Wade* court does not say anything about conscience-shocking conduct, let alone require it to prove a claim of deliberate indifference to a risk of serious harm.  Rather, the "Supreme Court has long tied the Eighth Amendment's" deliberate indifference test to conduct that is incompatible with "the evolving standards of decency that mark the progress of a maturing society".  *Wade*, 2024 WL 3354963, at *11 (Rosenbaum, J., concurring) (quoting *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion)); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  And although the "shocks the conscience" language may sometimes find its way into Eighth Amendment decisions, the Supreme Court has made clear that the Eighth Amendment "standards of decency" standard is separate from the substantive due process "shocks the conscience" standard.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).

## **CONCLUSION**

        For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for summary judgment.

Dated:  July 25, 2024

/s/ *Charlotte Morrison*
Charlotte R. Morrison
Equal Justice Initiative
122 Commerce Street
Montgomery, Alabama 36104
Telephone:  (334) 269-1803
Facsimile:  (334) 269-1806
cmorrison@eji.org

/s/ *Antony Ryan*
Antony L. Ryan (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Helam Gebremariam (*pro hac vice*)
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
aryan@cravath.com
lrosenberg@cravath.com
hgebremariam@cravath.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document is being served by electronic mail to the designated counsel of record in the above-captioned action on this 25th day of July, 2024.

By:               /s/ *Antony Ryan*
                 Antony L. Ryan
                 Cravath, Swaine & Moore LLP
                 Two Manhattan West
                 375 Ninth Avenue
                 New York, NY 10001
                 Telephone:  (212) 474-1000
                 Facsimile:  (212) 474-3700